## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ELLWOOD CITY FORGE CO., ELLEWOOD ) <br> NATIONAL STEEL CO., ELLWOOD QUALITY ) <br> STEELS CO., AND A. FINKL & SONS, ) <br> ) <br> Defendant-Intervenors ) <br> ) | Court No. 21-00080 |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY <br> Director |
| OF COUNSEL: <br> AYAT MUJAIS <br> Attorney <br> Office of the Chief Counsel <br>  for Trade Enforcement & Compliance <br> U.S. Department of Commerce | SARAH E. KRAMER <br> Trial Attorney <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> PO Box 480, Ben Franklin Station <br> Washington, DC 20044 |
| March 27, 2023 | Attorneys for Defendant |

# TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

    I.     Background ........................................................................................................ 1

    II.    Standard Of Review .......................................................................................... 3

    III.   The Court Should Sustain Commerce's Redetermination .................................. 4

          A.     Offsets For Compliance Costs .................................................................. 4

          B.     Specificity Of The KAV Program ............................................................. 7

CONCLUSION ......................................................................................................................10

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                                     **PAGE(S)**

*BGH Edelstahl Seigen GmbH. v. United States*,
  600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) ................................................................*passim*

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938) ............................................................................................................3

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ............................................................................................................3

*Geneva Steel v. United States,*
  914 F. Supp. 563 (Ct. Int'l Trade 1996) .............................................................................5

*I.N.S. v. Elias-Zacarias*,
  502 U.S. 478 (1992) ............................................................................................................4

*Kajaria Iron Castings v. United States*,
  156 F.3d 1163 (Fed. Cir. 1998) ..........................................................................................4

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................................................3

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................................... 3

19 U.S.C. § 1677(5A)(D)(i) .............................................................................................. 7, 9, 10

19 U.S.C. § 1677(5A)(D)(ii) ................................................................................................ 7, 8, 9

19 U.S.C. § 1677(5)(C) ...............................................................................................................5

19 U.S.C. § 1677(6) ...............................................................................................................4, 7

**REGULATIONS**

19 C.F.R. § 351.503(c) ................................................................................................................5

**ADMINISTRATIVE DETERMINATIONS**

*Forged Steel Fluid End Blocks from the Federal Republic of Germany,*
  85 Fed. Reg. 80,011 (Dep't of Commerce Dec. 11, 2020) ............................................... 2

*Forged Steel Fluid End Blocks from the Federal Republic of Germany*
   85 Fed. Reg. 31,454 (Dep't of Commerce May 26, 2020) (prelim. countervailing duty determin.) ................................................................................................................ 2

*Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, Italy and the People's Republic of China*,
   85 Fed. Reg. 2,385 (Dep't of Commerce Jan. 15, 2020) (initiation of countervailing duty investigs.) ................................................................................................................ 2

*Countervailing Duties: Final Rule*,
   63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998) ............................................... 4

## INTRODUCTION

Defendant, the United States, respectfully submits this response to the comments filed by Plaintiff BGH Edelstahl Siegen GmbH (BGH).  *See* Pl. BGH Edelstahl Siegen GmBH Cmts. In Opp'n to the Final Results of Redetermination (BGH Cmts.), February 23, 2023 (ECF No. 53). These comments and our response concern the Department of Commerce's (Commerce) remand redetermination, *see* Final Results of Remand Pursuant to Court Remand (Remand Redetermination), January 10, 2023, (ECF No. 48-1) (P.R.R. 3),[1] issued by Commerce pursuant to this Court's opinion and remand order, *BGH Edelstahl Siegen GmbH. v. United States*, 600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) (*Remand Order*).  As explained below, the Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has complied with the *Remand Order*, and the remand redetermination is supported by substantial evidence and otherwise in accordance with law.

## ARGUMENT

### I.   Background

On December 19, 2019, the FEB Fair Trade Coalition, Ellwood Group, and Finkl Steel (petitioners) filed a petition with Commerce seeking the imposition of countervailing duties on imports of fluid end blocks (FEBs) from Germany.  *See* Antidumping and Countervailing Duty Petitions (Dec. 19, 2019) (P.R. 1) (C.R. 1).  Petitioners alleged 16 programs should be investigated, including six programs pertaining to climate change measures implemented by the European Union and the Government of Germany at issue here.  On January 8, 2020, Commerce initiated a countervailing duty investigation on FEBs from Germany.  *See Forged Steel Fluid*

---

[1] Citations to "P.R.R." refer to the public record of the antidumping duty administrative redetermination.  Citations to "P.R." and "C.R." refer to the public and confidential records of the original investigation, respectively.

1

*End Blocks From the Federal Republic of Germany, India, Italy, and the People's Republic of China*, 85 Fed. Reg. 2,385 (Dep't of Commerce Jan. 15, 2020) (initiation of countervailing duty investigs.).  On February 4, 2020, Commerce selected Schmiedewerke Groditz GmbH and BGH Edelstahl Siegen Gmbh (BGH) as mandatory respondents.  *See Forged Steel Fluid End Blocks from the Federal Republic of Germany,* 85 Fed. Reg. 31,454 (Dep't of Commerce May 26, 2020) (prelim. countervailing duty determin.) (*Preliminary Determination*) (P.R. 231) and accompanying Preliminary Decision Memorandum (PDM) (P.R. 220).

On May 26, 2020, Commerce issued its preliminary determination, *see generally* PDM, and on October 21, 2020, it issued a post-preliminary determination*, see generally* Post-Preliminary Determination (Post-Prelim) (P.R. 271).  In the preliminary determination and post-preliminary determination*,* Commerce found seven climate change programs countervailable, two of which are at issue on remand.  *See generally* PDM; *see also* Post-Prelim.  Specifically, Commerce found that section 9a, 9b, and 10 Taxes under the Electricity Tax Act, section 51 and 55 Taxes under the Energy Tax Act, and the Concession Fee Ordinance (KAV program) were countervailable subsidy programs.  *See generally* PDM; *see generally* Post-Prelim*.*  Commerce issued its *Final Determination* on December 7, 2020, and continued to find these climate change programs countervailable.  *See generally Forged Steel Fluid End Blocks from the Federal Republic of Germany,* 85 Fed. Reg. 80,011 (Dep't of Commerce Dec. 11, 2020) (P.R. 292), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 293).

BGH challenged Commerce's final determination in this Court on March 29, 2021.  On October 12, 2022, the Court sustained, in part, and remanded, in part, Commerce's *Final Determination*.  *See Remand Order*.  Specifically, on remand this Court directed Commerce to (1) consider in the first instance whether to account for the compliance costs in its calculation of

2

the countervailing duty rates for subsidy programs under the Electricity Tax Act and Energy Tax Act; and (2) explain or reconsider its determination that the KAV Program is a specific subsidy. *See Remand Order* at 1258, 1269.

On December 12, 2022, Commerce issued its draft remand redetermination on these two issues. On December 19, 2022, BGH commented on the draft redetermination, and on January 10, 2023, Commerce issued its final remand redetermination. In its remand redetermination, Commerce explained its determination not to account for compliance costs in its calculation of the countervailing duty rates for programs under the Electricity Tax Act and Energy Tax Act and further explained its determination that the KAV Program is specific, as explained in more detail below.

**II.     Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling

3

that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

### III. The Court Should Sustain Commerce's Redetermination

Commerce complied with the *Remand Order*, and its remand redetermination is supported by substantial evidence and otherwise in accordance with law. Therefore, the Court should uphold the remand redetermination. This Court directed Commerce to (1) consider in the first instance whether to account for the compliance costs in its calculation of the countervailing duty rates for subsidy programs under the Electricity Tax Act and Energy Tax Act; and (2) explain or reconsider its determination that the KAV Program is a specific subsidy. *See Remand Order* at 1258, 1269. As explained below, Commerce adhered to the directives of this *Remand Order* and its remand redetermination is supported by substantial evidence.

#### A. Offsets For Compliance Costs

With respect to the effects of compliance costs on the subsidy rate calculations, Commerce explained that the statute, its regulations, the *1998 Final Preamble*, and case precedent establish that Commerce does not offset compliance costs in its subsidy rate calculations. *See* Remand Redetermination at 4 (citing *Countervailing Duties: Final Rule*, 63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998)). Specifically, Commerce explained that 19 U.S.C. § 1677(6) only permits three types of offsets to a countervailable subsidy: (1) the deduction of application fees, deposits, and similar payments necessary to qualify for or receive a subsidy; (2) accounting for losses due to deferred receipt of the subsidy; and (3) the subtraction of export taxes, duties, or other charges intended to offset the countervailable subsidy. *Id.* at 5. Indeed, the Court of Appeals for the Federal Circuit and this Court have affirmed that the statute limits Commerce to these three types of offsets. *See Kajaria Iron Castings v. United States*, 156 F.3d 1163, 1174 (Fed. Cir. 1998) ("[W]e agree that 19 U.S.C. § 1677(6) provides the exclusive

4

list of permissible offsets."); *Geneva Steel v. United States,* 914 F. Supp. 563, 609-10 (Ct. Int'l Trade 1996) ("*The list is narrowly drawn and is all inclusive.*") (quoting S.Rep. No. 249, 96th Cong., 1st Sess. 86 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 472). Offsets for costs that a company incurs to comply with a government's climate change measures, or programs regarding those measures, do not fall within the statutory offsets. Remand Redetermination at 5.

Commerce further explained that pursuant to the *1998 Final Preamble*, it looks at each subsidy program independently from other parts of a law or regulation to evaluate whether the program confers a benefit. *Id.* at 5-6. Indeed, the *1998 Final Preamble* provides an example explaining that Commerce will treat environmental requirements and the subsidization of compliance with those requirements as two separate actions, *i.e.,* Commerce would not consider the cost of the environmental requirements as an offset to government assistance. *Id.* At 7. Thus, the effect of the subsidy program and any related laws or regulations affecting the recipient's behavior, such as complying with the energy management system requirements under section 10 of the Electricity Tax Act, is not material to Commerce's determination as to whether the program confers a countervailable benefit and the amount of that benefit. *Id.* at 6. This is consistent with Commerce's determinations in past cases, such as *Certain Softwood Lumber Products from Canada 2015* and *Certain Uncoated Groundwood Paper from Canada*, explained at length in the remand redetermination.

Commerce also explained that 19 U.S.C. § 1677(5)(C) explicitly supports this principle, stating that Commerce "is not required to consider the effect of the subsidy in determining whether a subsidy exists." *Id.* Moreover, 19 C.F.R. § 351.503(c) states that "{i}n determining whether a benefit is conferred, the Secretary is not required to consider the effect of the government action on the firm's performance, including its prices or output, or how the firm's

5

behavior otherwise is altered." *Id.* Therefore, Commerce explained that although BGH's behavior was altered because of the government of Germany's requirements under the provisions of the Electricity and Energy Tax Acts to receive tax savings, pursuant to the statute, its regulations, and the *1998 Final Preamble,* Commerce was not required to consider BGH's cost of complying with the climate change measures when considering whether these programs had conferred a benefit and the amount of that benefit. *Id.*

BGH argues that Commerce's remand redetermination does not comply with the instructions of the Court because Commerce has not made any change in its original determination and did not account for costs incurred by BGH in its subsidy calculations. BGH Cmts. at 1. Moreover, BGH states that the remand redetermination does not comply with the Court's instructions because Commerce did not open the record or explain its failure to consider BGH's costs related to applying for the measures under the Electricity and Energy Tax Acts. *Id.*

This Court did not direct Commerce to change its final determination, nor did it require Commerce to account for costs incurred by BGH in its subsidy calculations. The Court only directed Commerce to consider in the first instance whether to account for BGH's compliance costs in its calculation of the countervailing duty rate for subsidy programs under the Electricity Tax Act and Energy Tax Act. *See Remand Order* at 1258. Commerce considered whether to account for compliance costs, explained the analysis behind its consideration, and determined that it would continue not to grant an offset for the cost of complying with the German government's environmental requirements under either Tax Act. *See* Remand Redetermination at 4-8. Further, because of Commerce's determination that the offsets were not permissible pursuant to the statute, its regulations, and the *1998 Final Preamble*, as discussed above,

6

Commerce did not find it necessary to reopen the record to permit parties to submit evidence on BGH's cost of compliance. Remand Redetermination at 7-8.

BGH further argues that the costs to operate its energy management system under the Electricity Tax Act and Energy Tax Act programs fall under the first type of permissible offsets, "similar payment paid in order to qualify for the benefits." BGH Cmts. at 6-7. However, this argument is without merit. Costs to operate an energy management system are not "application fees, deposits" or similar payments pursuant to 19 U.S.C. § 1677(6). Remand Redetermination at 13.[2] Instead, they are costs incurred to adhere to the requirements of the programs under the Electricity and Energy Tax Acts. *Id.* at 14. Under BGH's interpretation, any cost that a firm incurred would constitute a "similar payment" under 19 U.S.C. § 1677(6), which runs contrary to the statute's explicit limitation on allowable subsidy offsets. *Id.* BGH's argument is inconsistent with the Federal Circuit's, this Court's, and Congress's interpretation that Commerce is limited in making offsets to subsidies to the three types provided under 19 U.S.C. § 1677(6).

**B. Specificity Of The KAV Program**

With respect to the specificity of the KAV Program, Commerce explained in its remand redetermination why it continues to find that the KAV Program is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i), and that the KAV Program does not meet the conditions under 19 U.S.C. § 1677(5A)(D)(ii) because the objective criteria or conditions of the KAV Program are not neutral. Under 19 U.S.C. § 1677(5A)(D)(ii), the definition of "objective criteria or conditions" states, "{f}or purposes of this clause, the term 'objective criteria or conditions' means criteria or conditions that are neutral and that do not favor one enterprise or industry over

---

[2] Additionally, creating and running an energy management system is not a "payment," which is "[a] sum of money (or equivalent) paid or payable, esp. in return for goods or services or in discharge of a debt; wages, pay." *See* Oxford English Dictionary Online, *available at* https://www.oed.com/view/Entry/139189?isAdvanced=false&result=1&rskey=dWngIg&.

7

another." Remand Redetermination at 8. Commerce explained that record evidence shows that the eligibility criteria and conditions under the KAV Program are not neutral and favor certain special contract customers over other enterprises. *Id.* Specifically, Commerce found that only special contract customers are eligible for the program. Additionally, the KAV Program favors a specific subset of special contract customers: those applicants with electricity prices that are lower than the Marginal Price agreed upon by the network operators and the municipality. For this subset of special contract customers, the network operators will not pass on a concession fee. The KAV Program favors special contract customers in this group, because they are the only companies eligible to receive the fee exemption. *Id.* Therefore, the KAV Program does not meet the definition or standards of "objective criteria or conditions" under 19 U.S.C. § 1677(5A)(D)(ii).

BGH argues that Commerce failed to reasonably explain its determination of specificity based upon any substantial record evidence, particularly in light of the Court's direction to "address whether criteria based on energy usage is economic in nature and horizontal in application, such that the program may be considered not specific as a matter of law." BGH Cmts. at 1, 8, 13; *Remand Order* at 1269. However, Commerce further explained that, given that the German government favors a specific subset of special contract customers based on their electricity prices, the criteria are not economic in nature and horizontal in application. Commerce explained that the SAA identifies examples of criteria that are economic in nature and horizontal in application as "number of employees or the size of the enterprise." Remand Redetermination at 10; Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. I (1994) at 930 (SAA). Commerce determined that German government favors certain enterprises with lower electricity prices over those with

higher electricity prices through the KAV Program, and that the criteria based on electricity prices for a specific group (*i.e.*, special contract customers with electricity prices lower than the Marginal Price) are not economic in nature and horizontal in application because they are not based on factors such as enterprise size or number of employees. *Id.* Thus, pursuant to the *Remand Order*, Commerce provided the above evidence to demonstrate that the KAV Program does not meet the conditions specified in 19 U.S.C. § 1677(5A)(D)(ii).

BGH further argues that Commerce's statutory interpretation conflicts with the statute's plain wording and structure because Commerce based its determination solely on 19 U.S.C. § 1677(5A)(D)(i), without considering § 1677(5A)(D)(ii). BGH Cmts. at 9, 11. BGH further asserts that Commerce does not point to record evidence showing that the KAV Program is narrowly focused on discrete segments of the German economy. *Id.* at 9. As an initial matter, although in its final determination Commerce had based its determination on 19 U.S.C. § 1677(5A)(D)(i), in this remand redetermination, as explained above, Commerce has thoroughly considered § 1677(5A)(D)(ii) as well and explained, as the Court requested, how the KAV program does not meet the conditions specified in this section. Remand Redetermination at 16. Moreover, it is not clear why evidence that the KAV Program is narrowly focused on discrete segments of the economy was necessary for a determination that the program is specific pursuant to section 19 U.S.C. § 1677(5A)(D)(i), or how it relates to the instructions in the *Remand Order*. Commerce determined that the program is specific pursuant to section 19 U.S.C. § 1677(5A)(D)(i) because the German government "expressly limited access to the subsidy by providing relief to only those companies whose average price per kilowatt-hour {(kWh)} in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers." Remand Redetermination at 17. These criteria are not neutral

because they favor some enterprises or industries over others. *See* SAA at 930. Hence, the program is specific pursuant to section 19 U.S.C. § 1677(5A)(D)(i) because the German government expressly limits access to a "group" of enterprises, *i.e.,* a subset of special contract customers. *Id.* 19 U.S.C. §§ 1677(5A)(D)(i) and (ii) do not require Commerce to determine that any such "group" of enterprises is "narrowly focused on discrete segments" of a country's economy, as BGH has argued.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Case 1:21-cv-00080-CRK   Document 54   Filed 03/27/23   Page 15 of 16

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | /s/ Patricia M. McCarthy<br>PATRICIA M. MCCARTHY<br>Director |
| OF COUNSEL: | /s/ Sarah E. Kramer<br>SARAH E. KRAMER |
| AYAT MUJAIS<br>Attorney<br>Office of the Chief Counsel<br> for Trade Enforcement & Compliance<br>U.S. Department of Commerce | Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044 |
| March 27, 2023 | Attorneys for Defendant |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 2,852 words, including text, footnotes, and headings.

/s/ Sarah E. Kramer