# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, <br><br>　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>UNITED STATES, <br><br>　　　　　　　　Defendant, <br>　　　and <br><br>ELLWOOD CITY FORGE COMPANY, ET AL., <br><br>　　　　　　　Defendant-Intervenors. | Court No. 21-00080 |

## DEFENDANT-INTERVENORS' REPLY TO PLAINTIFF'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION

　　　　　　　　　　　　　　　Thomas M. Beline
　　　　　　　　　　　　　　　Jack A. Levy
　　　　　　　　　　　　　　　Myles S. Getlan
　　　　　　　　　　　　　　　Chase J. Dunn
　　　　　　　　　　　　　　　Nicole Brunda

　　　　　　　　　　　　　　　CASSIDY LEVY KENT (USA) LLP
　　　　　　　　　　　　　　　900 19th Street, N.W., Ste 400
　　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　　(202) 567-2316
　　　　　　　　　　　　　　　(202) 567-2301
　　　　　　　　　　　　　　　*tbeline@cassidylevy.com*

　　　　　　　　　　　　　　　*Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

Dated:   March 27, 2023

**Table of Contents**

|   |   |   | Page |
|---|---|---|------|
| I. | ARGUMENT | | 2 |
| | A. | Commerce Correctly Declined to Account for Alleged Compliance Costs in its Calculation of CVD Rates for Subsidies Received Under the Electricity and Energy Tax Acts | 3 |
| | B. | Commerce Correctly Explained Why the KAV Program is De Jure Specific | 6 |
| II. | CONCLUSION | | 8 |

## **Table of Authorities**

Page(s)

Statutes

19 U.S.C. § 1677(6)(A) ....................................................................................................3, 4

19 U.S.C. § 1677(5A)(D)(ii) ........................................................................................6, 7, 8

Other Legislative Materials

U.S. Senate Report No. 96-249 (1979) ...........................................................................3, 5

Court Decisions

*Kajaria Iron Castings v. United States*, 156 F.3d 1163 (Fed. Cir. 1998) ........................3, 4

*Geneva Steel v. United States*, 914 F. Supp. 563 (Ct. Int'l Trade 1996) .......................3, 4

Administrative Determinations

*Certain Frozen Warmwater Shrimp from the Republic of Indonesia: Final Negative Countervailing Duty Determination*, 78 Fed. Reg. 50383 (Aug. 19, 2013) ...................................................................................................................8

*Large Residential Washers from the Republic of Korea: Final Affirmative Countervailing Duty Determination,* 77 Fed. Reg. 75975 (Dec. 26, 2012) ...................................................................................................................8

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, <br><br>　　　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>UNITED STATES, <br><br>　　　　　　　　　　Defendant, <br><br>　　　and <br><br>ELLWOOD CITY FORGE COMPANY, ET AL., <br><br>　　　　　　　　　　Defendant-Intervenors. | Court No. 21-00080 |

**DEFENDANT-INTERVENORS' REPLY TO PLAINTIFF'S COMMENTS IN OPPOSITION TO COMMERCE'S FINAL REMAND RESULTS**

Pursuant to the Court's Remand Order (ECF 42) and amended scheduling order (ECF 51), defendant-intervenors Ellwood City Forge Company, *et al.*, ("Ellwood") hereby submit comments in reply to plaintiff BGH Edelstahl Siegen GMBH's ("BGH's") comments in opposition to the U.S. Department of Commerce's ("Commerce's") final results of remand (ECF 53) ("BGH Remand Comments").

**I.　　ARGUMENT**

In its comments, BGH contends that Commerce's final results of remand (ECF 48-1) ("Remand Results") "did not comply with the instructions of this Court." *See* BGH Remand Comments at 1. BGH is mistaken. As explained below, Commerce's Remand Results fully comply with this Court's Remand Order. In particular, pursuant to the Remand Order, Commerce both: (a) explained its determination not to account for alleged compliance costs in its calculation of the CVD rates for programs under the Electricity Tax Act and Energy Tax Act and (b) further clarified its determination that the Konzessionsabgaben-verordung ("KAV") program

2

is a specific subsidy.  This Court should accordingly sustain Commerce's Remand Results in their entirety.

      **A.   Commerce Correctly Declined to Account for Alleged Compliance Costs in its Calculation of CVD Rates for Subsidies Received Under the Electricity and Energy Tax Acts**

In its Remand Order, the Court found that Commerce had failed to address BGH's arguments about alleged cost of compliance with the Electricity and Energy Tax Acts—and specifically, the requirement subsidy recipients have "an energy management system"—in its final determination.  *See BGH Edelstahl Siegen GMBH v. United States*, Slip. Op. 22-117 (Oct. 12, 2022) ("Remand Order") at 25-26.  The Court therefore "remand{ed} this issue to Commerce for it to consider in the first instance." *See id.* at 26.

In its Remand Results, Commerce acknowledged that it had failed to provide fulsome reasoning in its original determination.  *See* Remand Results at 4.  In accordance with the Court's instructions, Commerce thus provided the missing rationale for its decision not to account for BGH's alleged costs of compliance in its margin calculation.  *See id.* at 4-8.  Specifically, Commerce explained that:

> Section 771(6) of the Act is explicit and only permits three specific types of offsets to a "net countervailable subsidy:" (1) the deduction of application fees, deposits, and similar payments necessary to qualify for or receive a subsidy; (2) accounting for losses due to deferred receipt of the subsidy; and (3) the subtraction of export taxes, duties, or other charges intended to offset the countervailable subsidy.  *Id*. at 5.

Commerce found that "{o}ffsets for costs that a firm incurs to comply with a government's climate change measures or to participate in government programs under the measures do not fall within these three categories in the Act," which both Congress and the courts have affirmed to be narrowly construed.  *See id.* at 5, 11 (citing *Trade Agreements Act of 1979*, U.S. Senate Report No. 96-249 (1979) ("TAA S. Rep. 96-249") at 86 ("{t}he list is narrowly drawn and is all inclusive."); *Kajaria Iron Castings v. United States*, 156 F.3d 1163,

3

1174 (Fed. Cir. 1998) ("we agree that {section 771(6) of the Act} provides the exclusive list of permissible offsets …."); and *Geneva Steel v. United States*, 914 F. Supp. 563, 609 (Ct. Int'l Trade 1996) (explaining that section 771(6) of the Act contains "an exclusive list of offsets that may be deducted from the amount of a gross subsidy")).

Defendant-Intervenors agree with Commerce's analysis and conclusion and thus limit their comments to two additional points of clarification. *First*, in its Remand Results Commerce correctly found that, contrary to BGH's continued assertions, the "costs {BGH incurs} to operate an energy management system are not a payment that is similar to a payment such as an application fee or deposit." *See* Remand Results at 13; *see also* BGH Comments at 2. This should be self-evident. An application fee or deposit is not just any cost. Rather, it is an expense that involves the transfer of funds directly from the entity receiving the subsidy to the entity granting the subsidy. The statute logically establishes that in such limited circumstances, the amount <u>paid</u> to the governmental body <u>to receive</u> the subsidy should be offset by the amount of payment received by the government body in exchange for granting the benefit. *See* 19 U.S.C. § 1677(6)(A). By contrast, BGH's argument would have Commerce offset every program with some recorded cost that allows the producer to take part in a subsidy program offered by the government. Things like accountants' salaries would be offsetting beneficial tax programs because but for those accountants, the producer would not have been able to file its tax return to claim those tax benefits. Or even more absurd, the cost of vehicles would be offsetting fuel tax rebates because but for those vehicles, the producer would not have purchased fuel to qualify for the tax rebate.

But Congress intended to avoid such absurd results because the clear text of the statute, as well as underlying legislative history and past Commerce precedent implementing

4

congressional intent, make clear that the net subsidy provision is only intended to cover qualifying offsetting amounts that cause the gross and net subsidy amounts provided by the government to differ. *See id.*; *see also* TAA S. Rep. 96-249 at 86 ("For purposes of determining the net subsidy, there is subtracted from the gross subsidy only the items specified in section 771(6). The list is narrowly drawn and is all inclusive."); *Large Residential Washers from the Republic of Korea: Final Affirmative Countervailing Duty Determination*, 77 Fed. Reg. 75975 (Dec. 26, 2012), and accompanying Issues and Decision Memorandum ("IDM") at 16 ("Section 771(6) of the Act limits offsets to the amounts related to application fees, to the loss of value of the subsidy from a deferral required by the government, and to any export taxes, duties, or other charges levied on the export of merchandise to the United States specifically intended to offset the countervailable subsidy received."). Accordingly, as Commerce correctly explained, it has applied the net subsidy provision only in limited circumstances. *See* Remand Results at 5. Indeed, BGH has notably cited no instance where Commerce has applied the net subsidy provision to offset payments not made to the government entity providing the subsidy. *See generally* BGH Remand Comments at 1-8.

  *Second*, the costs associated with the operation of an energy management system are not "similar payments" to an application fee or deposit; they are not even "payments" at all. Instead, as Commerce correctly observed, such expenses are simply the expenses BGH incurs that allow it to benefit from a government subsidy program. *See* Remand Results at 3; 5. This too is self-evident. Neither section 10(3)(1) of the Electricity Tax Act nor section 55(4)(1) of the Energy Tax Act—the provisions from which this eligibility requirement is drawn—make any mention of any requirement exchange of money, goods, or services (*i.e.* a "payment") to receive tax relief under the statutes. *See* German Government Questionnaire Response, Ex. ETA(9b)-4

5

& ETA(37)-4 (Apr. 6, 2020) (P.R. 158).  Instead, German law simply requires companies to prove that they "operated an energy management system" to be eligible for tax relief under either program.  *Id*.

This is notably not the only eligibility requirement for tax relief under the Electricity and Energy Tax Acts.  Instead, to receive tax relief, a company must also satisfy certain other eligibility requirements including that the recipient engage in the production or processing metals or one of several other specifically enumerated production activities.  *See* Opinion at 21-22, n. 10 (listing production activities required for eligibility in the Electricity and Energy Tax Acts); *see also* German Government Questionnaire Response, Ex. ETA(9b)-4 & ETA(37)-4 (Apr. 6, 2020) (P.R. 158).   Just as it would be absurd to offset the amount of subsidy BGH received from the German Government by the costs BGH incurs to produce and process metal, it would be similarly illogical to offset the amount of subsidy BGH received from the German Government by the costs BGH incurs to operate an energy management system.  Such an adjustment has no place in the statute and certainly not under section 771(6) of the Act, a provision that both Congress and the courts have held to be limited in scope.  *See* Remand Results at 11.

Commerce provided a thorough and reasonable explanation for its decision not to account for BGH's alleged costs of compliance in its subsidy calculation.  The Court should affirm Commerce's Remand Redetermination.

### B. Commerce Correctly Explained Why the KAV Program is De Jure Specific

In its Remand Order, the Court also found that Commerce had failed to explain how the KAV program "favors certain industries over others or otherwise explicitly limits usage as to who may apply."  *See* Remand Order at 49.  In particular, the Court noted that Commerce had failed to "address whether criteria based on energy usage is economic in nature and horizontal in application, such that the program may be considered not specific as a matter of law pursuant to

6

19 U.S.C. § 1677(5A)(D)(ii)." *Id*. Accordingly, the Court remanded to Commerce for "further explanation or reconsideration." *Id*. at 50.

In its Remand Results, Commerce explained that the KAV Program did not meet the conditions of 19 U.S.C. § 1677(5A)(D)(ii) for two reasons. *First*, Commerce explained that the KAV Program does not meet the requirements of 19 U.S.C. § 1677(5A)(D)(ii) because the "criteria or conditions of the KAV Program are not neutral." *See* Remand Results at 8. The relevant statutory text defines "objective criteria or conditions" as "criteria or conditions that are neutral and that do not favor one enterprise or industry or industry over another." *See id.* at 8 (quoting 19 U.S.C. § 1677(5A)(D)(ii)). Commerce explained that the eligibility conditions of the KAV Program are not enterprise neutral because: (a) the relevant law makes clear that "only special contract customers are eligible for the program" and (b) even among this group of special contract customers, only a specific subset are eligible to receive the subsidy: those applicants with electricity prices that are lower than the Marginal Price agreed upon by the NO and the municipality. *See id.* at 9. Based on these facts, Commerce correctly concluded that the "eligibility criteria and conditions under the KAV Program are not neutral" and thus that "the KAV Program is not consistent with the standards for 'objective criteria or conditions' in section 771(5A)(D)(ii) of the Act." *See id.* at 9-10.

*Second*, Commerce explained that the KAV Program did not meet the conditions of 19 U.S.C. § 1677(5A)(D)(ii) because the relevant "criteria are not economic in nature and horizontal in application." *See id*. at 10. In particular, Commerce noted that through its criteria, the "FRG effectively favors certain enterprises with lower electricity prices over those with higher electricity prices through this program." *See id*. In other words, and contrary to BGH's assertions, *see* BGH Remand Comments at 15, the fact that the subsidy is granted based on the

electricity prices paid does not exclude the KAV Program from *de jure* specific designation because it is not enterprise-neutral. *See, e.g., Gov't of Quebec v. United States*, 567 F. Supp. 3d 1273, 1278 (Ct. Int'l Trade 2022) (citing 19 U.S.C. § 1677(5A)(D)(ii)) ("To avoid a designation of de jure specificity, the administering authority must ensure that access to the subsidy is government by objective industry- or enterprise-neutral criteria resulting in automatic eligibility, and that the criteria for eligibility are both strictly followed and clearly set forth in the relevant official materials so as to be verifiable.").

Such a finding is notably consistent with Commerce's established practice. For example, Commerce has previously determined that a Government of Indonesia income tax reduction scheme that limited the tax discount to forms with annual sales of up to IDR 50 billion a year was *de jure* specific because it was limited by law to the group of Indonesian enterprises earning below this threshold regardless of corporation size. *See Certain Frozen Warmwater Shrimp from the Republic of Indonesia: Final Negative Countervailing Duty Determination*, 78 Fed. Reg. 50383 (Aug. 19, 2013), and accompanying IDM at Comment 13. Similarly, in this instance, Commerce found that the KAV Program was limited by law to a specific group of enterprises (*i.e.* special contract customers with electricity prices that are lower than the Marginal Price agreed upon by the NO and the municipality), regardless of the number of employees or size of the corporation. *See* Remand Results at 8-10; 16-18. Accordingly, Commerce appropriately determined that the KAV Program is *de jure* specific.

## II. CONCLUSION

As explained above, Commerce's Remand Results fully comply with the Court's Remand Order by both: (a) explaining Commerce's determination not to account for alleged compliance costs in its calculation of the CVD rates for programs under the Electricity Tax Act and Energy

8

Tax Act and (b) further clarifying Commerce's its determination as to why the KAV Program is *de jure* specific. This Court should accordingly sustain Commerce's Remand Results in full.

Respectfully submitted,

/s/ Nicole Brunda
Thomas M. Beline
Jack A. Levy
Myles S. Getlan
Chase J. Dunn
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300
(202) 567-2330
nbrunda@cassidylevy.com

*Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

## Certificate of Compliance

The undersigned hereby certifies that the foregoing submission of "Defendant-Intervenors' Reply to Plaintiff's Comments in Opposition to Commerce's Final Remand Results," filed on March 27, 2023, contains 2,149 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation set forth in the Court's Standard Chambers Procedures.

By:   /s/ Nicole Brunda
      Nicole Brunda