C-428-848<br>
Remand<br>
Slip Op. 23-71<br>
POI: 01/01/2018 – 12/31/2018<br>
<b>Public Document</b><br>
E&C/OVIII: SS

*BGH Edelstahl Siegen GmbH v. United States*,
Consol. Court No. 21-00080; Slip. Op. 23-71 (CIT May 9, 2023)
Forged Steel Fluid End Blocks from the Federal Republic of Germany

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand opinion and order of the U.S. Court of International Trade (CIT) in *BGH Edelstahl Siegen GmbH v. United States*, Consol. Court No. 21-00080, Slip Op. 23-71 (CIT May 9, 2023) (*Second Remand Order*).  These final results of redetermination concern the final determination of the countervailing duty (CVD) investigation on forged steel fluid end blocks from the Federal Republic of Germany (FRG) and Commerce's *First Remand Results*.[1]  In the *Final Determination* and the *First Remand Results*, we determined that the Konzessionsabgabenverordung (KAV) Program was *de jure* specific.[2]  On May 9, 2023, the CIT remanded Commerce's redetermination that the KAV Program was *de jure* specific for further explanation or reconsideration.[3]

---

[1] *See Forged Steel Fluid End Blocks from the Federal Republic of Germany:  Final Affirmative Countervailing Duty Determination*, 85 FR 80011 (December 11, 2020) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM); *see also Forged Steel Fluid End Blocks from the People's Republic of China, the Federal Republic of Germany, India, and Italy:  Countervailing Duty Orders, and Amended Final Affirmative Countervailing Duty Determination for the People's Republic of China*, 86 FR 7535 (January 29, 2021) (*CVD Order*); and *Final Results of Redetermination Pursuant to Court Remand, BGH Edelstahl Siegen GmbH v. United States*, Consol. Court No. 21-00080; Slip. Op. 22-117 (CIT October 12, 2022), dated January 9, 2023 (*First Remand Results*), available at https://access.trade.gov/resources/remands/22-117.pdf.
[2] *See Final Determination* IDM at Comment 8; *see also First Remand Results* at 8-10 and 15-18.
[3] *See Second Remand Order* at 14; *see also First Remand Results* at 8-10 and 15-18.

On July 13, 2023, Commerce released its Draft Results of Redetermination.[4] We provided interested parties with an opportunity to comment on the draft results.[5] On July 14, 2023, in response to a request by BGH Edelstahl Siegen GmbH (BGH Siegen), we extended the deadline for comments to July 19, 2023.[6] On this date, BGH Siegen and the petitioners[7] submitted timely comments on the Draft Results of Redetermination.[8]

In accordance with the *Second Remand Order*, we have explained in the sections below that the KAV Program is *de jure* specific pursuant to section 771(5A)(D)(i) of the Tariff Act of 1930, as amended (the Act), because the FRG, through legislation, *limited* access to a "group" of enterprises.[9] Additionally, in finding that the FRG *by law* limited access to the subsidy pursuant to section 771(5A)(D)(i) of the Act, and in considering whether the corollary under section 771(5A)(D)(ii) of the Act renders this program non-specific, we have found that the KAV Program's eligibility criteria are vertical, and not horizontal, in application. Consequently, no change to the subsidy rates calculated in the *Final Determination* is warranted.[10]

In the "Interested Party Comments" section below, we have addressed the petitioners' and BGH Siegen's comments on the Draft Results of Redetermination.

---

[4] *See* Draft Results of Redetermination Pursuant to Court Remand, *BGH Edelstahl Siegen GMBH v. United States*, Consol. Court No. 21-00080, Slip Op. 23-71 (CIT May 9, 2023), dated July 13, 2023 (Draft Results of Redetermination).
[5] *Id.* at 11.
[6] *See* Memorandum, "Extension of Deadline for Comments on Draft Results of Redetermination," dated July 14, 2023.
[7] The petitioners are the FEB Fair Trade Coalition and its individual members, which are the Forging Industry Association, Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons Steel.
[8] *See* BGH Siegen's Letter, "Comments on Draft Results of Redetermination," dated July 19, 2023 (BGH Siegen's Comments); *see also* Petitioners' Letter, "Petitioners' Comments on Commerce's Draft Results of Redetermination," dated July 19, 2023 (Petitioners' Comments).
[9] *See* First Remand Results at 17 (citing *Final Determination* IDM at Comment 8).
[10] *See Final Determination*, 85 FR at 80012 (unchanged in *CVD Order*, 86 FR at 7536).

**II.    BACKGROUND**

In the *Final Determination*, we determined that the KAV Program was *de jure* specific pursuant to section 771(5A)(D)(i) of the Act because the FRG "expressly limited access to the subsidy by providing relief to only those companies whose average price per kilowatt-hour {(kWh)} in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers."[11]  In its *First Remand Order*, the CIT explained that Commerce's *Final Determination* did not address how the KAV Program favored certain industries over others or otherwise explicitly limited usage as to who may apply.[12]  As the CIT elaborated, "{l}imiting the availability of a program may not be *de jure* specific if the criteria are neutral, *i.e.*, do not favor some industries over others."[13]  The CIT held that "Commerce did not address whether criteria based on energy usage is economic in nature and horizontal in application, such that the program may not be specific as a matter of law" pursuant to section 771(5A)(D)(ii) of the Act.[14]  On this basis, the CIT remanded Commerce to further explain or reconsider its determination.[15]

In the *First Remand Results*, we continued to find the KAV Program to be *de jure* specific, pursuant to section 771(5A)(D)(i) of the Act.[16]  We also found that the KAV Program did not meet the standards set forth in section 771(5A)(D)(ii) of the Act, because the objective criteria or conditions of the program were not neutral.[17]  Specifically, we found that the FRG

---

[11] *See Final Determination* IDM at Comment 8 (citing section 771(5A)(D)(i) of the Act).
[12] *See BGH Edelstahl Siegen GMBH v. United States*, 600 F. Supp. 3d 1241, 1269 (CIT 2022) (*First Remand Order*).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *See First Remand Results* at 8.
[17] *Id.* at 9.

favored certain enterprises over others through the KAV Program because: (1) only "special contract customers" were eligible for the program; and (2) the program favored a specific subset of special contract customers: those applicants with electricity prices that were lower than the Marginal Price agreed upon by the network operator and the municipality.[18] In addition, we explained that the SAA identifies the "number of employees or the size of the enterprise" as examples of criteria that are economic in nature and horizontal in application.[19] Thus, we found that criteria based on electricity prices for a specific group (*i.e.*, special contract customers with electricity prices that were lower than the Marginal Price agreed upon by the network operator and the municipality) were not "economic in nature and horizontal in application" in accordance with the description in the SAA.[20]

In its *Second Remand Order,* the CIT held that Commerce's *First Remand Results* failed to explain: (1) how the amount of electricity consumed or the electricity prices paid by companies are not economic in nature; and (2) how criteria based solely on electricity consumption and pricing are not horizontal in application.[21] Regarding the latter, the CIT explained that for the KAV Program's criteria to be vertical in application, the criteria would need to expressly limit the program's application to specifically named enterprises or industries or a group of enterprises or industries.[22] The CIT elaborated that the FRG's eligibility criteria for the KAV Program did not expressly limit the program's application to specific enterprises or industries or groups of enterprises or industries.[23] Accordingly, the CIT remanded Commerce's

---

[18] *Id.*
[19] *Id.* at 10 (citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA) at 930).
[20] *Id.*
[21] *See Second Remand Order* at 13-14.
[22] *Id.* at 14 (citing section 771(5A)(D)(i) the Act).
[23] *Id.*

4

redetermination (*i.e.*, that the KAV Program was *de jure* specific) for further explanation or reconsideration.[24]

### III.  ANALYSIS

As an initial matter, we agree with the CIT that our use of the word "favors," in the context of the underlying affirmative determination of *de jure* specificity, in this instance was previously misplaced.[25]  As the CIT explained, the analysis of specificity pursuant to 771(5A)(D)(i) of the Act, here, does not relate to whether the KAV Program "favors" certain industries for special treatment.[26]  Accordingly, on remand, we have clarified that the KAV Program is *de jure* specific pursuant to section 771(5A)(D)(i) of the Act because the FRG, through legislation, *limited* access to a "group" of enterprises.[27]  Additionally, in finding that the FRG *by law* limited access to the subsidy pursuant to section 771(5A)(D)(i) of the Act, and in considering whether the corollary under section 771(5A)(D)(ii) of the Act renders this program non-specific, we have found that the KAV Program's eligibility criteria are vertical, and not horizontal, in application.

The KAV program is *de jure* specific because, by law (*i.e.*, Section 2(4) of the KAV), eligibility is *limited* to only those special contract customers "whose average price per kilowatt-hour {(kWh)} in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers."[28]  And given that these eligibility criteria do not

---

[24] *Id.*
[25] *Id.* (citing *First Remand Results* at 9).
[26] *Id.*
[27] *See First Remand Results* at 17 (citing *Final Determination* IDM at Comment 8).
[28] *Id.*; *see also Final Determination* IDM at Comment 8 (citing FRG's Letter, "First Supplemental Questionnaire: Response to Certain Questions," dated June 5, 2020 (FRG's 1st SQR), at Exhibits KAV-02 and KAV-03); and *First Remand Results* at 9 (citing Memorandum, "Post-Preliminary Analysis of Countervailing Duty Investigation: Forged Steel Fluid End Blocks from the Federal Republic of Germany," dated October 21, 2020 (Post-Preliminary Analysis Memorandum), at 13).

apply uniformly across all enterprises and industries (*i.e.*, are not horizontal in application), they *cannot be* neutral pursuant to section 771(5A)(D)(ii) of the Act.  By way of example, the KAV Program would differ from a hypothetical grant program to promote energy efficiency that is generally available and has no specific eligibility conditions.  If the administering authority for this hypothetical program only requires firms to strive to improve energy efficiency for eligibility, then the subsidy may be uniformly available across enterprises and industries, and, hence, horizontal in application.  In contrast to the KAV Program, the authority's eligibility criteria for the energy efficiency program would not expressly limit eligibility to a defined group of enterprises vis-à-vis another excluded group.

Section 771(5A)(D)(ii) of the Act, a corollary of the *de jure* test, provides that a subsidy is not specific as a matter of law when an authority "establishes objective criteria or conditions governing the eligibility for, and the amount of, a subsidy," such that:  (1) eligibility is automatic; (2) the criteria or conditions for eligibility are strictly followed; and (3) the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document so as to be capable of verification.  Section 771(5A)(D)(ii) of the Act also states that the term "objective criteria or conditions" means criteria or conditions that are neutral and that do not favor one enterprise or industry over another.  As the SAA elaborates, the objective criteria or conditions, defined in section 771(5A)(D)(ii) of the Act, "must be neutral, must not favor certain enterprises or industries over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise."[29]

Relying on section 771(5A)(D)(i) of the Act, the CIT explained that "for the KAV Program's criteria to be vertical in application, the criteria would need to 'expressly limit' the

---

[29] *See* SAA at 930.

program's application to specifically named enterprises or industries or group of enterprises or industries."[30]  As Commerce has found, however, a subsidy can be *de jure* specific pursuant to section 771(5A)(D)(i) of the Act where an authority[31] expressly limits access to a "group" of enterprises or industries which the authority, itself, defines, but which does not necessarily comprise "specifically named" enterprises or industries (*e.g.*, Companies A, B, and C or the steel and automotive industries).[32]  Commerce's regulations, at 19 CFR 351.502(b), state that "in determining whether a subsidy is being provided to a 'group' of enterprises or industries within the meaning of section {771}(5A)(D) of the Act, {Commerce} is not required to determine whether there are shared characteristics among the enterprises or industries that are eligible for, or actually receive, a subsidy."[33]  Indeed, as the *CVD Preamble* explains:

> The purpose of the specificity test is simply to ensure that subsidies that are distributed very widely throughout an economy are not countervailed.  There is no basis for adding the further requirement that subsidies that are not widely distributed are also confined to a group of enterprises or industries that share similar characteristics.[34]

Further, the SAA elaborates that clause (i) of section 771(5A)(D) of the Act does not attempt to provide a precise mathematical formula for determining when the number of enterprises or industries eligible for a subsidy is sufficiently small so as to properly be considered specific, and stresses that such determinations are only made on a case-by-case basis.  The SAA also highlights the *fundamental* purpose of the specificity test – to "function as a rule of reason and avoid the imposition of countervailing duties in situations where, because of the widespread

---

[30] *See Second Remand Order* at 14.
[31] Consistent with section 771(5A)(D)(i) of the Act, references to "authority" and "authorities" in this section also refer to legislation pursuant to which the authorities operate.
[32] *See, e.g.*, *Certain Softwood Lumber Products from Canada:  Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review, 2020*, 87 FR 48455 (August 9, 2022) (*Softwood Lumber from Canada 2020 AR*), and accompanying IDM at Comment 103.
[33] *See* 19 CFR 351.502(b).
[34] *See Countervailing Duties; Final Rule*, 63 FR 65348, 65357 (November 25, 1998) (*CVD Preamble*).

availability *and use* of a subsidy, the benefit of the subsidy is spread throughout an economy."[35] Indeed, as the SAA notes, "the specificity test was not intended to function as a loophole through which narrowly focussed subsidies provided to or used by discrete segments of an economy could escape the purview of the CVD law."[36]

As noted above, Commerce has found that a subsidy can be *de jure* specific pursuant to section 771(5A)(D)(i) of the Act where an authority expressly limits access to a "group" of enterprises or industries that the authority itself defines. For example, in *Certain Softwood Lumber Products from Canada*, Commerce determined that a fuel tax refund program was "expressly limited to companies that are entitled to refunds on fuel tax paid for certain specified activities."[37] Commerce found that the government's application form for the program "indicate{d} the limited equipment and activities that qualify for the refund of fuel tax paid, *i.e.*, vehicles with eligible equipment as power shovels, drilling machines, cranes, and cement mixers, concrete pumping trucks and well drills, fire trucks, garbage and recycling trucks, and cleaning trucks (sewer and septic tanks)."[38] Further, Commerce determined that "under this program, the eligibility criteria limit access to the subsidy to only those users operating specified stationary equipment of a vehicle. Therefore, the eligibility criteria do not meet the statutory definition of 'objective criteria,' because they favor certain enterprises."[39] On this basis, Commerce determined that the program was *de jure* specific within the meaning of section 771(5A)(D)(i) of the Act.[40]

---

[35] *See* SAA at 929.
[36] *Id.* at 930.
[37] *See Softwood Lumber from Canada 2020 AR* IDM at Comment 103.
[38] *Id.*
[39] *Id.*
[40] *Id.*

Additionally, in an earlier segment of that proceeding, Commerce determined that a program limited to companies meeting specific energy consumption and efficiency requirements was *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.[41]  Specifically, Commerce cited record information showing that eligibility for the program was limited to industrial customers that consumed more than one gigawatt hour of electricity annually and undertook energy efficiency upgrades that met certain minimum requirements, such as projected savings of at least 300 megawatt hours annually.[42]  As Commerce explained:

> Under section 771(5A)(D)(i) of the Act, when an authority provides a subsidy and expressly limits access to that subsidy to an enterprise or industry, that subsidy is specific as a matter of law…{T}he subsidies that are provided by BC Hydro under each subprogram are expressly limited by law to enterprises that meet specific energy consumption requirements, meaning that the GBC has established, by law, a limited group of enterprises that may receive grants from BC Hydro under the Energy Manager and the Incentives subprograms.  The fact that the GBC may not have limited eligibility for these subprograms to specific industries, as the GBC contends, does not alter this conclusion.[43]

Separately, in *Certain Hot-Rolled Steel Flat Products from Korea*, Commerce determined that a carbon emissions permit program was *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.[44]  Commerce determined that the law and implementing rules for the program "do establish criteria, and those criteria result in an express statutory limitation on which industries or enterprises qualify for the additional allocation by setting thresholds that industries or enterprises must meet in order to qualify."[45]  Further, Commerce determined that the program's law and

---

[41] *See Certain Softwood Lumber Products from Canada:  Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 FR 77163 (December 1, 2020) (*Softwood Lumber from Canada 2017-18 AR*), and accompanying IDM at Comment 65.
[42] *Id.*
[43] *Id.*
[44] *See Certain Hot-Rolled Steel Flat Products from the Republic of Korea:  Final Results of Countervailing Duty Administrative Review; 2020*, 88 FR 29889 (May 9, 2023) (*Certain Hot-Rolled Steel Flat Products from Korea*), and accompanying IDM at Comment 3.
[45] *Id.*

implementing rules "not only establish explicit limitations, but also are not reflective of objective criteria or conditions, as defined by section 771(5A)(D)(ii) of the Act, because they favor certain industrial sectors or enterprises over others, *i.e.*, firms with defined levels of trade intensity and/or cost structures."[46]

Finally, in *CSPV Cells from China*, Commerce determined that an investment tax exemption program was specific pursuant to section 771(5A)(D)(i) of the Act because recipients were limited by law to certain enterprises, defined as "enterprises with investment gains derived from direct investment in another resident enterprise, excluding investment gains obtained for holding listed and circulating shares issued by a resident enterprise for less than 12 months consecutively."[47]  With respect to section 771(5A)(D)(ii) of the Act, Commerce stated that this provision is only applicable if the criteria or conditions governing eligibility for a subsidy are neutral and do not favor one enterprise or industry over another.[48]  Commerce found that the three criteria set forth in section 771(5A)(D)(ii) of the Act were not applicable in this case because the implementing legislation for the program limited access to resident enterprises that made direct investments in other resident enterprises.[49]

These are, but a few, instances in which Commerce found a program to be *de jure* specific pursuant to section 771(5A)(D)(i) of the Act despite the fact that the authority or implementing legislation did not limit the program to specifically named enterprises or industries.  Indeed, in each case referenced, the enterprises or industries comprising the "group" of enterprises or industries did not necessarily share similar characteristics.  Rather, the

---

[46] *Id.*
[47] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 40491 (July 7, 2022) (*CSPV Cells from China*), and accompanying IDM at Comment 20.
[48] *Id.*
[49] *Id.*

implementing legislation expressly limited access to the "group" that the legislation itself created (*e.g.*, "enterprises with investment gains derived from direct investment in other resident enterprises" and enterprises that consume a certain quantity of electricity and undertake certain energy efficiency upgrades).[50]

We find that eligibility criteria such as those cited in the examples above are not horizontal in application. Indeed, where an authority, by law, limits eligibility to a group of enterprises or industries (*e.g.*, those that operate specific types of "stationary equipment"), it *cannot* do so uniformly.[51] Rather, by expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical in nature. In other words, enterprises or industries, or groups thereof, that satisfy such criteria are favored above others (*e.g.*, those that do not use specific types of equipment or do not receive certain types of investment gains). Here, the FRG established eligibility criteria that were not horizontal in application, and, thus, not neutral, pursuant to section 771(5A)(D)(ii) of the Act. Indeed, only special contract customers with lower average prices per kWh in the calendar year than the average revenue per kWh from the supply of electricity to all special contract customers are in the tier of eligibility (*i.e.*, the top tier) for the program.[52] All firms that did not pay these prices were in the tier of ineligible firms (*i.e.*, the bottom tier). Consequently, we find the eligibility criteria for the KAV program to be vertical in application.

As for the CIT's statements concerning whether the criteria are "economic in nature," we note that the SAA requires both conditions (*i.e.*, "economic in nature *and* horizontal in

---

[50] *See CSPV Cells from China* IDM at Comment 20; *see also Softwood Lumber from Canada 2017-18 AR* IDM at Comment 65.
[51] *See Softwood Lumber from Canada 2020 AR* IDM at Comment 103.
[52] *See Final Determination* IDM at Comment 8 (citing FRG's 1st SQR at Exhibits KAV-02 and KAV-03).

application") for a program to meet the standard of "objective criteria and conditions" in section 771(5A)(D)(ii) of the Act. Given our finding that the KAV Program's eligibility criteria are not horizontal in application, the KAV Program *cannot* meet the standards identified in section 771(5A)(D)(ii) of the Act.

## IV.   INTERESTED PARTY COMMENTS

**BGH Siegen**

- Commerce's Draft Results of Redetermination do not comply with the *Second Remand Order* or the plain language of the statute and legislative history. Commerce did not dispute in the Draft Results of Redetermination that the KAV Program's eligibility criteria are economic in nature, but Commerce again failed to explain how the eligibility criteria are not horizontal in application.[53]

- As the CIT explained, "horizontal" relates to factors that are uniformly available across industries. The KAV Program's eligibility criteria fully satisfy this definition of "horizontal."[54] Further, no record evidence demonstrates that the KAV Program's criteria favor any specific enterprise or industry: any commercial/industrial enterprise can qualify, only dependent upon the usage and average price of electricity.[55]

- Commerce's interpretation of the statute renders the provisions of section 771(5A)(D)(ii) of the Act superfluous. If eligibility criteria applicable to any subset of an economy are automatically vertical and specific, then the provisions of this section of the Act are irrelevant.[56]

- Commerce's determination that limiting eligibility criteria to fewer than all companies and industries is *per se* vertical and specific is contrary to the SAA. This interpretation is also not consistent with CIT's holding in *Asemesa II*, that "subsidies are only *de jure* specific where the authority providing the current subsidy, or its operating legislation, directly and explicitly prescribes limitations on the distribution of subsidies to an enterprise or industry."[57]

- Commerce's citations to the *CVD Preamble* are selective and incomplete. For example, the *CVD Preamble* also addresses the Court of Appeals of the Federal Circuit's (Federal Circuit's) holding in *PPG II*, that "{b}ecause eligibility requirements always serve to

---

[53] *See* BGH Siegen's Comments at 2 (citing *Second Remand Order* at 14).
[54] *Id.* (citing *Second Remand Order* at 12).
[55] *Id.* at 2-3.
[56] *Id.* at 3.
[57] *Id.* at 5 (citing *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393, 1403-04 (CIT 2021) (*Asemesa II*)).

     limit participation in any given program and may do so indiscriminately, something more must be shown to prove that the program benefits only a specific industry or group of industries."[58]

- The administrative decisions relied on in the Draft Results of Redetermination are not applicable to the KAV Program. For example, in *CSPV Cells from China*, the authority did not apply the program's criteria uniformly. Rather, the authority limited the program to resident enterprises making direct investments in other resident enterprises. Here, the KAV Program, by contrast, is applied cross-sectorally throughout the whole economy.[59]

**The Petitioners**

- Commerce's Draft Results of Redetermination comply with the *Second Remand Order*. Specifically, Commerce provided a fulsome explanation of its determination that the KAV Program is *de jure* specific.[60]

- Commerce explained that section 771(5A)(D)(ii) of the Act is the natural corollary to section 771(5A)(D)(i) of the Act, in that a subsidy is either: (a) specific as a matter of law under section 771(5A)(D)(i) of the Act, or (b) not specific as a matter of law under section 771(5A)(D)(ii) of the Act. Consequently, Commerce need not analyze both sections to find a subsidy specific as a matter of law.[61]

- Commerce explained that an express limitation pursuant to section 771(5A)(D)(i) of the Act does not need to involve specifically named enterprises or industries. Rather, a program can still be *de jure* specific where, as in this case, the implementing legislation expressly limits access to a "group" that the legislation itself creates. In these instances, Commerce has no obligation to assess whether a program operates under the criteria set forth in section 771(5A)(D)(ii) of the Act.[62]

- Commerce's approach is consistent with the SAA – that the specificity test was not intended to function as a loophole through which narrowly focused subsidies could escape the purview of the CVD law.[63] Indeed, finding *de jure* specificity only when enterprises or industries are specifically named would create such a loophole. For example, rather than expressly limiting a subsidy to steel producers, a government could limit the subsidy to firms that consume a large amount of pig iron. It would be illogical, and a clear path to circumvention of the CVD law, if Commerce were to consider the former instance to be a *de jure* specific subsidy and the latter instance not to be.[64]

---

[58] *Id.* at 6 (citing *CVD Preamble*, 63 FR at 65357; and *PPG Industries, Inc. v. United States*, 978 F.2d 1232, 1240-41 (Fed. Cir. 1992) (*PPG II*)).
[59] *Id.* at 7-9 (citing *CSPV Cells from China* IDM at Comment 20).
[60] *See* Petitioners' Comments at 2-3 (citing Draft Results of Redetermination at 11).
[61] *Id.* at 3 (citing Draft Results of Redetermination at 11).
[62] *Id.* (citing Draft Results of Redetermination at 11).
[63] *Id.* at 4 (citing SAA at 930).
[64] *Id.* at 4-5.

13

**Commerce's Position:**

We continue to find that the FRG, *by law*, limited access to the KAV Program pursuant to section 771(5A)(D)(i) of the Act.[65] Further, in considering whether the corollary under section 771(5A)(D)(ii) of the Act renders the KAV Program non-specific, we continue to find the program's eligibility criteria to be vertical, and not horizontal, in application.[66]

According to BGH Siegen, "any commercial/industrial enterprise can qualify for the program, only dependent upon the usage and average price of electricity."[67] BGH Siegen's claim, however, is not supported by the administrative record, which demonstrates that the FRG expressly limits access to the subsidy.[68] Specifically, the FRG, by law, limits eligibility under Section 2(4) of the KAV to only those special contract customers "whose average price per kilowatt-hour in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers."[69] In short, access is limited to certain customers that pay for electricity below a specified price level. Consequently, contrary to BGH Siegen's claim, this program is *not* uniformly available to *every* commercial or industrial enterprise; through the KAV, the FRG has established criteria that are vertical in nature.

Additionally, we disagree with BGH Siegen's argument that the Draft Results of Redetermination conflict with the Federal Circuit's holding in *PPG II*. Citing the Federal Circuit, BGH Siegen argues that "Commerce violates this legal principle by determining that the existence of eligibility requirements in the KAV program, by itself, renders the criteria *per se* 'vertical in nature' and therefore specific."[70] Contrary to BGH Siegen's claim, as detailed *supra*,

---

[65] *See* Draft Results of Redetermination at 4.
[66] *Id.*
[67] *See* BGH Siegen's Comments at 2-3.
[68] *See* FRG's 1st SQR at Exhibits KAV-02 and KAV-03.
[69] *Id.*; *see also First Remand Results* at 17 (citing *Final Determination* IDM at Comment 8).
[70] *See* BGH Siegen's Comments at 6-7 (citing *PPG II*, 978 F.2d at 1240-41).

by *expressly* limiting access to the subsidy through defined parameters in the law, the FRG made certain that the KAV Program's *specific* eligibility criteria *are* (and not *per se* as BGH claims) vertical in application.

By comparison, eligibility requirements, such as those in the hypothetical energy efficiency program, above, would also "serve to limit participation"[71] in the program. Companies wishing to participate would not only have to strive to improve energy efficiency, *but also* provide evidence of their efforts to do so. The general requirement to improve energy efficiency, however, does not necessarily render the program's criteria vertical in application. This hypothetical energy efficiency program would still be uniformly available across enterprises and industries. The administering authority for the hypothetical energy efficiency program is not expressly limiting eligibility to a group of enterprises that the authority has defined by law, and firms can choose whether to participate in the energy efficiency program. By contrast, with the KAV Program and the programs described in Commerce's four administrative decisions referenced above, an authority expressly limited access to a program, *by law*, to a *defined* set of enterprises, and a firm can only participate if it satisfies the eligibility criteria that the authority has established by law.

On this basis, we also disagree with BGH Siegen's argument that our determination is contrary to the CIT's holding in *Asemesa II*.[72] As an initial matter, the program at issue in *Asemesa II* provided grants to farmers and, thus, was an agricultural subsidy warranting a unique specificity analysis within the context of the agricultural exception under 19 CFR 351.502(e), which is not under consideration here. Regardless, our finding here is not inconsistent with the

---

[71] *See PPG II*, 978 F.2d at 1240.
[72] *See* BGH Siegen's Comments at 4-5 (citing *Asemesa II*, 523 F. Supp. 3d at 1403-04).

15

CIT's ruling in that case. As BGH Siegen explains, the CIT has held that "the plain meaning of the statute is that a subsidy is *de jure* specific when the authority providing the subsidy, or its operating legislation, directly, firmly, or explicitly assigns limits to or restricts the bounds of a particular subsidy to a given enterprise or industry."[73] For the KAV Program and the programs described in Commerce's four administrative determinations referenced, above, the administering authorities *explicitly* restricted the bounds of the subsidies, *by law*, to specific groups of enterprises.[74] By contrast, for the hypothetical energy efficiency program, the administering authority established no such limit or restriction. As such, firms have the *option* to participate in the hypothetical program.

We also disagree with BGH Siegen regarding the applicability of Commerce's four sample administrative determinations cited above.[75] In each example, the authority *expressly* limited access to *defined* "groups" of enterprises. On this basis, Commerce found each program to be *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.[76] For example, BGH Siegen argues that in *CSPV Cells from China*, "the program was not uniformly applied but rather limited to resident enterprises making direct investments in other resident enterprises," while "the KAV program is applied cross-sectorally throughout the whole economy."[77] In each case, however, the authority in question expressly limited access to *defined* groups of enterprises. In *CSPV Cells from China*, Commerce found the program specific pursuant to section 771(5A)(D)(i) of the Act because the authority expressly limited access to "enterprises with investment gains

---

[73] *Id.* at 5 (citing *Asemesa II*, 523 F. Supp. 3d at 1404).
[74] Pursuant to section 771(5A)(D)(i) of the Act, "any reference to an enterprise or industry is a reference to a foreign enterprise or foreign industry and includes a group of such enterprises or industries."
[75] *See* BGH Siegen's Comments at 6-9.
[76] *See Softwood Lumber from Canada 2020 AR* IDM at Comment 103; *see also Softwood Lumber from Canada 2017-18 AR* IDM at Comment 65, *Certain Hot-Rolled Steel Flat Products from Korea* IDM at Comment 3, and *CSPV Cells from China* IDM at Comment 20.
[77] *Id.* at 9 (citing *CSPV Cells from China* IDM at Comment 20).

16

derived from direct investment in another resident enterprise, excluding investment gains obtained for holding listed and circulating shares issued by a resident enterprise for less than 12 months consecutively."[78] Similarly, the FRG expressly limits the KAV Program to special contract customers "whose average price per kilowatt-hour in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers."[79] Hence, we continue to find that *CSPV Cells from China* and the other previously referenced determinations represent comparable examples of Commerce's approach with respect to findings of *de jure* specificity pursuant to section 771(5A)(D)(i) of the Act.

      Finally, as the petitioners recognize, interpreting the statute to allow for a finding of *de jure* specificity *only* in instances where enterprises or industries are specifically named creates a loophole for circumvention of the CVD law.[80] Indeed, as the petitioners identify, "rather than expressly limiting a subsidy to steel producers{,} a government could just as easily and effectively limit the subsidy to firms that consume a large amount of pig iron each year," thereby ensuring that "the intended beneficiaries of the legislation are the same."[81] We agree. A foreign government can paraphrase or use language that avoids the specific "naming" of a given industry or enterprise (or groups thereof) and skirt the specificity provision all-together. Commerce's concern with such loopholes (or areas of circumvention) are evidenced by its regulations and the documents governing the CVD law, in general. For example, as the *CVD Preamble* explains with respect to the tying of subsidies under 19 CFR 351.525(b), "we are extremely sensitive to potential circumvention of the countervailing duty law. We intend to examine all tying claims

---

[78] *See CSPV Cells from China* IDM at Comment 20.
[79] *See Final Determination* IDM at Comment 8 (citing FRG's 1st SQR at Exhibits KAV-02 and KAV-03).
[80] *See* Petitioners' Comments at 4-5.
[81] *Id.* at 5.

17

closely to ensure that the attribution rules are not manipulated to reduce countervailing duties."[82] We note that, despite addressing the attribution of subsidy benefits, and not findings of specificity, the concerns surrounding circumvention in the *CVD Preamble* are analogous. Indeed, as the *SAA* cautions, "narrowly focused subsidies provided to or used by discrete segments of an economy" should not "escape the purview of the CVD law."[83]  Conversely, a *restrictive* reading of the *de jure* specificity test (*i.e.*, only applicable when enterprises are "specifically named") is not only anathema to the specificity test, but also raises legitimate concerns that parties would exploit loopholes such as this.  In such cases, countervailable subsidies would escape the remedies provided by the CVD law, and injured U.S. industries would not receive the relief to which they are entitled under the law.

In sum, pursuant to section 771(5A)(D)(i) of the Act, where an authority restricts access to a subsidy through a *defined* group of enterprises, that authority has, *by law*, "expressly limited" the program to *that* collective.  This is true where an authority expressly limits a subsidy by law to Companies A, B, and C.  However, it is equally true where an authority expressly limits a subsidy by law to, *e.g.*, special contract customers that pay electricity prices at a certain level, users of specific types of "stationary equipment," or companies that use a certain amount of pig iron, as in the case highlighted by the petitioners.[84]  In all of these instances, authorities are expressly limiting subsidies by law to groups of enterprises, pursuant to section 771(5A)(D)(i) of the Act.

---

[82] *See CVD Preamble*, 63 FR at 65400.
[83] *See* SAA at 930.
[84] *See Final Determination* IDM at Comment 8 (citing FRG's 1st SQR at Exhibits KAV-02 and KAV-03); *see also Softwood Lumber from Canada 2020 AR* IDM at Comment 103, and Petitioners' Comments at 4-5.

V.    **FINAL RESULTS OF REDETERMINATION**

Consistent with the *Second Remand Order*, we have further explained our determination that the KAV Program is specific. Consequently, no change to the subsidy rates calculated in the *Final Determination* is warranted.[85]

8/7/2023



Signed by: LISA WANG

Lisa W. Wang  
Assistant Secretary  
  for Enforcement and Compliance

---

[85] *See Final Determination,* 85 FR at 80012 (unchanged in *CVD Order*, 86 FR at 7536).