UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Claire R. Kelly, Judge

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | )   Ct. No. 21-00080 |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ELLWOOD CITY FORGE COMPANY, *et. al.*, | ) |
| | ) |
| Defendant-Intervenors. | ) |

**PLAINTIFF BGH EDELSTAHL SIEGEN GMBH**
**COMMENTS IN OPPOSITION TO FINAL RESULTS OF REDETERMINATION**

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email:  montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*

Dated: September 6, 2023

**TABLE OF CONTENTS**

I.      ARGUMENT ................................................................................................................ 1

II.     CONCLUSION............................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States,
523 F. Supp. 3d 1393 (CIT 2021) ...........................................................................................4, 5

BGH Edelstahl Siegen GmbH v. United States,
600 F. Supp. 3d 1241 (CIT 2022) ...........................................................................................8, 9

BGH Edelstahl Siegen GmbH v. United States,
No. 21-00080, slip op. 23-71 (May 9, 2023) ......................................................................*passim*

Carlisle Tire & Rubber Co. v. United States,
564 F. Supp. 834 (CIT 1983) ......................................................................................................3

Chevron U.S.A. Inc. v. NRDC,
467 U.S. 837 (1984) ....................................................................................................................4

Colautti v. Franklin,
439 U.S. 379 (1979) ....................................................................................................................2

Montclair v. Ramsdell,
107 U.S. 147 (1883) ....................................................................................................................2

Nexteel Co. v. United States,
28 F.4th 1226 (Fed. Cir. 2022) .................................................................................................11

Nippon Steel Corp. v. United States,
458 F.3d 1345 (Fed. Cir. 2006) .................................................................................................11

Nucor Corp. v. United States,
371 F. App'x 83 (Fed Cir. 2010) ...............................................................................................11

PPG Indus., Inc. v. United States,
928 F.2d 1568 (Fed. Cir. 1991) ...................................................................................................6

PPG Industries, Inc. v. United States,
978 F.2d 1232 (Fed. Cir. 1992) ................................................................................................6, 9

Timex V.I., Inc. v. United States,
157 F.3d 879 (Fed. Cir. 1998) .....................................................................................................4

United States v. Menasche,
348 U.S. 528 (1955) ....................................................................................................................2

**Statutes**

19 U.S.C. § 1677(5A) ................................................................................................ 3, 4

19 U.S.C. § 1677(5A)(D) ......................................................................................... 5, 10

19 U.S.C. § 1677(5A)(D)(i) ......................................................................................*passim*

19 U.S.C. § 1677(5A)(D)(ii) .....................................................................................*passim*

19 U.S.C. § 1677(5A)(D)(iii) ......................................................................................... 10

**Regulations**

19 C.F.R. § 351.502(e) ..................................................................................................... 5

**Administrative Determinations**

Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results of
Countervailing Duty Administrative Review, 88 Fed. Reg. 29889 (2023) .............................. 7, 8

Certain Softwood Lumber Products from Canada: Final Results of Administrative Review of
the Countervailing Duty Order, 85 Fed. Reg. 77163 (2020) ............................................ 7

Certain Softwood Lumber Products from Canada: Final Results and Final Recission,
in Part, of the Countervailing Duty Administrative Review; 2020,
87 Fed. Reg. 48455 (August 9, 2022) ............................................................................ 7

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the
People's Republic of China: Final Results and Partial Rescission of Countervailing Duty
Administrative Review, 87 Fed. Reg. 40491 (2022) .................................................... 8

**Other Authorities**

Countervailing Duties; Final Rule, 63 Fed. Reg. 65348 (1998) ................................... 6

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Doc. No. 103-316, vol. 1 (1994) reprinted in 1994 U.S.C.C.A.N 4040 ........................... 2, 3

Draft Guidelines for the Application of the Concept of Specificity in the Calculation of the
Amount of a Subsidy other than an Export Subsidy,
SCM/W/89, MTN.GNG/NG10/W/4, (1987) ................................................................. 3

Pursuant to the Court's opinion of May 9, 2023 (ECF 58), plaintiff, BGH Edelstahl Siegen GmbH ("BGH"), hereby submits these comments in opposition to the final results of redetermination filed by the U.S. Department of Commerce ("Commerce") in this case on August 7, 2023 (ECF 60-1) ("Redetermination II").

## I.      ARGUMENT

Commerce's final results do not comply with the decisions of this Court or the plain wording of the statute and legislative history.  The Court, now for the second time, remanded this matter back to Commerce with the explicit instructions to "explain how the {KAV} program's criteria are neither economic in nature nor horizontal in application."  BGH Edelstahl Siegen GmbH v. United States, No. 21-00080, slip op. 23-71 at 14 (May 9, 2023) ("BGH II").  In its final results of redetermination, Commerce does not dispute that the KAV program's criteria are economic in nature.  See Redetermination II, 11-12.  Commerce however again fails to explain how the criteria are not horizontal in application.  Rather, Commerce simply states in a conclusory and circular fashion that programs having eligibility criteria are per se vertical in application because enterprises or industries, or groups thereof, that satisfy such criteria are "favored" above others and ineligible firms make up a "bottom tier."  Id. at 11.

This conclusory determination directly conflicts with the Court's prior decisions in this case.  In BGH II, the Court specifically stated:

> That one industry received a benefit and another did not does not mean the first industry was favored.  It only means that the industry qualified under the criteria.

BGH II, slip op. 23-71 at 14.  The Court also went on to rule that, "for the KAV Program's criteria to be vertical in application, the criteria would need to 'expressly limit' the program's application to specifically named enterprises or industries or group of enterprises or industries"

1

and that the "program criteria here do not expressly limit the program's application to specific enterprises or industries."  Id. (citing 19 U.S.C. § 1677(5A)(D)(i)).

As the Court stated, "horizontal" relates to factors that are "uniformly available across industries."  BGH II, slip op. 23-71 at 12.  The KAV eligibility criteria fully satisfy this definition of "horizontal" and there is no evidence in the administrative record demonstrating that these criteria favor any specific enterprise or industry.  Rather, any commercial/industrial enterprise can qualify for the program, only dependent upon the usage and average price of electricity.

Commerce's interpretation of the statute ultimately gives no effect to the provisions of section 1677(5A)(D)(ii) and thereby makes these provisions superfluous.  If, as Commerce claims, any measure applicable not to the total economy but to any subset irrespective of its size and the eligibility criteria is automatically vertical and specific, then the provisions of section 1677(5A)(D)(ii) are treated as irrelevant.  Any interpretation making a statutory clause either "redundant or largely superfluous," is a "violation of the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."  Colautti v. Franklin, 439 U.S. 379, 392 (1979); see also United States v. Menasche, 348 U.S. 528, 538 (1955).  As stressed by the U.S. Supreme Court, it "is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."  Montclair v. Ramsdell, 107 U.S. 147, 152 (1883).

A per se requirement of universal availability to all companies and industries is contrary to the clear wording of sections 1677(5A)(D)(i) and 1677(5A)(D)(ii).  It also runs counter to the Statement of Administrative Action to the Uruguay Round Agreements Act ("SAA"), which

2

cites the decision in <u>Carlisle Tire & Rubber Co. v. United States</u>, 564 F. Supp. 834, 836-39 (CIT 1983) as a "leading case" on the specificity of domestic subsidies. <u>Uruguay Round Agreements Act, Statement of Administrative Action</u>, H.R. Doc. No. 103-316, vol. 1, at 929 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 (hereinafter "<u>SAA</u>"). The SAA states:

> Judge Maletz explained that all governments, including the United States, intervene in their economies to one extent or another, and to regard all such interventions as countervailable subsidies would produce absurd results.

<u>Id</u>. The SAA concludes that the specificity test is meant only to address "narrowly focused subsidies" to "discrete segments of an economy." <u>Id</u>. at 930.

The SAA also gives the number of employees or the size of the enterprise as examples of criteria or conditions that are economic in nature and horizontal in application. <u>Id</u>. The use of the phrase "such as" in the SAA makes it clear that the given examples are not meant to be exhaustive. <u>Id</u>. For example, the GATT Negotiating Group on Subsidies and Countervailing Measures provided the following examples of factors that are economic in nature and horizontal in application:

> Neutral factors would normally be economic in nature, and horizontal in application, (i.e. not restricted to certain enterprises or industries); examples would be levels of unemployment, average <u>per capita</u> income, number of employees, amount of equity or revenues, but could also include such factors as incidence of pollution or health and safety standards.

<u>Draft Guidelines for the Application of the Concept of Specificity in the Calculation of the Amount of a Subsidy other than an Export Subsidy</u>, SCM/W/89, MTN.GNG/NG10/W/4, at 102, n.1. (1987).[1]

---

[1] As explained by the SAA, 19 U.S.C. § 1677(5A) (section 771(5A) of the Tariff Act of 1930) implements the provisions of Article 2 of the WTO Subsidies Agreement dealing with specificity. <u>SAA</u>, at 929 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 4241.

Commerce's determination that a limitation in eligibility criteria to less than all companies and industries is *per se* vertical and specific is also contrary to the Court's decision in *Asemesa II*.  This decision provides an exhaustive review of the statutory provisions concerning *de jure* specificity in 19 U.S.C. § 1677(5A)(D)(i) in the context of a determination by Commerce that a "general finding of non-uniform treatment" sufficed to determine *de jure* specificity. Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States, 523 F. Supp. 3d 1393, 1403-04 (CIT 2021) ("Asemesa II").  The Court applied step one of *Chevron* to Commerce's statutory interpretation by looking to the text of section 1677(5A) and using the traditional tools of statutory construction.  Asemesa II, 523 F. Supp. 3d at 1403 (citing Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998); Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 n.9 (1984)).  The Court explained that "a domestic subsidy is de jure specific '{w}here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry.'" Asemesa II, 523 F. Supp. 3d at 1398 (quoting 19 U.S.C. § 1677(5A)(D)(i)).  The Court then analyzed the dictionary definitions of the terms "express" and "limit" as used in section 1677(5A) and determined:

> Thus, the plain meaning of the statute is that a subsidy is de jure specific when the authority providing the subsidy, or its operating legislation, directly, firmly, or explicitly assigns limits to or restricts the bounds of a particular subsidy to a given enterprise or industry.  There is no ambiguity in this reading.

Asemesa II, 523 F. Supp. 3d at 1403.

The Court therefore rejected "Commerce's interpretation of Section 1677(5A) as permitting a finding of de jure specificity when 'by law, there is no uniform treatment across the agricultural sector in the provision of benefits.'"  Id. (citation omitted).  The Court explained:

> The law's failure to provide uniform treatment in the distribution of subsidies is not equivalent to its explicit restriction of those benefits to a specific enterprise or industry.  It is not sufficient, as Commerce and the Government suggest, for the

> legislation underlying the subsidy under consideration to merely "reference{} and incorporate{}" prior legislation which itself may favor a specific sector.  Such reading reduces the de jure specificity test to a general finding of non-uniform treatment, without any determination that the subsidy in question be explicitly limited to a specific enterprise or industry by the administering authority or its implementing legislation.  As Plaintiffs note, it therefore fails to give meaning to the statute's requirement that a de jure specific subsidy must exhibit explicit restriction to an <u>enterprise or industry</u>. . . .   Under the plain meaning of Section 1677(5A), subsidies are only de jure specific where the authority providing the current subsidy, or its operating legislation, directly and explicitly prescribes limitations on the distribution of subsidies to an enterprise or industry.

<u>Asemesa II</u>, 523 F. Supp. 3d at 1403-04 (citations omitted).

While Commerce states that the program at issue in *Asemesa II* was an agricultural subsidy warranting a unique specificity analysis within the context of the agricultural exception under 19 C.F.R. § 351.502(e), it does not point to anything in the Court's analysis of 19 U.S.C. § 1677(5A)(D) that is limited to the agricultural sector.  *See* <u>Redetermination II</u>, 15-16.  Rather, *Asemesa II* discusses and interprets the provisions of the statute generally applicable to all subsidy investigations.

As in *Asemesa II*, the Court in *BGH II* specifically found that, in order for criteria to be vertical in application, "the criteria would need to 'expressly limit' the program's application to specifically named enterprises or industries or group of enterprises or industries," which was not true of the KAV program criteria in this case.  <u>BGH II</u>, slip op. 23-71 at 14 (quoting 19 U.S.C. § 1677(5A)(D)(i)).

The administrative materials referenced by Commerce in its final results of redetermination are not applicable to the current situation involving the KAV program.  *See* <u>Redetermination II</u>, 7-11.  First, Commerce's citation to the *CVD Preamble* is selective and incomplete.  *See* <u>Redetermination II</u>, 7.  It is not a question of "adding the further requirement that subsidies that are not widely distributed are also confined to a group of enterprises or

industries that share similar characteristics" as claimed by Commerce, but rather determining in the first instance if the subsidies are "uniformly available across industries" (*i.e.*, horizontal) as directed by statute and the Court.  *See* id.; BGH II, slip op. 23-71 at 13.

The paragraph in the *CVD Preamble* just following the one quoted by Commerce in its final determination, discusses the Federal Circuit's decision in PPG Industries, Inc. v. United States, 978 F.2d 1232, 1240-41 (Fed. Cir. 1992) ("PPG II") and states:

> To put *PPG II* in its proper context, it is necessary to understand the facts presented in the underlying CVD case.  In that case, there were numerous enterprises that used the program under investigation.  Therefore, when looked at in terms of the number of enterprises, the actual recipient enterprises did not appear to be limited.  However, this conclusion says nothing about whether the number of industries that received benefits under the program was limited.  To answer this question, the Department (and the Court) correctly focused on the makeup of the users.  If the numerous enterprises that received benefits had comprised a limited number of industries, then the program would have been specific.  However, because the users represented numerous and diverse industries, the program was found not to be specific.

Countervailing Duties; Final Rule, 63 Fed. Reg. 65348, 65357 (1998) ("CVD Preamble").

In *PPG II*, the Federal Circuit explained that:

> the "existence of eligibility requirements does not suffice to identify a discrete class which has been afforded benefits of a 'bounty or grant.'"  Because eligibility requirements always serve to limit participation in any given program and may do so indiscriminately, something more must be shown to prove that the program benefits only a specific industry or group of industries.

PPG II, 978 F.2d at 1240 (quoting PPG Indus., Inc. v. United States, 928 F.2d 1568, 1578 (Fed. Cir. 1991) ("PPG I")).  Commerce violates this legal principle by determining that the existence of eligibility requirements in the KAV program, by itself, renders the criteria *per se* "vertical in nature" and therefore specific.  *See* Redetermination II, 11.

The administrative determinations cited by Commerce in its final results of redetermination are similarly inapposite.  *See* Redetermination II, 8-11.  For example, in *Certain*

*Softwood Lumber Products from Canada 2020*, Commerce specifically found that the subsidy in question was expressly limited to certain specified activities and equipment such as "power shovels, drilling machines, cranes, and cement mixers, concrete pumping trucks and well drills, fire trucks, garbage and recycling trucks, and cleaning trucks (sewer and septic tanks)" ***but not to*** "bulldozer, grader, rotary mixer {soil stabilizer}, compactor, scraper, snow-grooming machine, snow plough, snow blower, spreader of melting agents or abrasives, dump trucks, moving trucks, container trucks, refrigerated trucks, carpet-cleaning trucks, and tow trucks." Certain Softwood Lumber Products from Canada: Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review, 87 Fed. Reg. 48455 (2022) (*Softwood Lumber from Canada 2020*), and accompanying IDM at Comment 103, p. 442.  By contrast, the KAV program has no comparable limitations based upon activities or equipment.

Similarly, the determination in *Softwood Lumber from Canada 2017-2018* provides no precedent for the current issue of whether the KAV program's eligibility criteria are economic in nature and horizontal in application and therefore qualify for the safe harbor under 19 U.S.C. § 1677(5A)(D)(ii).  BGH II, slip op. 23-71 at 11-14.  The application of section 1677(5A)(D)(ii) to the subsidy at issue in *Softwood Lumber from Canada 2017-2018* was apparently never raised, and Commerce's determination regarding this subsidy is completely limited to a discussion of section 1677(5A)(D)(i).  *See* Certain Softwood Lumber Products from Canada: Final Results of Administrative Review of the Countervailing Duty Order, 85 Fed. Reg. 77163 (2020) (*Softwood Lumber from Canada 2017-2018*), and accompanying IDM at Comment 65, p. 274-75.

Likewise, *Certain Hot-Rolled Steel Flat Products from Korea*, related to free emissions permits granted under the Korean emissions trading system.  In that proceeding, Commerce found that the free allocation of emissions permits was limited to specific industries and

enterprises based upon international trade intensity and cost structure and was therefore comparable to the free emission allowances found to be countervailable in *BGH I*.  Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review, 88 Fed. Reg. 29889 (2023) (*Certain Hot-Rolled Steel Flat Products from Korea*) and accompanying IDM at Comment 3, p. 46-47.  However, what Commerce fails to recognize is that in *BGH I*, the Court specifically found that the situation involving the KAV program was not comparable to that of the EU Emissions Trading System ("ETS").  In *BGH I*, the Court expressly stated with respect to the KAV program that:

> unlike the case with the . . . ETS Program, Commerce does not explain how this program favors certain industries over others or otherwise explicitly limits usage as to who may apply.  Commerce does not address whether criteria based on energy usage is economic in nature and horizontal in application, such that the program may be considered not specific as a matter of law pursuant to 19 U.S.C. § 1677(5A)(D)(ii).

BGH Edelstahl Siegen GmbH v. United States, 600 F. Supp. 3d 1241, 1269 (CIT 2022) ("BGH I").  This continues to be the problem with Commerce's final redetermination.  While conceding that the criteria are economic in nature, Commerce fails to meaningfully address the issue of horizontal application in a manner consistent with the text and legislative history of section 1677(5A)(D)(ii) and applicable judicial precedent.

Finally, the determination in *CSPV Cells from China* involved a program which "expressly favor{ed} resident enterprises that make direct investments in other resident enterprises."  Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review, 87 Fed. Reg. 40491 (2022) (*CSPV Cells from China*), and accompanying IDM at Comment 20, p. 77-78.  Accordingly, the situation in the present case is substantially different.  Whereas in *CSPV Cells from China*, the program was not uniformly

8

applied but rather limited to resident enterprises making direct investments in other resident enterprises, the KAV program is applied cross-sectorally throughout the whole economy.  There is no evidence on the record that the criterion limits in any way the availability of the KAV program to specific industries, sectors or even companies.

Moreover, to the extent that these prior administrative determinations do not comport with the text and legislative history of section 1677(5A)(D)(ii) or applicable judicial precedent, such as *PPG II*, *BGH I* and *BGH II*, these administrative determinations have no precedential value for the question at issue in this case.

Failing to find any basis in law or the administrative record to support its determination that the KAV program's criteria are neither economic in nature nor horizontal in application, Commerce resorts to a fanciful hypothetical of a grant program to promote energy efficiency that has "no specific eligibility conditions" and where the administering authority only requires firms to strive to improve energy efficiency without defining or limiting the level of improved efficiency required.  *See* <u>Redetermination II</u>, 6.  This imaginary energy efficiency program without eligibility conditions has no factual connection to the administrative record in this investigation or in any other countervailing duty proceeding we are aware of.  The fact that Commerce must resort to such a fanciful hypothetical to support its statutory interpretation in this case demonstrates the weakness of that interpretation.

Commerce also seems to dismiss the importance of 19 U.S.C. § 1677(5A)(D)(ii) by constantly referring to it as a "corollary."  *See* <u>Redetermination II</u>, 2, 5-6 & 14.  However, as the Court noted in *BGH I*, section 1677(5A)(D)(ii) "provides a safe harbor for subsidies that are 'not specific as a matter of law.'"  <u>BGH I</u>, 600 F. Supp. 3d at 1255.  Thus, subparagraph (ii) of

section 1677(5A)(D) is an important element in determining the specificity of domestic

subsidies and of equal weight with the other subparagraphs of section 1677(5A)(D).

Commerce's claim that its interpretation of the *de jure* specificity provisions of section

1677(5A)(D)(i) is necessary because of "concerns surrounding circumvention" is similarly

without merit.  *See* <u>Redetermination II</u>, 17-18.  If Commerce believes that, despite objective

criteria or conditions governing the eligibility for, and the amount of, a subsidy, a subsidy may

be specific as a matter of fact, its recourse is to the *de facto* specificity provisions 19 U.S.C.

§ 1677(5A)(D)(iii).  There has been no determination of *de facto* specificity in this case; nor do

the facts on the administrative record support such a determination.  Commerce cannot render

section 1677(5A)(D)(iii) inoperative or superfluous by interpreting section 1677(5A)(D)(ii) to

apply only to cases where a subsidy program has "no specific eligibility conditions" as with its

hypothetical energy efficiency program.  *See* <u>Redetermination II</u>, 6.

The Court has already remanded this matter to Commerce on two occasions.

Commerce's remand determinations have provided no serious logical or statutory interpretation

to support its determination that the KAV program's criteria are neither economic in nature nor

horizontal in application.  Rather, Commerce resorts to conclusory and circular arguments and

fanciful hypotheticals to defend its determination.  Commerce makes no attempt to objectively

interpret or analyze the term "horizontal in application" or apply such interpretation to the facts

of this case.

Thus, a further open-ended remand would be futile.  The definition of "horizontal in

application" is clear (*i.e.*, relating to factors that are "uniformly available across industries."

<u>BGH II</u>, slip op. 23-71 at 12), and the facts on the administrative record show that any

commercial/industrial enterprise can qualify for the KAV program, only dependent upon the

usage and average price of electricity.  Therefore, the record supports only one outcome; namely, that the KAV program is not specific as a matter of law pursuant to 19 U.S.C. § 1677(5A)(D)(ii). *See* Nexteel Co. v. United States, 28 F.4th 1226, 1238 (Fed. Cir. 2022) (stating that "an open-ended remand may not be required if it would be 'futile'") (citing Nippon Steel Corp. v. United States, 458 F.3d 1345, 1359 (Fed. Cir. 2006); Nucor Corp. v. United States, 371 F. App'x 83, 90 (Fed Cir. 2010)).

The further open-ended remand of this same question for a third time would also be a waste of judicial resources and those of the parties to this proceeding.  The Court should therefore remand this matter to Commerce with instructions to determinate that the KAV program is not specific as a matter of law pursuant to 19 U.S.C. § 1677(5A)(D)(ii).

## II.     CONCLUSION

For the reasons stated above, Commerce's final results of redetermination are not supported by substantial evidence on the administrative record or in accordance with the law. We therefore respectfully request that the Court remand this case to Commerce for redetermination with instructions to determinate that the KAV program is not specific as a matter of law pursuant to 19 U.S.C. § 1677(5A)(D)(ii).

<div style="margin-left: 40%;">

Respectfully submitted,

 /s/ *Marc E. Montalbine*
Marc E. Montalbine*
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax:  (202) 783-6909

</div>

email:  montalbine@dhlaw.de

Date: September 6, 2023                    *Counsel to BGH Edelstahl Siegen GmbH*

――――――――――――

\* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule
49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in section 2(B)(1)(b) of the Chambers Procedures.  Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1)(c) of the Chambers Procedures, I hereby certify that these comments contain **3,431** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

 /s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*