**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>         Defendant,<br>    and<br><br>ELLWOOD CITY FORGE COMPANY, ET AL.,<br><br>         Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>) Court No. 21-00080<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT-INTERVENORS' REPLY TO PLAINTIFF'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION**

> Thomas M. Beline
> Nicole Brunda
>
> CASSIDY LEVY KENT (USA) LLP
> 900 19th Street, N.W., Ste 400
> Washington, D.C. 20006
> (202) 567-2316
> (202) 567-2301
> *tbeline@cassidylevy.com*
>
> *Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

Dated:   October 6, 2023

**Table of Contents**

Page

I. COMMERCE EXPLAINED WHY THE KAV PROGRAM IS *DE JURE* SPECIFIC ......... 1

II. BGH'S ARGUMENTS DO NOT UNDERCUT THE REASONABLENESS OF COMMERCE'S CONCLUSION ..................................................................................... 4

    A. This Court's Decision in *Asemesa II* Does Not Compel a Finding that the KAV Program is Not *De Jure* Specific .................................................................... 4

    B. Rather than Proscribing a Specific Outcome, the Federal Circuit's *PPG* Decisions Make Clear That Specificity Findings are a "Policy Choice" ........................ 5

    C. The GOG Claimed It Was Unable to Provide Information on KAV Program Recipients, Making a *De Facto* Analysis Impossible ....................................... 6

    D. Commerce's Interpretation of 19 U.S.C. § 1677(5A)(D)(i) Does Not Render 19 U.S.C. § 1677(5A)(D)(iii) "Inoperative or Superfluous" ............................................... 7

III. CONCLUSION ................................................................................................................. 7

# Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1677(5A)(D)(i) ............................................................................................2, 7

19 U.S.C. § 1677(5A)(D)(ii) ...........................................................................................1, 3

19 U.S.C. § 1677(5A)(D)(iii) ..........................................................................................6, 7

Court Decisions

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021) ........................................4, 5

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ................................................................................................................6

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005) ............................................................................................6

*PPG Indus., Inc. v. United States*, 928 F.2d 1568 (Fed. Cir. 1991) ..............................5, 6

*PPG Industries, Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) ...........................5

Administrative Determinations

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2020*, 88 Fed. Reg. 29889 (May 9, 2023) ......................................................................................2

*Certain Softwood Lumber Products from Canada: Final Results and Final Recession, in Part, of the Countervailing Duty Administrative Review, 2020*, 87 Fed. Reg. 48455 (Aug. 9, 2022) ............................................................2

*Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77163 (Dec. 1, 2020) ..........................................................................................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 40491 (Jul. 7, 2022) ................................................................................... 2-3

Other

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Doc. No. 103-316, vol. 1 (1994) ..........................................................................................3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ELLWOOD CITY FORGE COMPANY, ET AL., <br><br> Defendant-Intervenors. | Court No. 21-00080 |

**DEFENDANT-INTERVENORS' REPLY TO PLAINTIFF'S COMMENTS IN OPPOSITION TO SECOND REMAND REDETERMINATION**

Pursuant to the Court's Remand Order (ECF 58) ("Second Remand Order"), defendant-intervenors Ellwood City Forge Company, *et al.*, ("Ellwood") hereby submit comments in reply to plaintiff BGH Edelstahl Siegen GMBH's ("BGH's") comments (ECF 63) ("BGH Second Remand Comments") in opposition to the U.S. Department of Commerce's ("Commerce's") second remand redetermination (ECF 60) ("Second Remand Redetermination").

**I.    COMMERCE EXPLAINED WHY THE KAV PROGRAM IS *DE JURE* SPECIFIC**

In its Second Remand Order, the Court held that Commerce's determination that the KAV Program is *de jure* specific was unsupported by substantial evidence because it found that Commerce failed to fully explain why the KAV program's criteria are neither economic in nature nor horizontal in application and therefore why they failed to qualify as "objective" criteria under 19 U.S.C. § 1677(5A)(D)(ii).  Second Remand Order at 14.  In its Second Remand

1

Redetermination, Commerce reasonably explained why its determination that the KAV program is *de jure* specific conforms with the statute, Commerce's regulations, and past practice.

In particular, Commerce explained that, pursuant to 19 U.S.C. § 1677(5A)(D)(i), a subsidy is specific as a matter of law when the authority providing the subsidy expressly limits access to the subsidy to an enterprise or industry, or group thereof.  Second Remand Redetermination at 14-15.  Commerce clarified that such an express limitation need not involve "specifically named" enterprises or industries; rather, a program can still be *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i) where, as here, an authority "restricts access to a subsidy through a defined group of enterprises" because in such circumstances "that authority has, by law, 'expressly limited' the program to that collective." *Id*. at 18.  Indeed, Commerce noted that it had reached a similar conclusion in various other instances involving similar facts including *inter alia*: (1) where an authority restricted access to enterprises operating particular types of equipment, *see id*. at 8 (citing *Certain Softwood Lumber Products from Canada: Final Results and Final Recession, in Part, of the Countervailing Duty Administrative Review, 2020*, 87 Fed. Reg. 48455 (Aug. 9, 2022), IDM at Cmt. 103), (2) where an authority restricted access to enterprises meeting specific energy consumption and efficiency requirements, *see id*. at 9 (citing *Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty Administrative Review, 2017-2018*, 85 Fed. Reg. 77163 (Dec. 1, 2020), IDM at Cmt. 65), (3) where an authority restricted access to enterprises with defined levels of trade intensity and/or cost structures, *see id*. at 9-10 (citing *Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2020*, 88 Fed. Reg. 29889 (May 9, 2023), IDM at Cmt. 3), and (4) where an authority restricted access to enterprises with investments in other resident enterprises, *see id*. at 10 (citing *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 40491 (Jul. 7, 2022), IDM at Cmt. 20).

Commerce also explained that limiting a *de jure* specificity finding only to instances where enterprises are "specifically named" would be an "anathema to the specificity test," which the SAA makes clear was not intended as a loophole to allow "narrowly focused subsidies provided to or used by discrete segments of an economy" to "escape the purview of the CVD law."  Second Remand Redetermination at 18 (citing Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 929 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 ("SAA") at 930).  Commerce noted that such a restriction would also create significant circumvention concerns, as rather than limiting access to individually identified enterprises or industries in the law, a government could simply limit access by a shared characteristic, as was the case here.  *Id*. at 17-18.

Based on the above considerations, Commerce found that the KAV program is *de jure* specific because the Government of Germany ("GOG") "expressly limits {access to} the KAV Program to special contract customers 'whose average price per kilowatt-hour in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers.'"  Second Remand Redetermination at 17.  Commerce further found that because the KAV program limits access to a pre-defined group of eligible enterprises, it cannot be considered "horizontal in application" or "objective" under 19 U.S.C. § 1677(5A)(D)(ii).  *Id*. at 11.  Commerce's explanation was thorough and its finding is supported by substantial evidence and should be upheld by the Court.

## II. BGH'S ARGUMENTS DO NOT UNDERCUT THE REASONABLENESS OF COMMERCE'S CONCLUSION

In its comments, BGH continues to dispute Commerce's finding that the KAV program is *de jure* specific. Many of BGH's arguments are readily addressed directly by Commerce's Second Remand Redetermination, discussed above. Below Defendant-Intervenors address specific BGH arguments, none of which undercut the legitimacy of Commerce's reasoned explanations.

### A. This Court's Decision in *Asemesa II* Does Not Compel a Finding that the KAV Program is Not *De Jure* Specific

*First*, BGH claims that the court's decision in *Asemesa II* requires that this Court find that the KAV program is not *de jure* specific. *See* BGH Second Remand Comments at 7 (citing *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021) ("*Asemesa II*")). As an initial matter, while the determinations of a sister court are persuasive, they are not binding. Moreover, the fact that the KAV program expressly limits receipt to certain enterprises makes it fundamentally different from the program at issue in *Asemesa II*. In particular, the prior iterations of the European Union's Common Agricultural Policy's Basic Payment Scheme ("BPS") linked receipt of subsidies to production of certain crops. Under the revised BPS program at issue in *Asemesa II*, the Spanish government provided the same subsidy at the same rate to all participating farmers in the same region regardless of the type or volume of crop produced. *Id.* at 1399. While farmers in different regions received different rates based on historical productivity of the region, the Court found that this non-uniform distribution of subsidies across the agricultural sector was insufficient to support a finding of *de jure* specificity because the government-proscribed regional variation in rates had no bearing on the farmers (*i.e.* enterprises) who received the subsidy or the type of crops produced (*i.e.* industries to which the farmers belonged). *Id.* at 1403-1404.

4

By contrast, the KAV program expressly limits benefits to those enterprises meeting certain pre-defined criteria (*i.e.* receipt is limited only to special contract customers 'whose average price per kilowatt-hour in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers'"). Thus, unlike the BPS program at issue in *Asemesa II*, the KAV program does not provide non-uniform distribution of benefits to all enterprises, but rather <u>explicitly limits</u> receipt of benefits to only those enterprises who share a common characteristic. This is a fundamental difference between the BPS and KAV programs. As Commerce explained, and as discussed *supra*, Commerce's analysis of the KAV program in this case was entirely consistent with its prior evaluation of similar programs where eligibility for a program was limited to a defined group of enterprises sharing a common characteristic.

> **B.     Rather than Proscribing a Specific Outcome, the Federal Circuit's *PPG* Decisions Make Clear That Specificity Findings are a "Policy Choice"**

*Second*, BGH claims that Commerce ignored a "legal principle" set by the Federal Circuit's decision in *PPG Industries, Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) ("*PPG II*"). *See* BGH Second Remand Comments at 9. This too is inaccurate. Indeed, in *PPG I*—the original Federal Circuit determination that the *PPG II* Court quotes directly—the Federal Circuit explicitly stated that the definition of specific was a "policy choice" and thus "a matter on which a court must defer to the agency." *PPG Indus., Inc. v. United States*, 928 F.2d 1568, 1577 (Fed. Cir. 1991) ("*PPG I*"). In the investigation underlying *PPG I* and *PPG II*, which Commerce concluded in 1983, Commerce exercised its policy judgement and rejected petitioner's contention that "specific" meant "identifiable" and the Federal Circuit deferred to Commerce's judgement. *Id*. The fact that the passage of four decades and numerous revisions to the trade laws—including the landmark Uruguay Round Agreements Act—has led Commerce to gradually reevaluate and ultimately change its policy is neither surprising nor remarkable. *See generally*

5

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-982 (2005) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 863-864 (1984)) ("An initial agency interpretation is not instantly carved in stone.  On the contrary the agency…must consider varying interpretations and the wisdom of its policy on a continuing basis.")  Indeed, Commerce explained that legitimate concerns about circumvention and exploitable loopholes had led it away from an interpretation that allowed *de jure* specificity only where an enterprise or industry is specifically named. *See* Second Remand Redetermination at 17-18.  As demonstrated by the various examples cited, this has been Commerce's consistent practice in recent years.  *See id*. at 8-10.  As in *PPG I*, this Court should defer to Commerce's policy expertise and experience in administering the statute.

### C. The GOG Claimed It Was Unable to Provide Information on KAV Program Recipients, Making a *De Facto* Analysis Impossible

*Third*, BGH claims that Commerce's concerns about circumvention are "without merit" because Commerce could simply analyze the KAV program under the *de facto* specificity lens of 19 U.S.C. § 1677(5A)(D)(iii).  *See* BGH Second Remand Comments at 13.  Such claims are disingenuous.  As BGH is aware, Commerce specifically asked the GOG to provide information necessary for a *de facto* specificity analysis (*e.g.* the number of firms receiving benefits and their associated industries) in its initial questionnaire, but the GOG claimed it was unable to provide this information because it "does not collect, track, or maintain" information on the number of enterprises or industries who received funding under the program.  *See* GOG Supplemental Questionnaire Response (June 5, 2020), Exhibit KAV-02 at KAV-11 to KAV-12 (P.R. 236, C.R. 177) (GOG response to question L.2(a)-(e)).  Clearly, Commerce cannot assess whether the number of enterprises receiving the subsidy is limited in number under 19 U.S.C. § 1677(5A)(D)(iii) if the GOG is unable to provide an accurate accounting for the number of

enterprises receiving benefits.  This fact only reinforces the legitimacy of Commerce's circumvention concerns and its finding that the KAV program, which explicitly limits access to a defined group of enterprises, is *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i).

### D. Commerce's Interpretation of 19 U.S.C. § 1677(5A)(D)(i) Does Not Render 19 U.S.C. § 1677(5A)(D)(iii) "Inoperative or Superfluous"

*Finally*, and contrary to BHG's assertions, Commerce's interpretation of 19 U.S.C. § 1677(5A)(D)(i) does not make 19 U.S.C. § 1677(5A)(D)(iii) "inoperative or superfluous."  *See* BGH Second Remand Comments at 13.  Rather, 19 U.S.C. § 1677(5A)(D)(iii) continues, as it always has, to apply when a law does not explicitly restrict receipt of benefits to an identified group of enterprises or industries but where those actually benefiting from the program are limited in number.  For example,  as Commerce correctly observed, the hypothetical grant program for energy efficiency improvements it described on page 6 of its Remand Redetermination would not be *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i) because the authority did not restrict access; any enterprise interested in improving energy efficiency would be eligible to apply.  *See* Second Remand Redetermination at 6.  However, Commerce may nonetheless determine the grant program to be *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii) if only a limited number of enterprises actually received funding, for example because the administering authority only approved a limited number of enterprises for awards.  Commerce's analysis in no way undercuts the functioning of these distinct statutory provisions.

### III. CONCLUSION

As explained above, in its Second Remand Redetermination, Commerce fully explained why its determination that the KAV program is *de jure* specific conforms with the statute, Commerce's regulations, and past practice and thus fully complies with the Court's Remand

Order.  The Court should accordingly sustain Commerce's Second Remand Redetermination in full.

                                                                   Respectfully submitted,

                                                                   /s/ Thomas M. Beline
                                                                   Thomas M. Beline
                                                                   Nicole Brunda

                                                                   CASSIDY LEVY KENT (USA) LLP
                                                                   900 19th Street, N.W.
                                                                   Suite 400
                                                                   Washington, D.C. 20006
                                                                   (202) 567-2300
                                                                   (202) 567-2301
                                                                   tbeline@cassidylevy.com

                                                                   *Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

**Certificate of Compliance with Chambers Procedures 2(B)(1)**

      The undersigned hereby certifies that the foregoing reply comments contain 2,030 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, according to the word count function of the word processing system used to prepare these comments.  These comments therefore comply with the maximum 10,000 word count limitations set forth in the Court's Chambers Procedures.

By:   /s/ Thomas M. Beline
        Thomas M. Beline