## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH,            Plaintiff,      v. UNITED STATES,            Defendant, and ELLWOOD CITY FORGE COMPANY *et al.*,            Defendant-Intervenors. | Court No. 21-00080 |

### **DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY<br>Director |
| OF COUNSEL:<br>JOSEPH GROSSMAN<br>Attorney<br>Office of the Chief Counsel<br> for Trade Enforcement & Compliance<br>U.S. Department of Commerce | KELLY M. GEDDES<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044 |
| October 6, 2023 | Attorneys for Defendant |

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

    I.    Standard of Review ................................................................................................ 3

    II.   Commerce's Determination That The KAV Program Is Horizontal In Application Complies With The Second Remand Order, Is Supported By Substantial Evidence, And Is In Accordance With Law ................................................................................ 4

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021) .................................................................................................. 7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ...................................................................... 3

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) ..................................................................... 3

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ....................... 3

*PPG Industries, Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) ........................................ 7

**Statutes**

19 U.S.C. § 1516a .......................................................................................................................... 3

19 U.S.C. § 1677 ............................................................................................................... 4, 5, 7, 9

**Regulations**

19 C.F.R. § 351.502 ....................................................................................................................... 7

**Administrative Determinations**

*Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 88 Fed. Reg. 29,889 (Dep't of Commerce May 9, 2023) ....................................................................................................... 9

*Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020) ............................................................................................................................. 8

*Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 48,455 (Dep't of Commerce Aug. 9, 2022) ......................................................................................................................... 6, 8

*Countervailing Duties; Final Rule*, 63 Fed. Reg. 65348, 65357 (Dep't of Commerce Nov. 25, 1998) .......................................................................................................................................... 7

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 87 Fed. Reg. 4,0491 (Dep't of Commerce July 7, 2022) .............. 9

**Other Authorities**

Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040 ....................................................... 4, 7, 8, 9

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ELLWOOD CITY FORGE COMPANY *et al.*, ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00080 |

## **DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by Plaintiff BGH Edelstahl Seigen GmbH (BGH) (ECF No. 63), concerning the Department of Commerce's second remand redetermination, Final Results of Redetermination Pursuant to Court Remand (Aug. 7, 2023) (ECF No. 60) (P.R.R. 6) (Second Remand Redetermination),[1] issued by Commerce pursuant to this Court's opinion and second remand order, *BGH Edelstahl Seigen GmbH. v. United States (BGH II)*, 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023) (ECF No. 58). As explained below, the Court should sustain the second remand redetermination and enter final judgment for the United States because Commerce has complied with the second remand order and the second remand redetermination is supported by substantial evidence and otherwise in accordance with law.

---

[1] Citations to the public record (P.R.R.) refer to the record of the countervailing duty administrative redetermination.

**BACKGROUND**

On January 8, 2020, Commerce initiated a countervailing duty (CVD) investigation of fluid end blocks from the Federal Republic of Germany (Germany). *See Forged Steel Fluid End Blocks from the Federal Republic of Germany, India, Italy and the People's Republic of China*, 85 Fed. Reg. 2,385 (Dep't of Commerce Jan. 15, 2020) (initiation of CVD investig.). In its final determination, Commerce found seven climate change programs to be countervailable, including the Concession Fee Ordinance (KAV Program). *See Forged Steel Fluid End Blocks from the Federal Republic of Germany*, 85 Fed. Reg. 80,011 (Dep't of Commerce Dec. 11, 2020) (final CVD determin.), and accompanying Issues and Decision Memorandum (IDM). BGH initiated this action by appealing Commerce's final determination to this Court on March 29, 2021. On October 12, 2022, this Court sustained in part and remanded in part Commerce's final determination. *See BGH Edelstahl Seigen GmbH. v. United States*, 600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) (*BGH I*) (ECF No. 42). The Court directed Commerce on remand to (1) consider whether to account for compliance costs in its calculation of the CVD rate for subsidy programs under the Electricity Tax Act and Energy Tax Act; and (2) explain or reconsider its determination that the KAV Program is a specific subsidy. *See id.* at 1258, 1269.

On January 10, 2023, Commerce issued its first remand redetermination. *See* Final Results of Remand Pursuant to Court Remand (Jan. 10, 2023) (ECF No. 48) (First Remand Redetermination). Commerce provided additional explanation as to why it did not incorporate an offset for compliance costs into its subsidy rate calculation for the Electricity Tax Act and Energy Tax Act, *see id.* at 4-8, 11-15, and the Court sustained that determination. *See BGH II*, 639 F. Supp. 3d at 1242. Commerce also provided further explanation as to why it found the KAV Program *de jure* specific, *see* First Remand Redetermination at 8-10, 16-18, but the Court remanded the issue for reconsideration or further explanation. *See BGH II*, 639 F. Supp. 3d at

2

1244. Specifically, this Court directed Commerce to explain how the KAV Program's eligibility criteria "are neither economic in nature nor horizontal in application." *Id*.

On July 13, 2023, Commerce issued its draft remand redetermination for the second remand. *See* P.R.R. 1. On July 19, 2023, BGH and the petitioners commented on the draft, *see* P.R.R. 4-5, and on August 7, 2023, Commerce issued its final redetermination. *See* Second Remand Redetermination. In the redetermination, Commerce further explained its determination that the KAV Program is specific and, as explained in more detail below, addressed how the criteria are not economic in nature and horizontal in application. *Id.* at 5-12, 14-18.

## ARGUMENT

### I. Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Further, where Congress has entrusted Commerce to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

3

II. **Commerce's Determination That The KAV Program Is Horizontal In Application Complies With The Second Remand Order, Is Supported By Substantial Evidence, And Is In Accordance With Law**

In its second remand order, this Court directed Commerce to further explain or reconsider its determination that the KAV Program does not satisfy the requirements of 19 U.S.C. § 1677(5A)(D)(ii), which defines certain subsidies that are "not specific as a matter of law." *See BGH II*, 639 F. Supp. 3d at 1237, 1244. Specifically, the Court directed Commerce to "explain how the program's criteria are neither economic in nature nor horizontal in application." *Id*. Commerce has complied with this order, and its determination is supported by substantial evidence and in accordance with law. The remand results should therefore be sustained.

As this Court explained, 19 U.S.C. § 1677(5A)(D)(ii) provides that subsidies are not specific as a matter of law if four requirements are met: (1) there are "objective criteria or conditions" governing eligibility; (2) "eligibility is automatic"; (3) "the criteria or conditions for eligibility are strictly followed"; and (4) the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document." *BGH II*, 639 F. Supp. 3d at 124 (quoting statutory language). The issue in this case is whether the KAV Program has "objective criteria or conditions" for eligibility. The statute defines "objective criteria or conditions" as "criteria or conditions that are neutral and do not favor one enterprise or industry over another." 19 U.S.C. § 1677(5A)(D)(ii). As this Court further explained, "neutral" means "economic in nature and horizontal in application." *BGH II*, 639 F. Supp. 3d at 1243 (quoting Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4243 (SAA)). In turn, "economic" means that a subsidy "relates to the consumption of goods and service" and "horizontal" means "applying to similar enterprises uniformly." *BGH II*, 639 F. Supp. 3d at 1243. On remand, Commerce was therefore tasked with determining whether the KAV Program's eligibility requirements "are

4

based upon factors relating to the consumption of goods or services and are uniformly available across industries." *Id.*

In its first remand redetermination, Commerce had found the KAV Program to be vertical in application because it "favors certain enterprises over others." First Remand Redetermination at 9. However, the Court found this justification insufficient, because a subsidy is not necessarily vertical where "one industry received a benefit and another did not." *BGH II*, 639 F. Supp. 3d at 1244. Rather, "for the KAV Program's criteria to be vertical in application, the criteria would need to 'expressly limit' the program's application to specifically named enterprises or industries or group[s] of enterprises or industries." *Id.* (quoting 19 U.S.C. § 1677(5A)(D)(i)).

In its second remand redetermination, Commerce explains that the KAV Program does satisfy the standard stated by the Court, because it expressly limits eligibility to a specifically named group of enterprises or industries. Indeed, it limits eligibility to the group of "special contract customers"—meaning customers whose measured power exceeds 30 kilowatts in at least two months of the billing year and whose annual consumption is more than 30,000 kilowatt hours (kWh)—whose "electricity prices were lower than the Marginal Price agreed upon by the network operator and the municipality." Second Remand Redetermination at 4. The KAV Program is therefore not uniformly available across industries or enterprises. *Id*. at 5-6, 11. Accordingly, Commerce continues to find that the KAV Program is vertical in application.

BGH essentially argues that a subsidy program does not apply to a specifically named group of enterprises or industries if that group is defined by the terms of the subsidy. However, Commerce has consistently found that "a subsidy can be *de jure* specific pursuant to {19 U.S.C. §1677(5A)(D)(i)} where an authority expressly limits access to a 'group' of enterprises or

5

industries which the authority, itself, defines, but which does not necessarily comprise 'specifically named' enterprises or industries (*e.g.,* Companies A, B, and C or the steel and automotive industries)." *Id.* at 7 (citing *Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 48,455 (Dep't of Commerce Aug. 9, 2022) (final CVD admin. review), and accompanying IDM at cmt. 103). This is consistent with the Court's remand order, which expressly allowed that a subsidy may be vertical in application if it is limited to "specifically named enterprises or industries *or group[s]* of enterprises or industries." *BGH II*, 639 F. Supp. 3d at 1244.

Further, as Commerce explains in its second remand redetermination, this approach is necessary because "interpreting the statute to allow for a finding of *de jure* specificity *only* in instances where enterprises or industries are specifically named creates a loophole for circumvention of the CVD law." *Id.* at 17. For instance, as petitioners explained in their comments on the draft second remand redetermination, "'rather than expressly limiting a subsidy to steel producers{,} a government could just as easily and effectively limit the subsidy to firms that consume a large amount of pig iron each year,' thereby ensuring that 'the intended beneficiaries of the legislation are the same.'" *Id.* (quoting P.R.R. 4 at 4-5). In other words, a foreign government could simply paraphrase or use language that conveys a benefit to a group without specifically naming that industry or enterprise to achieve the same result. *Id*. To avoid such a loophole, Commerce finds subsidies vertical in application where they are limited to defined groups, even where the groups do not consist of specifically named enterprises or industries, but rather are defined by criteria set forth in the legislation or other legal instrument defining the subsidy.

6

This position is consistent with Commerce's regulations, which provide that "in determining whether a subsidy is being provided to a 'group'…{Commerce} is not required to determine whether there are shared characteristics among the enterprises or industries that are eligible for, or actually receive, a subsidy." *See* 19 C.F.R. § 351.502(b).  Rather, the purpose of the specificity test is "to ensure that subsidies that are distributed very widely throughout an economy are not countervailed." *See Countervailing Duties; Final Rule*, 63 Fed. Reg. 65348, 65357 (Dep't of Commerce Nov. 25, 1998) (CVD Preamble).  There is no "further requirement that subsidies that are not widely distributed are also confined to a group of enterprises or industries that share similar characteristics." *See id*.  Moreover, the SAA elaborates that 19 U.S.C. § 1677(5A)(D) does not provide a precise formula for determining what number of eligible enterprises or industries is sufficiently small to be considered specific.  *See* Second Remand Redetermination at 7; SAA at 929-30.  Commerce acted in accordance with this framework when it determined that Germany created a specific subsidy when it limited eligibility to special contract customers that pay electricity prices below a certain level.

BGH argues that Commerce is essentially finding any programs with eligibility criteria to be *per se* vertical in application.  *See* BGH Cmts. at 1-6.  According to BGH, this contradicts the *CVD Preamble* as well as this Court's prior decisions and renders 19 U.S.C. § 1677(5A)(D)(ii) superfluous.  *Id.*  (citing *PPG Industries, Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992); *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 523 F. Supp. 3d 1393 (Ct. Int'l Trade 2021)).  But Commerce did not find that *any* eligibility criteria would render a subsidy *per se* vertical.  Rather, it looked specifically at the requirements of the KAV Program, which limit eligibility to a class of special contract customers, and then further limited eligibility to a subset of those customers based on their annual electricity costs.  *See* Second

7

Remand Redetermination at 5.  Commerce contrasted this with the examples of horizontal criteria in the SAA, such as number of employees or the size of an enterprise.  *Id.* at 4.  It also compared the KAV Program to a hypothetical program providing subsidies to any companies that "strive to improve energy efficiency."  *Id.* at 6.  Programs defined by such broad criteria might be horizontal in application, but the KAV Program is expressly limited eligibility to a far more narrowly defined group of enterprises and is therefore vertical in application.  *Id.*

As Commerce explained in the second remand redetermination, this position and explanation are supported by Commerce's past determinations, which have repeatedly affirmed that a subsidy may be specific where the group that is eligible for the subsidy is defined by the relevant authority in the same instrument that defines the terms of the subsidy.  *See id*. at 8-11.  For instance, in a case quite similar to this one, Commerce determined a program was *de jure* specific where "eligibility for the program was limited to industrial customers that consumed more than one gigawatt hour of electricity annually and undertook energy efficiency upgrades that met certain minimum requirements, such as projected savings of at least 300 megawatt hours annually."  *Id*. at 9 (citing *Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020), and accompanying IDM at cmt. 65) (final CVD admin. review).  In a later segment of the same proceeding, Commerce found a fuel tax refund program to be *de jure* specific where the application form limited eligibility to only users operating certain specified stationary equipment.  *See id.* at 8 (citing *Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 48,455 (Dep't of Commerce Aug. 9, 2022) (final CVD review), and accompanying IDM at cmt. 103).  BGH argues that this case is distinguishable because the KAV Program does not have "comparable limitations based upon activities or equipment."  *See id*. at

8

7.  But the KAV Program's eligibility *is* tied to certain activities—companies' usage of electricity and their corresponding electricity costs.  *See id.* at 14.

Commerce also found a subsidy specific where "the implementing legislation for the program limited access to resident enterprises that made direct investments in other resident enterprises."  *Id.* at 10 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 87 Fed. Reg. 4,0491 (Dep't of Commerce July 7, 2022) (final CVD admin. review), and accompanying IDM at cmt. 20).  BGH argues this is distinguishable because that program "was not uniformly applied but rather limited to resident enterprises making direct investments in other resident enterprises, {while} the KAV Program is applied cross-sectorally throughout the whole economy."  *See* BGH Cmts. at 8-9.  This argument is conclusory; BGH does not explain how the KAV Program's energy usage criteria are any broader that the criteria of "resident enterprises making direct investments in other resident enterprises."

Commerce has also found a subsidy *de jure* specific where it was available only to "firms with defined levels of trade intensity and/or cost structures."  *Id.* at 9-10 (citing *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 88 Fed. Reg. 29,889 (Dep't of Commerce May 9, 2023) (final CVD admin. review), and accompanying IDM at cmt. 3).  In sum, Commerce has consistently found subsidy programs similar to the KAV Program to be specific, where the group of industries or enterprises is defined by the terms of the subsidy program.

Having found that the KAV Program is vertical in application, Commerce concluded that the program does not have "objective criteria or conditions" as required for a subsidy to fall within the scope of the safe harbor provided by 19 U.S.C. § 1677(5A)(D)(ii).  The SAA provides that this requirement is satisfied only where the criteria are economic in nature *and* horizontal in

9

application.  *See* Second Remand Redetermination at 11-12 (citing SAA at 930).  Commerce therefore did not reach the issue of whether the KAV Program's criteria are economic in nature.  *Id.*

In reaching its conclusions, Commerce complied with the Court's second remand order by further explaining its determination that the KAV Program is *de jure* specific, and in particular by addressing how the criteria are not "economic in nature and horizontal in application."  *BGH II*, 639 F. Supp. 3d at 1243.  Further, for the reasons provided above, Commerce's determination is supported by substantial evidence and in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Second Remand Redetermination and enter final judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/  Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/ Kelly M. Geddes
KELLY M. GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044

OF COUNSEL:
JOSEPH GROSSMAN
Attorney
Office of the Chief Counsel
 for Trade Enforcement & Compliance
U.S. Department of Commerce

October 6, 2023

Attorneys for Defendant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief contains 2,790 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

/s/ Kelly M. Geddes
KELLY M. GEDDES

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH,  ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ELLWOOD CITY FORGE COMPANY *et al.*, ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00080 |

## **ORDER**

Upon consideration of the U.S. Customs and Border Protection's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety.

Dated _____          _____
    New York, N.Y.                                    Judge