C-428-848
Remand
Slip Op. 23-159
POI:  01/01/2018 – 12/31/2018
**Public Document**
E&C/OVIII:  SS

***BGH Edelstahl Siegen GmbH v. United States*, 663 F. Supp. 3d 1378 (CIT 2023)**
**Forged Steel Fluid End Blocks from the Federal Republic of Germany**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.   SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of
redetermination pursuant to the third remand opinion and order of the U.S. Court of International
Trade (CIT) in *BGH Edelstahl Siegen GmbH v. United States*, 663 F. Supp. 3d 1378 (CIT 2023)
(*Third Remand Order*).  These final results of redetermination concern the final determination of
the countervailing duty (CVD) investigation on forged steel fluid end blocks from the Federal
Republic of Germany (Germany) and Commerce's *Second Remand Results*.[1]  In the *Final
Determination* and the *Second Remand Results*, we determined that the
Konzessionsabgabenverordung (KAV) Program was *de jure* specific pursuant to section
771(5A)(D)(i) of the Tariff Act of 1930, as amended (the Act).[2]  On November 14, 2023, the
CIT, again, remanded for Commerce to further explain or reconsider its determination that the
KAV Program was *de jure* specific.[3]  Specifically, on remand, the CIT stated that Commerce

---

[1] *See Forged Steel Fluid End Blocks from the Federal Republic of Germany:  Final Affirmative Countervailing Duty
Determination*, 85 FR 80011 (December 11, 2020) (*Final Determination*), and accompanying Issues and Decision
Memorandum (IDM); *see also Forged Steel Fluid End Blocks from the People's Republic of China, the Federal
Republic of Germany, India, and Italy:  Countervailing Duty Orders, and Amended Final Affirmative
Countervailing Duty Determination for the People's Republic of China*, 86 FR 7535 (January 29, 2021) (*Order*);
and *Final Results of Redetermination Pursuant to Court Remand, BGH Edelstahl Siegen GmbH v. United States*,
Consol. Court No. 21-00080; Slip. Op. 23-71 (CIT May 9, 2023), dated August 7, 2023 (*Second Remand Results*),
available at https://access.trade.gov/resources/remands/23-71.pdf.
[2] *See Final Determination* IDM at Comment 8; and *Second Remand Results* at 5 and 19.
[3] *See Third Remand Order*, 663 F. Supp. 3d at 1384-85.

"can either explain and support its determination that the criteria are not neutral, (*i.e.*, are not economic in nature and horizontal in application) or conduct a *de facto* analysis or reconsider its determination."[4]

On January 16, 2024, Commerce released its draft results of redetermination.[5]  We provided interested parties with an opportunity to comment on the Draft Results.[6]  On January 23, 2024, BGH Edelstahl Siegen GmbH (BGH Siegen) and the petitioners[7] submitted timely comments on the Draft Results.[8]

Consistent with the *Third Remand Order*, we have reconsidered our determination. Under respectful protest,[9] we find that the KAV Program is not *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.  Additionally, because there is no basis to reconsider our prior finding that the KAV Program "is *de jure* specific rather than *de facto* specific,"[10] we have determined that this program does not constitute a countervailable subsidy.  Consequently, we have revised the subsidy rates for BGH Siegen, Schmiedewerke Gröditz GmbH (SWG), voestalpine Bohler Group (voestalpine Bohler), and all other producers/exporters not subject to individual examination from the rates in the *Final Determination*.[11]

In the "Interested Party Comments" section below, we have addressed the petitioners' and BGH Siegen's comments on the Draft Results.

---

[4] *Id.*, 663 F. Supp. 3d at 1385.
[5] *See* Draft Results of Redetermination Pursuant to Court Remand, *BGH Edelstahl Siegen GMBH v. United States*, Consol. Court No. 21-00080, Slip Op. 23-159 (CIT November 14, 2023), dated January 16, 2024 (Draft Results).
[6] *Id.* at 7.
[7] The petitioners are the FEB Fair Trade Coalition and its individual members, which are the Forging Industry Association, Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons Steel.
[8] *See* BGH Siegen's Letter, "Comments on Draft Results of Redetermination," dated January 23, 2024 (BGH Siegen's Comments); *see also* Petitioners' Letter, "Petitioners' Comments on Commerce's Draft Results of Redetermination," dated January 23, 2024 (Petitioners' Comments).
[9] *See Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003) (*Viraj*).
[10] *See Final Determination* IDM at Comment 8; *see also Third Remand Order*, 663 F. Supp. 3d at 1384.
[11] *See Final Determination*, 85 FR at 80012, unchanged in *Order*, 86 FR at 7536.

## II.      BACKGROUND

In the *Final Determination*, we determined that the KAV Program was *de jure* specific pursuant to section 771(5A)(D)(i) of the Act because the Government of Germany (GOG) "expressly limited access to the subsidy by providing relief to only those companies whose average price per kilowatt-hour {(kWh)} in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers."[12]  In its *First Remand Order*, the CIT explained that Commerce's *Final Determination* did not address how the KAV Program favored certain industries over others or otherwise explicitly limited usage as to who may apply.[13]  As the CIT elaborated, "{l}imiting the availability of a program may not be *de jure* specific if the criteria are neutral, *i.e.*, do not favor some industries over others."[14]  The CIT held that "Commerce did not address whether criteria based on energy usage is economic in nature and horizontal in application, such that the program may not be specific as a matter of law" pursuant to section 771(5A)(D)(ii) of the Act.[15]  On this basis, the CIT remanded for Commerce to further explain or reconsider its determination.[16]

In the *First Remand Results*, we continued to find the KAV Program to be *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.[17]  We also found that the KAV Program did not meet the standards set forth in section 771(5A)(D)(ii) of the Act, because the objective criteria or conditions of the program were not neutral.[18]  Specifically, we found that the GOG

---

[12] *See Final Determination* IDM at Comment 8 (citing section 771(5A)(D)(i) of the Act).
[13] *See BGH Edelstahl Siegen GMBH v. United States*, 600 F. Supp. 3d 1241, 1269 (CIT 2022) (*First Remand Order*).
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See Final Results of Redetermination Pursuant to Court Remand, BGH Edelstahl Siegen GmbH v. United States*, Consol. Court No. 21-00080, Slip. Op. 22-117 (CIT October 12, 2022), dated January 9, 2023 (*First Remand Results*), at 8, available at https://access.trade.gov/resources/remands/22-117.pdf.
[18] *Id.* at 9.

favored certain enterprises over others through the KAV Program because: (1) only "special contract customers" were eligible for the program; and (2) the program favored a specific subset of special contract customers—those applicants with electricity prices that were lower than the Marginal Price agreed upon by the network operator and the municipality.[19]  In addition, we explained that the SAA identifies "number of employees or the size of the enterprise" as examples of criteria that are economic in nature and horizontal in application.[20]  Thus, we found that criteria based on electricity prices for a specific group (*i.e.*, special contract customers with electricity prices that were lower than the Marginal Price agreed upon by the network operator and the municipality) were not "economic in nature and horizontal in application" in accordance with the description in the SAA.[21]

In its *Second Remand Order*, the CIT held that Commerce's *First Remand Results* failed to explain: (1) how the amount of electricity consumed or the electricity prices paid by companies are not economic in nature; and (2) how criteria based solely on electricity consumption and pricing are not horizontal in application.[22]  Regarding the latter, the CIT explained that for the KAV Program's criteria to be vertical in application, the criteria would need to expressly limit the program's application to specifically named enterprises or industries or a group of enterprises or industries.[23]  The CIT elaborated that the GOG's eligibility criteria for the KAV Program did not expressly limit the program's application to specific enterprises or

---

[19] *Id.*
[20] *Id.* at 10 (citing Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 930).
[21] *Id.*
[22] *See BGH Edelstahl Siegen GmbH v. United States*, 639 F. Supp. 3d 1237, 1243-44 (CIT 2023) (*Second Remand Order*).
[23] *Id.*, 639 F. Supp. 3d at 1244 (citing section 771(5A)(D)(i) the Act).

industries or groups of enterprises or industries.[24]  Accordingly, the CIT, again, remanded for Commerce to further explain or reconsider its determination.[25]

In the *Second Remand Results*, we found that the GOG's eligibility criteria for the KAV Program were not horizontal in application, and thus, not neutral, pursuant to section 771(5A)(D)(ii) of the Act.[26]  We explained that "where an authority, by law, limits eligibility to a group of enterprises or industries (*e.g.*, those that operate specific types of 'stationary equipment'), it *cannot* {emphasis added} do so uniformly."[27]  Further, we explained that "by expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical in nature."[28]  Applying this analysis to the KAV Program, we found that "only special contract customers with lower average prices per kWh in the calendar year than the average revenue per kWh from the supply of electricity to all special contract customers are in the tier of eligibility (*i.e.*, the top tier) for the program.  All firms that did not pay these prices were in the tier of ineligible firms (*i.e.*, the bottom tier)."[29]  On this basis, we found the eligibility criteria for the KAV Program to be vertical in application.[30]

In its *Third Remand Order*, the CIT held that Commerce's position that a subsidy is *de jure* specific where "implementing legislation expressly limit{s} access to the 'group' that the legislation itself created" to be contrary to law.[31]  The CIT elaborated that "{t}he statute allows a subsidy to be limited to fewer than all enterprises or industries in an economy, so long as that

---

[24] *Id.*
[25] *Id.*
[26] *See Second Remand Results* at 11.
[27] *Id.* (citing *Certain Softwood Lumber Products from Canada:  Final Results and Final Rescission, in Part, of the Countervailing Duty Administrative Review, 2020*, 87 FR 48455 (August 9, 2022), and accompanying IDM at Comment 103).
[28] *Id.*
[29] *Id.* (citing *Final Determination* IDM at Comment 8; and GOG's Letter, "First Supplemental Questionnaire: Response to Certain Questions," dated June 5, 2020, at Exhibits KAV-02 and KAV-03).
[30] *Id.*
[31] *See Third Remand Order*, 663 F. Supp. 3d at 1384.

criteria creating that legislation is objective."[32]  On this basis, the CIT remanded for Commerce to further explain or reconsider its determination that the KAV Program is *de jure* specific.[33]

## III.    ANALYSIS

Consistent with the *Third Remand Order*, we have reconsidered our determination that the KAV Program is *de jure* specific.  The CIT explained that "{t}he issue Commerce must, but fails, to address is whether criteria is horizontal—that is, whether it is available across enterprises or industries."[34]  The CIT elaborated that, "Commerce cannot rely upon its determination {that} by 'expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical in nature' as that determination is contrary to law."[35]  Thus, the CIT held that our determination with respect to the GOG's establishment of vertical eligibility criteria for the KAV Program was contrary to law.

On remand, we find no other basis on the record to conclude that the GOG established vertical eligibility criteria for the KAV Program.[36]  Consequently, we find, under respectful protest,[37] that the KAV Program is not *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.  While we remain mindful that Commerce may conduct a *de facto* analysis,[38] for the reasons explained above, we determine that the KAV Program does not constitute a countervailable subsidy.

---

[32] *Id.* (citing SAA at 4242).

[33] *Id.*

[34] *Id.*, 663 F. Supp. 3d at 1383, n.9.

[35] *Id.*, 663 F. Supp. 3d at 1384.

[36] *See Final Determination* IDM at Comment 8; During the investigation, the GOG reported that it does not collect, track, or maintain information on usage of the KAV Program in the ordinary source of business.  Specifically, the GOG explained that "{b}ecause no governmental authority is involved in administering the process towards the final consumer established based on Section 2(4) of the KAV, the GOG does not have data on the concession fees paid by a specific company."  *See* GOG's Letter, "First Supplemental Questionnaire:  Response to Certain Questions," dated June 5, 2020, at Exhibit KAV-02 (pp. KAV-3 and KAV-11 to KAV-12).

[37] *See Viraj*, 343 F.3d at 1376; *see Final Determination* IDM at Comment 8.

[38] *See Third Remand Order*, 663 F. Supp. 3d at 1384.

## IV.    INTERESTED PARTY COMMENTS

*BGH Siegen's Comments*

- In the Draft Results, Commerce determined that the KAV Program does not constitute a countervailable subsidy.  BGH Siegen supports this determination.  However, Commerce should not have made this determination "under respectful protest."[39]
- Although Commerce released no disclosure materials, BGH Siegen's revised subsidy rate appears to be correct.[40]

*Petitioners' Comments*

- Commerce's determination not to conduct a *de facto* specificity analysis of the KAV Program was not in accordance with the CIT's remand instructions or the unambiguous language of the statute.[41]
- To comply with the statute, Commerce cannot simply ignore the statute's *de facto* specificity provisions in section 771(5A)(D)(iii) of the Act.[42]
- Although a finding of *de jure* specificity may preclude the need for a *de facto* specificity analysis, as only one type of specificity is required for a countervailability finding, the opposite is not the case.  If Commerce determines that a program is not *de jure* specific, then it must conduct a *de facto* analysis.[43]
- The fact that Commerce determined, under respectful protest, that the KAV Program is not *de jure* specific necessitates an analysis to determine whether the program is *de facto* specific.  This is a separate statutory inquiry that is unrelated to the *de jure* specificity of the KAV program.  Commerce should fulfill this statutory directive.[44]

**Commerce's Position:**

Despite supporting Commerce's Draft Results, which resulted in a lower overall subsidy rate for the company, BGH Siegen criticizes the agency for making its decision under respectful protest.  BGH Siegen's disapproval reflects the company's misunderstanding of the administrative process.  Put simply, the manner in which Commerce conducts its remand proceedings (including whether to issue its decision under protest) is beyond the purview of

---

[39] *See* BGH Siegen's Comments at 1-2.
[40] *Id.* at 2.
[41] *See* Petitioners' Comments at 2.
[42] *Id.* at 3.
[43] *Id.* at 5.
[44] *Id.*

interested parties, including BGH Siegen;[45] moreover, BGH Siegen fails to provide *any* support for its argument to the contrary.[46]

BGH Siegen's perfunctory comment on the accuracy of its revised overall subsidy rate is similarly without merit.  Indeed, BGH Siegen fails to identify *any* error that would call into question the accuracy of the company's revised overall subsidy rate (*i.e.*, 5.81 percent).[47]

Separately, the petitioners assert that further analysis of *de facto* specificity for the KAV Program is necessary.[48]  The petitioners, however, fail to provide *any* evidence in support of their claim.[49]  In this remand, we find there is no basis to reconsider that finding,[50] we determine that the KAV Program does not constitute a countervailable subsidy.  We also note that this is *the first time* that the petitioners have raised such a claim; up to this point, they have been supportive of Commerce's *de jure* finding.[51]  Regardless, Commerce analyzes information on the record to determine whether a subsidy meets any of the specificity provisions in section 771(5A) of the Act.  If record evidence supports an affirmative determination of specificity pursuant to any of these provisions, then Commerce will determine that the program is specific.[52]  In the *Final*

---

[45] *See ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (CIT 2017) (absent express language from the Court, Commerce has broad discretion in its remand proceedings); *see also Viraj*, 343 F.3d at 1376.

[46] *See generally* BGH Siegen's Comments.

[47] *See* Draft Results at 7; *see also Final Determination*, 85 FR at 80012 and IDM at 7 (BGH Siegen's overall subsidy rate in the *Final Determination* was 5.86 percent *ad valorem*, and its rate for the KAV Program was 0.05 percent *ad valorem*).

[48] *See* Petitioners' Comments at 5.

[49] *Id. generally* at 5.

[50] *Id.*  During the investigation, the GOG reported that it does not collect, track, or maintain information on usage of the KAV Program in the ordinary source of business.  Specifically, the GOG explained that "{b}ecause no governmental authority is involved in administering the process towards the final consumer established based on Section 2(4) of the KAV, the GOG does not have data on the concession fees paid by a specific company."  *See* GOG's Letter, "First Supplemental Questionnaire:  Response to Certain Questions," dated June 5, 2020, at Exhibit KAV-02 (pp. KAV-3 and KAV-11 to KAV-12).

[51] *See* Petitioners' Letters, "Petitioner's Case Brief," dated November 2, 2020; and "Petitioners' Comments on Commerce's Draft Results of Redetermination," dated July 19, 2023.

[52] *See, e.g., Drawn Stainless Steel Sinks from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 78 FR 13017 (February 26, 2013), and accompanying IDM at Comment 8; and *Certain Softwood Lumber Products from Canada:  Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 FR 51814 (November 8, 2017), and accompanying IDM at Comments 50 and 52.

*Determination*, Commerce determined that the KAV Program "is *de jure* specific rather than *de facto* specific."[53]  Additionally, as explained, above, there is nothing on the administrative record of this proceeding to support a reconsideration of that finding.

## V.    FINAL RESULTS OF REDETERMINATION

Consistent with the *Third Remand Order*, we have reconsidered our determination that the KAV Program is *de jure* specific pursuant to section 771(5A)(D)(i) of the Act.  As a result of our analysis,[54] we have removed the KAV Program from the overall subsidy rates for BGH Siegen, SWG, and voestalpine Bohler.[55]  We also recalculated the all-others rate.[56]  The revised subsidy rates for the period of investigation of January 1, 2018, through December 31, 2018 are reflected in the table, below.  Should the CIT sustain these final results of redetermination, we intend to issue a *Timken*[57] notice with an amended final determination, because the rates for BGH Siegen, SWG, voestalpine Bohler, and all other producers or exporters have been revised from those in the *Final Determination*.

---

[53] *See Final Determination* IDM at Comment 8.
[54] *See* the "III. Analysis" section, *supra*.
[55] For BGH Siegen, SWG, and voestalpine Bohler, the final subsidy rates for the KAV Program were 0.05 percent *ad valorem*, 0.07 percent *ad valorem*, and 0.07 percent *ad valorem*, respectively.  *See Final Determination*, 85 FR at 80012, unchanged in *Order*, 86 FR at 7536; *see also Final Determination* IDM at 5-8; and Memorandum, "AFA Calculation Memorandum for the Final Determination," dated December 7, 2020.
[56] *See* Memoranda, "Calculation of the Non-Selected Rate," dated January 16, 2024; and "Calculation of the Non-Selected Rate for the Preliminary {sic} Determination," dated December 7, 2020.
[57] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).

| Company | Subsidy Rate in *Final Determination*[58] (percent *ad valorem*) | Subsidy Rate in Final Results of Redetermination (percent *ad valorem*)[59] |
|---|---|---|
| BGH Siegen | 5.86 | 5.81 |
| SWG | 6.71 | 6.64 |
| voestalpine Bohler | 14.81 | 14.74 |
| All Others | 6.29 | 6.18 |

2/12/2024

X ~~Ryan Majerus~~

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[58] *See Final Determination*, 85 FR at 80012, unchanged in *Order*, 86 FR at 7536.
[59] *See* Draft Results at 7.