UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Claire R. Kelly, Judge

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| UNITED STATES, | ) Ct. No. 21-00080<br>) |
| Defendant, | )<br>) |
| and | )<br>) |
| ELLWOOD CITY FORGE COMPANY, *et. al.*, | )<br>) |
| Defendant-Intervenors. | )<br>) |

**PLAINTIFF BGH EDELSTAHL SIEGEN GMBH**
<u>REPLY TO COMMENTS ON THIRD REMAND REDETERMINATION</u>

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*

Dated: April 12, 2024

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | ARGUMENT | 1 |
| II. | CONCLUSION | 7 |

# TABLE OF AUTHORITIES

**Cases**

BGH Edelstahl Siegen GmbH v. United States,
663 F. Supp. 3d 1378 (CIT 2023) .................................................................................. 1, 2, 4, 6

Colautti v. Franklin,
439 U.S. 379 (1979) .................................................................................................................. 2

Mosaic Co. v. United States,
659 F. Supp. 3d 1285 (CIT 2023) ............................................................................................ 3

United States v. Menasche,
348 U.S. 528 (1955) .................................................................................................................. 2

**Statutes**

19 U.S.C. § 1677(5A)(D)(i) .................................................................................................. 1, 2

19 U.S.C. § 1677(5A)(D)(ii) ..................................................................................................... 2

19 U.S.C. § 1677(5A)(D)(iii) ............................................................................................. 1, 2, 4

19 U.S.C. § 1677(5A)(D)(iii)(I) ................................................................................................ 3

19 U.S.C. § 1677e(b) ................................................................................................................ 6

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Doc. No. 103-316, vol. 1 (1994) reprinted in 1994 U.S.C.C.A.N 4040 ............................ 2

Pursuant to the Court's opinion of November 14, 2023 (ECF 70), plaintiff, BGH Edelstahl Siegen GmbH ("BGH"), hereby submits this reply to the Defendant-Intervenors' comments in opposition to the final results of redetermination filed by the U.S. Department of Commerce ("Commerce") in this case on February 12, 2024 (ECF 71) ("Redetermination III").

**I.      ARGUMENT**

Commerce's final results fully comply with the instructions of this Court.  Commerce has correctly determined that the *Konzessionsabgabenverordnung* (KAV) is not *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) and that there is no other basis on the record to conclude that the KAV constitutes a countervailable subsidy.

Defendant-Intervenors do not challenge Commerce's determination that the KAV is not *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) and, indeed, after three opinions by this Court carefully analyzing the provisions of section 1677(5A)(D)(i), this issue can no longer be in dispute.  Commerce had previously argued that the mere fact that the KAV had eligibility criteria meant that the program is *per se* specific because it is limited to a "group."  The Court roundly rejected this argument, stating:

> Commerce's position where "implementing legislation expressly limit[s] access to the 'group' that the legislation itself created" the subsidy is de jure specific, see Second Remand Results at 11, is contrary to law.  The statute allows a subsidy to be limited to fewer than all enterprises or industries in an economy, so long as that criteria creating that legislation is objective.

BGH Edelstahl Siegen GmbH v. United States, 663 F. Supp. 3d 1378, 1384 (CIT Nov. 14, 2023) ("BGH III").

Defendant-Intervenors now do no more than take this rejected argument of *per se* specificity and apply it to the *de facto* specificity portion of the statute.  The only argument that Defendant-Intervenors offer for a finding of *de facto* specificity under section 1677(5A)(D)(iii) is

1

that recipients "are limited in number" because "only special contract customers are eligible for benefits under this program." Defendant-Intervenors' Comments in Opposition to Commerce's Third Remand Redetermination, 9 (citing Post Prelim. Analysis Memo, 14 (PR 271)) ("Def. Int. Comments"). Such an argument renders the Court's previous opinions in this case a nullity and renders the statutory provisions on *de jure* specificity in 1677(5A)(D)(i) & (ii) meaningless. *See* Colautti v. Franklin, 439 U.S. 379, 392 (1979) (stating that any interpretation making a statutory clause either "redundant or largely superfluous," is a "violation of the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"); *see also* United States v. Menasche, 348 U.S. 528, 538 (1955). While the fact that a limited number of enterprises or industries may ultimately benefit from a program may support a finding of *de facto* specificity, it cannot be interpreted that the mere fact that a program has eligibility criteria renders the program automatically *de facto* specific. *See* BGH III, 663 F. Supp. 3d at 1383, n.9.

The clear import of section 1677(5A)(D)(iii) is that the *de facto* specificity elements apply only when there are "reasons to believe" that, despite the objective nature of the eligibility criteria, they are being applied in a way that impermissibly favors limited enterprises and industries. As explained in the Statement of Administrative Action to the Uruguay Round Agreements Act ("SAA"), the specificity tests are meant only to address "narrowly focused subsidies" to "discrete segments of an economy." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 930 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 (hereinafter "SAA").

In this case, there is no evidence that the KAV eligibility criteria favor any discrete segments of the German economy. Indeed, the eligibility criteria are very broad and objective and therefore apply to any enterprise in any industry throughout all of Germany. Any

2

commercial/industrial enterprise can qualify for the program, only dependent upon the usage and average price of electricity. "Special contract customers" are those "whose measured power exceeds 30 kilowatts in at least two months of the billing year and whose annual consumption is more than 30,000 kilowatt hours, as defined in section 2(7) of the KAV." *See* GOG Supplemental Questionnaire Response, 7-8 (Sept. 22, 2020); P.R. 270. The amount of 30,000 kilowatt hours (kWh) in a year is very small. It is set below the annual consumption of 50,000 kWh for commercial customers and far below the annual consumption of 24,000,000 kWh for industrial customers. *See* German Government Questionnaire Response, Ex. GOG-05 at p. 146; P.R. 153 (Apr. 6, 2020); P.R. 153. Therefore, this threshold can easily be met by a vast number of enterprises and industries throughout Germany. Section 2(4) of the KAV states that special contract customers qualify for the program if their average unit price in that calendar year is lower than the average unit revenue from the supply of electricity to all special contract customers for the previous year ("Marginal Price comparison"). *See* GOG Supplemental Questionnaire Response, Ex. KAV-02 (June 5, 2020); P.R. 236.

Accordingly, there is nothing in the structure or wording of the eligibility criteria that would give reasons to believe that the KAV may be specific as a matter of fact. As the Court explained in *Mosaic*, a program with "widespread availability" is too large and diverse to reasonably be considered as benefiting a "specific group" under 19 U.S.C. § 1677(5A)(D)(iii)(I). Mosaic Co. v. United States, 659 F. Supp. 3d 1285, 1317 (CIT 2023).

Indeed, Defendant-Intervenors fail to point to any facts on the administrative record that would evidence "reasons to believe" the KAV may be specific as a matter of fact as required by statute. In fact, in their petition documents, Defendant-Intervenors did not even mention or raise any subsidy allegations concerning the KAV program. *See*, Antidumping & Countervailing

3

Duty Petitions (Dec. 19, 2019); P.R. 1; Amendment of Petitions and Response to Commerce's Supplemental Questions (Dec. 30, 2019); P.R. 15; Second Amendment of Petitions (Jan. 3, 2020); P.R. 21; Third Amendment of Petitions (Jan. 6, 2020); P.R. 22.

Contrary to Defendant-Intervenors' contention, application of section 1677(5A)(D)(iii) is not mandatory. Rather it only applies "{w}here there are reasons to believe that a subsidy may be specific as a matter of fact." 19 U.S.C. § 1677(5A)(D)(iii). Thus, in the absence of any record evidence giving reasons to believe that the KAV may be specific as a matter of fact, Commerce properly determined there was nothing on the administrative record supporting a finding of *de facto* specificity. Redetermination III, 9.

While Commerce did preliminarily determine that the KAV was *de facto* specific, the only reason given for this conclusion was that "only special contract customers are eligible for benefits under this program." Post-Preliminary Analysis Memorandum, 14 (Oct. 22, 2020) ("Post-Preliminary Determination"); P.R. 271. Commerce properly dropped its determination of *de facto* specificity in its final determination after challenges raised by the Government of Germany, finding that the KAV "program is *de jure* specific rather than *de facto* specific". Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Forged Steel Fluid End Blocks from the Federal Republic of Germany, 39 (Dec. 7, 2020); P.R. 293. The change in Commerce's determination on *de facto* specificity in response to the Government of Germany's challenge was also noted by this Court in its November 14, 2023 opinion. BGH III, 663 F. Supp. 3d at 1383, n.9.

In its case brief during the investigation, the Government of Germany argued that the KAV is not *de facto* specific because there is no indication that recipients of the program are limited in number:

4

> In the *Post-Preliminary Determination*, the Department concluded that the KAV is *de facto* specific because "only special contract customers are eligible for benefits under this program." However, the Department provides no reasoning as to why this supports the conclusion that recipients are "limited in number." As the GOG explained, "special contract customers are **all customers**" that meet certain power consumption criteria under the KAV. Therefore, the Department should revise its findings in the final determination and find that the program is not specific.

Forged Steel Fluid End Blocks from the Federal Republic of Germany: Case Brief, 20 (Nov. 2, 2020); P.R. 285. In their rebuttal to the Government of Germany's arguments, the Defendant-Intervenors cited to no evidence on the administrative record giving reasons to believe that the KAV may be specific as a matter of fact. Rather, Defendant-Intervenors stated only that "the KAV is limited by law to customers that meet certain criteria." Petitioners' Rebuttal Brief, 27 (Nov. 9, 2020); P.R. 287.

The fact that the Government of Germany does not have information concerning usage of the KAV does not evidence a reason to believe that the KAV program may be specific as a matter of fact. As explained by Commerce in its remand determination, the Government of Germany was unable to provide certain information because no governmental authority is involved in administering the process towards the final consumer:

> During the investigation, the GOG reported that it does not collect, track, or maintain information on usage of the KAV Program in the ordinary source of business. Specifically, the GOG explained that "{b}ecause no governmental authority is involved in administering the process towards the final consumer established based on Section 2(4) of the KAV, the GOG does not have data on the concession fees paid by a specific company." *See* GOG's Letter, "First Supplemental Questionnaire: Response to Certain Questions," dated June 5, 2020, at Exhibit KAV-02 (pp. KAV-3 and KAV-11 to KAV-12).

Redetermination III, 8, n.50. Moreover, as noted by the Court in its November 14, 2023 opinion, "nowhere in Final Decision Memo or subsequent remand determinations does Commerce

indicate that it did not conduct such an analysis because the FRG did not supply needed information." BGH III, 663 F. Supp. 3d at 1383, n.9 (citations omitted).

The reason why there was not a more extensive investigation of *de facto* specificity was because the Defendant-Intervenors failed to adequately allege *de facto* specificity or provide any evidence demonstrating a reason to believe that the KAV program may be specific as a matter of fact.

The fact that the Government of Germany does not have information concerning usage of the KAV cannot be used as an adverse inference that the KAV is *de facto* specific. Under the statute, Commerce may only impose an adverse inference when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with the request for information." 19 U.S.C. § 1677e(b). There is no evidence that the Government of Germany has not acted to the best of its ability; nor do Defendant-Intervenors even allege that the requirements of 19 U.S.C. § 1677e(b) are met in this case.

To the contrary, as noted by Commerce, it is the Defendant-Intervenors who have "fail{ed} to provide any evidence in support of their claim" of *de facto* specificity for the KAV program. Redetermination III, 8. Having failed to allege the KAV in their petition or provide any evidence giving reasons to believe that the KAV may be specific as a matter of fact, Defendant-Intervenors have no legal basis to challenge Commerce's determination concerning the lack of *de facto* specificity.

## II. CONCLUSION

For the reasons stated above, the Court should sustain Commerce's final results of redetermination.

Respectfully submitted,

 /s/ Marc E. Montalbine
Marc E. Montalbine*
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: montalbine@dhlaw.de

Date: April 12, 2024         *Counsel to BGH Edelstahl Siegen GmbH*

---

* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in section 2(B)(1)(b) of the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1)(c) of the Chambers Procedures, I hereby certify that these comments contain **1,873** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*