Slip Op. 24-60

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>ELLWOOD CITY FORGE COMPANY, ET AL.,<br><br>    Defendant-Intervenors. | Before: Claire R. Kelly, Judge<br><br>Court No. 21-00080 |

### OPINION AND ORDER

[Remanding for further consideration Commerce's Third Remand Determination.]

Dated: May 22, 2024

Marc E. Montalbine, Gregory S. Menegaz, Alexandra H. Salzman, and Merisa A. Horgan, and James K. Horgan, DeKieffer & Horgan, PLLC, of Washington, D.C., for plaintiff BGH Edelstahl Siegen GmbH.

Kelly M. Geddes, Trial Attorney, and Sarah E. Kramer, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant United States. Also on the brief were Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General. Of Counsel were Ayat Mujais, Senior Attorney, and Joseph Grossman-Trawick, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Thomas M. Beline, Nicole Brunda, Chase J. Dunn, and Myles S. Getlan, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for defendant-intervenors Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons.

Kelly, Judge: Before the Court is the U.S. Department of Commerce's ("Commerce") remand redetermination pursuant to the Court's third remand order, see BGH Edelstahl Siegen GmbH v. United States, 663 F. Supp. 3d 1378 (Ct. Int'l Trade 2023) ("BGH III"), on Commerce's final determination in its countervailing duty ("CVD") investigation of forged steel fluid end blocks ("fluid end blocks" or "FEB") from the Federal Republic of Germany ("FRG" or "Germany" or "GOG"). See Final Results of Redetermination Pursuant to Court Remand at 1, Feb. 12, 2024, ECF No. 71-1 ("Third Remand Results"); see generally [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 7,535 (Dep't Commerce Jan. 29, 2021) ([CVD] orders and am. final determination) and accompanying issues and decision memo. ("Final Decision Memo."); [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 10,244 (Dep't Commerce Feb. 19, 2021) (correction to [CVD] orders). For the following reasons, the Court remands Commerce's redetermination.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinions ordering remand to Commerce, see BGH Edelstahl Siegen GmbH v. United States, 600 F. Supp. 3d 1241, 1248 (Ct. Int'l Trade 2022) ("BGH I"); BGH Edelstahl Siegen GmbH v. United States, 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023) ("BGH II"); BGH III, 663 F.Supp.3d 1378, and now recounts only those facts relevant

to the Court's review of the Third Remand Results. On December 19, 2019, the FEB Fair Trade Coalition, Ellwood Group, and Finkl Steel (collectively "Ellwood")[1] filed a petition with Commerce seeking the imposition of CVDs on imports of FEBs from the People's Republic of China, the FRG, India, and Italy, as well as antidumping duties on dumped imports of FEBs from the FRG, India, and Italy. See Antidumping and [CVD] Pets. at 1, PD 1, bar code 3921764-01 (Dec. 19, 2019). Commerce selected BGH Edelstahl Siegen GmbH ("BGH") as a mandatory respondent[2] during its CVD investigation of FEBs from the FRG between the period of January 1, 2018 to December 31, 2018. Resp't Selection Memo. at 1, PD 55, bar code 3938855-01 (Feb. 4, 2020). The investigation concluded that the FRG offered countervailable subsidies through multiple programs, including the Konzessionsabgabenverordung Program ("KAV Program").[3] Final Decision Memo. at 6–8; see also Post-Prelim. Analysis [CVD] Investigation: [Fluid End Blocks] from [FRG] at 6–19, PD 271, bar code 4043279-01 (Oct. 21, 2020); Decision Mem. Prelim. Affirmative Determination [CVD] Investigation of [Fluid End Blocks] from [FRG] at 19–27, PD 220, bar code 3975458-

---

[1] Petitioners are the Defendant-Intervenors in the matter but now challenge Commerce's latest redetermination.

[2] BGH is the Plaintiff in the matter but now supports Commerce's third redetermination.

[3] BGH challenged Commerce's determination that the following programs are countervailable: 1. Stromsteuergesetz ("Electricity Tax Act"), 2. Energiesteuergesetz ("the Energy Tax Act"), 3. Erneuerbare-Energien-Gesetz ("EEG Program"), 4. Kraft-Wärme-Kopplungsgesetz ("KWKG Program"), 5. The European Union's ("EU") Emissions Trading System ("ETS Program"), 6. The EU ETS Compensation of Indirect $CO_2$ Costs Program ("$CO_2$ Compensation Program"), and 7. the KAV Program. [BGH] Rule 56.2 Mem. Supp. Mot. J. Agency R. at 7, 21, 30, 39–40, Oct. 26, 2021, ECF No. 22.

01 (May 18, 2020). Specifically, Commerce concluded that the KAV program was specific as a matter of law. Final Decision Memo. at 37–39. BGH filed its complaint and sought judgment on the agency record, challenging Commerce's final determination. See generally Compl., Mar. 29, 2021, ECF No. 7; see also [BGH] Mot. J. Agency R., Oct. 26, 2021, ECF No. 21. The Court sustained in part and remanded in part Commerce's final determination after briefing. BGH I, 600 F. Supp. 3d at 1269–70. The Court held that Commerce's finding of de jure specificity for the KAV Program was unsupported by the record because Commerce did not explain how the program limits usage to certain industries or enterprises and failed to consider its economic and horizontal properties and application. Id. at 1269. The Court also remanded Commerce's CVD rate calculation for the Electricity Tax Act and the Energy Tax Act. Id. at 1258.

Commerce filed its Remand Results in January 2023. See Final Results of Redetermination Pursuant to Court Remand at 1, Jan. 10, 2023, ECF No. 48-1. After briefing was complete, the Court sustained in part and remanded in part. BGH II, 639 F. Supp. 3d at 1239. The Court again concluded Commerce's determination that the KAV Program was specific as a matter of law was unsupported by the record. Id. at 1243. The Court remanded for further explanation or reconsideration as to the economic and horizontal nature of the subsidy. Id. at 1244. The Court sustained Commerce's redetermination for both the Electricity Tax Act and the Energy Tax Act. Id. at 1242.

Commerce filed its second redetermination results on August 7, 2023, again finding the KAV Program a de jure specific subsidy. Final Results of Redetermination Pursuant to Court Remand at 1, Aug. 7, 2023, ECF No. 60-1 ("Second Remand Results"). The Court remanded Commerce's redetermination, concluding that Commerce's position that "where the 'implementing legislation expressly limit[s] access to the "group" that the legislation itself created' the subsidy is de jure specific" was contrary to law.[4] BGH III, 663 F. Supp. 3d at 1384. The Court remanded to Commerce for further consideration or explanation. Id.

Commerce filed the Third Remand Results on February 12, 2024. See generally Third Remand Results. In the third redetermination, Commerce reconsidered its determination and, under respectful protest,[5] found that the KAV Program is not de jure specific. Id. at 2. Further, it found no basis to reconsider its

---

[4] More specifically, the Court explained that a subsidy may "be limited to fewer than all enterprises or industries in an economy" without being de jure specific so long as the limiting criteria is objective. BGH III, 663 F. Supp. 3d at 1384. The Court explained that criteria may create objective categories of industries or enterprises which may benefit from the subsidy to the exclusion of others. Id. (citing Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4243 ("SAA")). "Objective" in this context means neutral, i.e., it "must not favor certain enterprises or industries over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise." Id. at 1382 (citing SAA at 4243). Therefore, "criteria based on size or the number of employees could exclude entire categories of enterprises and industries, but such criteria would not render the subsidy de jure specific because it is horizontal (operating throughout the economy), and is economic in nature." Id. at 1384 (citing the SAA at 4243).

[5] Commerce files under respectful protest in order to preserve its right to appeal. See Viraj Grp., Ltd. v. United States, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

past determination that "the KAV Program 'is de jure specific rather than de facto specific'" and thus found that KAV Program was not countervailable. Id.

Ellwood opposes Commerce's redetermination, arguing that Commerce failed to analyze whether the KAV Program was de facto specific. See Def.-Int. Cmts. Opp'n [Third Remand Results] at 1, Mar. 13, 2024, ECF No. 73 ("Ellwood Cmts."). BGH supports Commerce's redetermination. [BGH] Reply to [Ellwood Cmts.] at 1, Apr. 12, 2024, ECF No. 75 ("BGH Reply"). Defendant filed its response to Ellwood's comments on April 12, 2024. See Def. Resp. [Ellwood Cmts.] at 1, Apr. 12, 2024, ECF No. 74 ("Def. Resp.").

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 516A of the Tariff Act,[6] as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of a CVD order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (internal citations and quotations omitted).

---

[6] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

## DISCUSSION

Ellwood challenges Commerce's determination that the KAV Program is not countervailable, arguing that Commerce acted contrary to law by refusing to analyze whether the program was de facto specific. Ellwood Cmts. at 6–10. Defendant argues that Commerce's third redetermination is supported by substantial evidence, in accordance with law, and complied with the third remand order. Def. Resp. at 1–2. Likewise, Plaintiff argues that Commerce complied with the remand order and "there is nothing in the structure or wording of the eligibility criteria that would give reasons to believe that the KAV [Program] may be specific as a matter of fact." BGH Reply at 3. For the reasons that follow, Commerce's third redetermination is remanded for further consideration.

Section 1677 of Title 19 requires investigation of allegations of countervailable subsides. A petitioner may allege that a domestic subsidy is countervailable because it is specific as a matter of law (de jure specificity). 19 U.S.C. § 1677(5A)(D); BGH III, 663 F. Supp. 3d at 1381. Congress provided guidelines to identify de jure specific subsidies.[7] First, a de jure specific subsidy is one that "expressly limits access to the

---

[7] Concerning de jure specificity, 19 U.S.C. § 1677(5A)(D) provides:
   In determining whether a subsidy . . . is a specific subsidy, in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy, the following guidelines shall apply:
   (i)   Where the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry, the subsidy is specific as a matter of law.

(footnote continued)

subsidy to an enterprise or industry."[8]  19 U.S.C. § 1677(5A)(D)(i); see also SAA at 4242.

The second guideline makes clear that the existence of eligibility criteria limiting access alone is insufficient to render a subsidy specific as a matter of law if the criteria is horizontal in application and economic in nature.  See 19 U.S.C. § 1677(5A)(D)(ii); SAA at 4243.  If objective criteria are publicly and clearly set forth, and those criteria provide for automatic eligibility and are strictly followed, a subsidy awarded pursuant to those criteria is not specific as a matter of law.  19 U.S.C. § 1677(5A)(D)(ii).  The SAA's explication of permissible criteria makes clear that criteria may create objective categories of industries or enterprises which may benefit from the subsidy to the exclusion of others.  SAA at 4243.  The SAA provides:

> Finally, the objective criteria or conditions must be neutral, must not favor certain enterprises or industries over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise.

---

(ii) Where the authority providing the subsidy, or legislation pursuant to which the authority operates, establishes objective criteria or conditions governing the eligibility for, and the amount of, a subsidy, the subsidy is not specific as a matter of law, if—
    (I) eligibility is automatic,
    (II) the criteria or conditions for eligibility are strictly followed, and
    (III) the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official documents so as to be capable of verification
For purposes of this clause, the term "objective criteria or conditions" means criteria or conditions that are neutral and that do not favor one enterprise or industry over another.

[8] An enterprise or industry may mean group of enterprises or industries.  19 U.S.C. § 1677 (5A)(D); SAA at 4242.

Id. "Criteria based on size or the number of employees could exclude entire categories of enterprises and industries, but such criteria would not render the subsidy de jure specific because it is horizontal (operating throughout the economy), and is economic in nature." BGH III, 663 F. Supp. 3d at 1382 (citing SAA at 4243).[9] As this Court previously explained:

> The SAA's rejection of a "precise mathematical formula" to determine de jure specificity "acknowledges that some limitations will result in a 'sufficiently small' number of beneficiaries such that the subsidy will be considered specific as a matter of law." That the SAA provides a subsidy is de jure specific when its availability is limited to a "sufficiently small" number of beneficiaries necessarily means that a subsidy will not be de jure specific when its availability is limited to a group that is not "sufficiently small."

Id.

A petitioner may also allege that a domestic subsidy is countervailable because it is specific as a matter of fact (de facto specificity). 19 U.S.C. § 1677(5A)(D)(iii); BGH III, 663 F. Supp. 3d at 1381. In its third guideline, Congress delineates de facto specific subsidies, providing that "[w]here there are reasons to believe that a subsidy may be specific as a matter of fact," Commerce must further consider whether:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
> (II) An enterprise or industry is a predominant user of the subsidy.
> (III) An enterprise or industry receives a disproportionately large amount of the subsidy.

---

[9] Moreover, the SAA reveals that a subsidy will not be deemed de jure specific simply because it is available to fewer than all enterprises or industries. SAA at 4242. Indeed, the SAA states there is no "precise mathematical formula" to determine when a number of enterprises or industries is "sufficiently small" to be specific as a matter of law. Id. A proposal for a mathematical formula to determine de jure specificity was explicitly rejected by the United States, instead providing that such determinations must be made on a case-by-case basis. Id. at 4242–43.

>	(IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

19 U.S.C. § 1677(5A)(D)(iii). When evaluating the above factors, Commerce shall "take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy, and the length of time during which the subsidy program has been in operation." Id. Where Commerce receives a petition that "contain[s] 'information reasonably available to the petitioner supporting those allegations,'" it must investigate. RZBC Group Shareholding Co., Ltd. v. U.S., 100 F. Supp. 3d 1288, 1292 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1671a(b)(1)). "Commerce cannot refuse to investigate unless it 'is convinced that the petition and supporting information fail to state a claim upon which relief can be granted.'" Id. (citing S. Rep. No. 96–249, at 47 (1979), as reprinted in 1979 U.S.C.C.A.N. 381, 433).

Here, the Court's order required that Commerce "either explain and support its determination that the criteria are not neutral, (i.e., are not economic in nature and horizontal in application) or conduct a de facto analysis or reconsider its determination." BGH III, 663 F. Supp. 3d at 1384. Although Commerce reconsidered its second redetermination, its third redetermination is not in accordance with law because Commerce failed to analyze whether the program was de facto specific.

The statute obligates Commerce to conduct a de facto specificity analysis where it has reasons to believe the program is de facto specific. 19 U.S.C. § 1677(5A)(D)(iii) (I–IV). The "reasons to believe" language directs Commerce to consider whether (I)

the actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number; (II) one enterprise or industry is the predominant recipient; (III) one enterprise or industry obtains disproportionate benefits; and (IV) the administration of the program favors an enterprise or industry. 19 U.S.C. § 1677(5A)(D)(iii). Where legislation specifically limits the availability of a subsidy, it would seem that Commerce has reasons to believe the subsidy may be specific and therefore must consider the factors provided by Congress in 19 U.S.C. § 1677(5A)(D)(iii) (I–IV).[10]

Here, Commerce noted in the post preliminary analysis memorandum that the KAV is limited by its terms to special contract customers. See Post Prelim. Analysis Memo. at 13, PD 271, bar code 4043279-01 (Oct. 21, 2020) ("Post Prelim. Analysis

---

[10] Both Defendant and BGH attempt to limit the relevance of limiting criteria in the KAV program to a de jure analysis. Defendant argues:
> the fact that the KAV Program was limited by law to certain special contract customers goes to the question of de jure specificity; to assess whether the program was de facto specific, Commerce would need evidence concerning the KAV Program's actual use. Petitioners fail to identify any such evidence, and as Commerce explained in its [Third Remand Results], the government of Germany "reported that it does not collect, track, or maintain information on usage of the KAV Program in the ordinary course of business," and that "because no governmental authority is involved in administering the process towards the financial consumer established based on Section 2(4) of the KAV, the government of Germany does not have data on the concession fees paid by a specific company.

Def Resp. at 6 (citing [FRG] First. Suppl. Questionnaire: Resp. Certain Questions at Exh. KAV-02, PD 236, bar code 3983126-01 (June 5, 2020)). BGH likewise argues that nothing in the language of the KAV provision would lead to the belief that the recipients of the program will be limited in number. BGH Reply at 2–3. However, the very terms of the KAV program lead to the conclusion that the recipients of the program are limited in some way, which is sufficient to create a reason to believe that the program is de facto specific and thus requiring further investigation.

Memo."). It is unclear from the record whether the program is sufficiently limited to establish a finding of specificity under 19 U.S.C § 1677(5A)(D)(iii), but it is enough to create a reason to believe the program is de facto specific warranting further investigation by Commerce. Ultimately, record evidence might lead to the conclusion that the subsidy is not de facto specific, but in the absence of such evidence it is unclear to the Court why the provisions of the KAV Program, standing alone, did not give Commerce a reason to believe it may be specific as a matter of fact.

Indeed, Commerce initially concluded that "because recipients of the subsidy are limited in number," the program is de facto specific. Post Prelim. Analysis Mem. at 14. Although Commerce abandoned that determination in the Final Results, it did so not because it concluded that the recipients were not limited in number as a matter of fact, but because it believed the recipients were limited in number as a matter of law. Final Decision Memo. at 39.

There is no dispute that Commerce did not conduct a de facto specificity analysis.[11] Ellwood Cmts. at 10 (arguing no analysis was conducted); Def. Resp. at

---

[11] Commerce and BGH both note that until now, Ellwood has failed to challenge Commerce's determination of "de jure rather than de facto" specificity. Third Remand Results at 8; BGH Reply at 3–4. And indeed, Ellwood, in its comments to the second redetermination defending Commerce's de jure determination, states "[c]learly, Commerce cannot assess whether the number of enterprises receiving the subsidy is limited in number under 19 U.S.C. § 1677(5A)(D)(iii) if the GOG is unable to provide an accurate accounting for the number of enterprises receiving benefits. This fact only reinforces the legitimacy of Commerce's circumvention concerns and its finding that the KAV program, which explicitly limits access to a defined group of enterprises, is de jure specific under 19 U.S.C. § 1677(5A)(D)(i)." [Ellwood's] Reply to [BGH's]

(footnote continued)

6–7 (arguing no analysis was needed). Defendant adds that "the record lacks sufficient evidence to conduct a de facto analysis, and attempting to obtain such evidence would likely be futile given that Germany does not collect evidence on use of the KAV Program." Def. Resp. at 7. Commerce faults Ellwood for failing to provide evidence of the claim that the KAV Program is de facto specific, thus finding "no basis to reconsider that finding." Third Remand Results at 8. However, Commerce's finding that the program is not de facto specific does not appear to be a finding at all, but a decision to abandon a de facto specificity analysis in light of its conclusion regarding de jure specificity. Compare Final Decision Memo. at 37–39 (finding the KAV Program de jure specific), with Post Prelim. Analysis Mem. at 14 (finding the KAV Program de facto specific). Moreover, Ellwood need not establish the existence of de facto specific subsidies at this stage, but only reasons to believe that the program is de facto specific. Therefore, Commerce's determination that it lacked a reasonable belief is not supported by this record, and thus its failure to further investigate is not in accordance with law.

BGH argues that a determination of de facto specificity requires more than a provision limiting the users of a program, but also requires evidence regarding actual use which BGH argues is missing from the record. BGH Reply at 5–6. It is unclear to the Court why the lack of this information on the record rebuts the reasons to

---

Opp'n [Second] Final Results of Redetermination at 6–7, Oct. 6, 2023, ECF No. 66. Commerce and BGH do not appear to argue that Ellwood is precluded from arguing for a finding of de facto specificity because of exhaustion principles, and therefore the Court does not address that question.

believe the KAV Program is de facto specific created by the terms of the program itself, at least without further investigation. Commerce has tools to confront instances where information is missing from the record. See 19 U.S.C. § 1677e; BGH III, 663 F. Supp. 3d at 1383 n.9. That the record lacked further information to conclude that a reasonable belief was correct cannot be enough to satisfy the Section 1677(5A)(D)(iii). Although further investigation may ultimately yield a conclusion that Commerce could not reasonably determine the existence of a de facto specific subsidy, Commerce cannot summarily skirt the de facto specificity analysis required by the statute.

Likewise, BGH ignores the statutory distinctions between de jure and de facto specificity, under Sections 1677(5A)(D)(i) and 1677(5A)(D)(iii) respectively, to argue that Commerce need not further inquire into a de facto specificity analysis because of the Court's prior ruling. BGH Reply at 2 (criticizing Ellwood's reliance on KAV Program's limitation to "special contract customers" as rendering "the Court's previous opinions in this case a nullity"). Under 19 U.S.C. § 1677(5A)(D)(i), an inquiry as to whether a subsidy is specific as a matter of law requires a finding that the "authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry[.]" Conversely, Commerce need only be presented with "reasons to believe that a subsidy may be specific as a matter of fact" to trigger a de facto specificity analysis. 19 U.S.C. § 1677(5A)(D)(iii). This distinction is important, because a de jure specificity determination will focus on what is expressly provided for in enabling

legislation, while a de facto specificity determination assesses how a subsidy is actually distributed. See 19 U.S.C. § 1677(5A)(D); SAA at 4242–43. Consequently, legislation that may not be de jure specific may nonetheless trigger an analysis of de facto specificity. Because Commerce failed to conduct a de facto specificity analysis despite there being reasons to believe the KAV Program is specific as a matter of fact, the Third Remand Results must be remanded for reconsideration or further explanation.

## CONCLUSION

When Commerce confronts facts giving reasons to believe that a subsidy may be specific as a matter of fact, it must further investigate whether that subsidy is de facto specific under 19 U.S.C. § 1677(5A)(D)(iii). Thus, Commerce's Third Remand Results are remanded for reconsideration or further explanation.

For the foregoing reasons, it is

**ORDERED** that Commerce's Third Remand Results, see ECF No. 71-1, are remanded for further explanation or reconsideration consistent with this opinion with respect to its determination that the KAV Program is not a specific subsidy; and it is further

**ORDERED** that Commerce shall file its fourth remand redetermination with the court within 120 days of this date; and it is further

**ORDERED** that the parties shall file any comments on the fourth remand redetermination within 30 days of the date of filing of the fourth remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the fourth remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days of the date of filing of responses to the comments on the fourth remand redetermination; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its fourth remand redetermination.

       /s/ Claire R. Kelly
    Claire R. Kelly, Judge

Dated: May 22, 2024
       New York, New York