UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Claire R. Kelly, Judge

|  |  |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) Ct. No. 21-00080 |
| Defendant, | ) |
| and | ) |
| ELLWOOD CITY FORGE COMPANY, *et. al.*, | ) |
| Defendant-Intervenors. | ) |

**PLAINTIFF BGH EDELSTAHL SIEGEN GMBH**
<u>**COMMENTS ON FOURTH REMAND REDETERMINATION**</u>

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*

Dated: October 17, 2024

**TABLE OF CONTENTS**

I.    ARGUMENT ............................................................................................................. 1

II.    CONCLUSION ......................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

BGH Edelstahl Siegen GMBH v. United States,
  600 F. Supp. 3d 1241 (CIT 2022) ................................................................................... 1, 2, 3

Consol. Edison Co. of N.Y. v. NLRB,
  305 U.S. 197 (1938) ................................................................................................................ 4

Consolo v. Fed. Mar. Comm'n,
  383 U.S. 607 (1966) ................................................................................................................ 4

Maverick Tube Corp. v. United States,
  857 F.3d 1353 (Fed. Cir. 2017) ............................................................................................... 4

Viet I–Mei Frozen Foods Co. v. United States,
  839 F.3d 1099 (Fed. Cir. 2016) ............................................................................................... 4

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii) ...................................................................................................... 2, 4

19 U.S.C. § 1677(5A)(D)(iii)(I) ...................................................................................................... 3

19 U.S.C. § 1677(5A)(D)(iii)(II) ..................................................................................................... 3

19 U.S.C. § 1677(5A)(D)(iii)(III) .................................................................................................... 3

19 U.S.C. § 1677(5A)(D)(iii)(IV) ................................................................................................... 4

19 U.S.C. § 1677e(a) ...................................................................................................................... 4

19 U.S.C. § 1677e(a)(1) .................................................................................................................. 4

19 U.S.C. § 1677e(b) ...................................................................................................................... 4

Pursuant to the Court's opinion of May 22, 2024 (ECF 77), plaintiff, BGH Edelstahl Siegen GmbH ("BGH"), hereby submits these comments on the fourth remand redetermination filed by the U.S. Department of Commerce ("Commerce") in this case on September 19, 2024 (ECF 79) ("Redetermination IV").

I.  **ARGUMENT**

Commerce's final results fully comply with the instructions of this Court. Pursuant to the Court's remand order, Commerce requested additional evidence from the Government of Germany concerning *de facto* specificity, and the Government of Germany fully responded to this questionnaire providing all of the relevant information in its possession and control. This information includes a detailed listing of annual electricity consumption by customer group over a 32-year period. Government of Germany Remand Supplemental Questionnaire Response, Ex. Remand-5 (July 26, 2024) (Barcode: 4604630-01) ("GOG Remand SQR"); R4-PR 4.[1] For the year 2018, the report shows that special contract customers in Germany consumed 294,737 gigawatt hours (gWh) of electricity. Id. This represents two-thirds or 66% of the total consumption for all end users (*i.e.*, 294,737 gWh / 445,188 gWh). However, when household customers are subtracted from the total end users (445,188 gWh – 127,880 gWh = 317,308 gWh), special contract customers represent 93% of total electricity consumption in Germany (*i.e.*, 294,737 gWh / 317,308 gWh). Id.

Household customers would not meet the minimum electricity usage to qualify as a special contract customer. As the Court already noted in *BGH I*, special contract customers are

---

[1] Citations to the public and confidential record of the original investigation filed on May 10, 2021 are designated as "P.R." and "C.R.," respectively. Citations to the public and confidential record of the fourth final results of redetermination filed on September 25, 2024 are designated as "R4-P.R." and "R4-C.R.," respectively.

1

those customers whose measured power exceeds 30 kilowatts in at least two months of the billing year and whose annual consumption is more than 30,000 kilowatt hours (kWh). <u>BGH Edelstahl Siegen GMBH v. United States</u>, 600 F. Supp. 3d 1241, 1269 (CIT 2022) ("<u>BGH I</u>"). By contrast, household customers have a typical annual consumption of only 2,500 kWh to 5,000 kWh and, in any event, the consumption bands for low-voltage supply used by household customers are far below 30,000 kWh per year. *See* <u>GOG Remand SQR</u>, Ex. Remand-4., p. 10; R4-PR 4; *see also* <u>German Government Questionnaire Response</u>, Ex. GOG-05 at p. 146 (Apr. 6, 2020) (hereinafter "<u>GOG IQR Part 1</u>"); P.R. 153.

Accordingly, because household customers would not qualify as special contract customers, the electricity consumption of household customers must be subtracted from the total electricity consumption in Germany in order to determine the percentage that special contract customers (*i.e.*, the enterprises that are eligible for the KAV concession fee exemption) represent of the total electricity consumption of all commercial enterprises. As explained above, this calculation shows that special contract customers accounted for 93% of the electricity consumption of all commercial enterprises in 2018 (*i.e.*, during the POI). This information alone demonstrates the broad extent of diversification of economic activities covered by special contract customers. The report covering 32 years also demonstrates the long period of time the categorization of special contract customers has been in existence.[2]

It must also be remembered that, under Section 2(4) of the KAV ordinance, KAV relief is only available to customers whose average electricity price per kilowatt hour in the calendar year is below the average revenue per kilowatt hour from the supply of electricity to all special-rate

---

[2] Pursuant to 19 U.S.C. § 1677(5A)(D)(iii), in evaluating the statutory factors for *de facto* specificity, Commerce is to take into account the length of time during which the subsidy program has been in operation.

customers for the year before last (*e.g.*, 2016 for calendar year 2018) as reported by the German Federal Office of Statistics (*Statistisches Bundesamt*).  See BGH I, 600 F. Supp. at 1268; *see also* GOG First Supplemental Questionnaire: Response to Certain Questions, Ex. KAV-03 (June 5, 2020); P.R. 236.  This average revenue amount is known as the "*Grenzpreis*" or marginal price.

Therefore, the qualification for KAV relief in a given calendar year is based upon a simple mathematical comparison of the average electricity price paid by the company during the calendar year with the total average electricity price for all special-rate customers two years before.  The group of eligible companies would also change from year to year based upon the development of electricity prices.  In times of rising electricity prices, little or no companies would qualify because their current electricity price would be above the average price from two years ago and, in times of falling prices, the number of qualifying companies would expand because the current electricity price would be below the average price from two years ago.

This record evidence supports Commerce's determination that the KAV Program is not *de facto* specific.  With special contract customers accounting for 93% of the electricity consumption of all commercial enterprises in Germany, it is reasonable to conclude that the number of eligible recipients is not limited in number.  *See* 19 U.S.C. § 1677(5A)(D)(iii)(I).  With such a large percentage of special contract customers among commercial enterprises in Germany, it is also reasonable to conclude that no enterprise or industry is a predominant user of the program and that no enterprise or industry receives a disproportionately large amount under the program.  *See* id. at (5A)(D)(iii)(II) & (III).  This is also supported by the manner in which eligibility is based upon a purely mathematical comparison of average electricity prices, which changes each year based upon the development of electricity prices, as explained above.  This

objective manner of determining eligibility also ensures that no government authority has discretion to favor an enterprise or industry over others.  See id. at (5A)(D)(iii)(IV).

Accordingly, based upon the evidence on the administrative record, Commerce reasonably concluded that the elements of *de facto* specificity under section 19 U.S.C. § 1677(5A)(D)(iii) are not met in this situation.  The factual information provided by the Government of Germany is substantial evidence for this determination, and there was no need for Commerce to conduct a further analysis of facts available under 19 U.S.C. § 1677e(a).  A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).  The possibility of drawing two inconsistent conclusions from record evidence does not render Commerce's findings unsupported by substantial evidence. Viet I–Mei Frozen Foods Co. v. United States, 839 F.3d 1099, 1106 (Fed. Cir. 2016) (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

In any event, Commerce was correct to conclude that the Government of Germany did not fail to cooperate by not acting to the best of its ability to comply with the request for information and that an adverse inference under 19 U.S.C. § 1677e(b) was not warranted.  Commerce's determination based upon facts otherwise available in accordance with 19 U.S.C. § 1677e(a)(1) that the KAV Program does not constitute a countervailable subsidy is also supported by substantial evidence on the administrative record and in accordance with law.

## II.     CONCLUSION

For the reasons stated above, the Court should sustain Commerce's final results of redetermination.

Respectfully submitted,

Date: October 17, 2024

/s/ Marc E. Montalbine
Marc E. Montalbine*
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*

---

* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in section 2(B)(1)(b) of the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1)(c) of the Chambers Procedures, I hereby certify that these comments contain **1,211** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*