**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 21-00080 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| ELLWOOD CITY FORGE COMPANY, ET AL., | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT-INTERVENORS' COMMENTS IN OPPOSITION TO COMMERCE'S FOURTH REMAND REDETERMINATION**

Thomas M. Beline
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave NW
Suite 300
Washington, D.C. 20037
(202) 567-2300
*tbeline@cassidylevy.com*

*Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

Dated: October 17, 2024

**Table of Contents**

Page

I. PROCEDURAL HISTORY ................................................................................................ 2

II. ARGUMENT ..................................................................................................................... 3

    A. Commerce's Conclusion That "The KAV Program Is Not Countervailable" Is Unsupported by Substantial Evidence ........................................................................ 3

    B. Commerce's Conclusion That "The KAV Program Is Not Countervailable" Is Unsupported by Facts "Otherwise Available" on the Record ......................................... 4

    C. Commerce's Conclusion that the German TPSA Prevented the GOG From Providing Aggregate Information on KAV Program Usage is Unsupported by Record Evidence ........................................................................................................... 7

    D. Conclusion ................................................................................................................... 9

## Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1677(5A)(D)(iii)..................................................................................................2

19 U.S.C. § 1677(5A)(D)(iii)(I)..............................................................................................8

19 U.S.C. § 1677e(a).......................................................................................................... *passim*

19 U.S.C. § 1677e(b) ....................................................................................................6, 7, 8

Court Decisions

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)..........................4

*Consolidated Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) ...................................................................................................................................4

*Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) ..............3

*Husteel Co., Ltd. v. United States*, 491 F. Supp. 2d 1283, 1292 (Ct. Int'l Trade 2007)...................................................................................................................3

*Nippon Steel Corp. v. United States*, 337 F. 3d 1373, 1381 (Fed. Cir. 2003).............4, 8

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) .....................................3, 4

Other

*Webster's New Collegiate Dictionary 104* (1981) ...........................................................8

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, <br>        Plaintiff, <br>   v. <br> UNITED STATES, <br>        Defendant, <br>   and <br> ELLWOOD CITY FORGE COMPANY, ET AL., <br>        Defendant-Intervenors. | Court No. 21-00080 |

**DEFENDANT-INTERVENORS' COMMENTS IN OPPOSITION TO COMMERCE'S FOURTH REMAND REDETERMINATION**

Pursuant to the Court's opinion of May 22, 2024 (ECF 77), defendant-intervenors Ellwood City Forge Company, *et al.*, ("Ellwood") hereby submit these comments in opposition to the U.S. Department of Commerce's ("Commerce") fourth final results of redetermination, filed in this case on September 17, 2024 (ECF 79) ("Fourth Remand Redetermination").

Commerce unlawfully failed to comply with the countervailing duty statute when it construed an incomplete factual record against an injured domestic industry to issue a decision using "facts otherwise available." Even when making a determination under 19 U.S.C. § 1677e(a) (the facts available provision applicable when the record is incomplete), the statute *still* requires Commerce to render a decision by relying on evidence. Ellwood concurs that the record is incomplete, but substantial evidence does not support Commerce's failure to find the KAV Program *de facto* specific. By contrast, all "otherwise available" facts support a finding of *de facto* specificity. This factual record exists regardless of whether Commerce applies "adverse inferences" to the Government of Germany's ("GOG") failure to provide additional requested

1

details.  Commerce's contrary determination that the KAV Program is not *de facto* specific is unsupported by <u>any</u> record evidence, necessitating remand.

I.   **PROCEDURAL HISTORY**

In its Fourth Remand Order, the Court found that Commerce had unlawfully "failed to conduct a *de facto* specificity analysis despite their being reasons to believe the KAV Program is specific as a matter of fact." *See BGH Edelstahl Siegen GMBH v. United States*, Court No. 21-00080, Slip Op. 24-60 (May 22, 2024) (ECF 77) ("Fourth Remand Order") at 15.  On remand, Commerce issued a supplemental questionnaire to the GOG in which it requested that the GOG provide it with information necessary for a d*e facto* specificity analysis under each of the four prongs of 19 U.S.C. § 1677(5A)(D)(iii).  *See* Commerce Letter, "Supplemental Questionnaire" (July 11, 2024) (4th Remand P.R. 1).  This included *inter alia* requesting information from the GOG on the marginal price agreements between the NOs and individual Germany companies (questions 1 and 2) as well as requesting information on the aggregate number and types of enterprises that received benefits under the KAV program (question 3). *Id*.

In its supplemental questionnaire response, the GOG failed to provide information necessary to further analyze any of the *de facto* specificity prongs.  *See* Letter from the GOG, "Response to Supplemental Questionnaire" (July 26, 2024) ("GOG Remand SQR") (4th Remand P.R. 4).  The GOG indicated that it was unable to collect or disclose some of this information, particularly information related to the pricing agreements of individual companies, because it claimed that such information is a trade secret protected by the German Trade Secrets Protection Act ("TSPA").  *Id*. at 1-4 (explaining that TPSA prevented the GOG from collecting or disseminating information requested in questions 1 and 2).  By contrast, with regard to other information, such as the aggregate number and types of companies eligible for reduced

concession fees, the GOG simply failed to provide the requested information without explanation. *Id*. at 4-6 (failing to cite TPSA, or any other legal prohibition, as explanation for its failure to provide aggregate data requested by Commerce in questions 3 and 4).

II.     ARGUMENT

    A.     **Commerce's Conclusion That "The KAV Program Is Not Countervailable" Is Unsupported by Substantial Evidence**

In its Fourth Remand Redetermination, Commerce continued to find that the KAV Program is not *de facto* specific, and therefore does not represent a countervailable subsidy. Fourth Remand Redetermination at 8. Commerce cited no record evidence supporting this determination. *See id.* at 8-13. Instead, Commerce based its determination entirely on the alleged lack of record evidence demonstrating that the KAV Program is specific, a record gap caused by the Government of Germany's claimed inability to provide information in response to Commerce's requests. *See id*.

Commerce's determination is unsupported by substantial evidence, which the Supreme Court has made clear is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). In this instance, the fact that there is an absence of record evidence cannot reasonably support a conclusion that the KAV program is not *de facto* specific, because the very same gap in the record equally supports a finding that the KAV program is *de facto* specific. Put simply, a gap in the record cannot reasonably be construed as evidence supporting either finding. Rather, Commerce must grapple with evidence reasonably available to it and make a determination supported by that evidence, which includes responding to evidence that fairly detracts from the agency's conclusions. *See Husteel Co., Ltd. v. United States*, 491 F. Supp. 2d 1283, 1292 (Ct. Int'l Trade 2007) (citing *Universal Camera*

3

*Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) ("{T}he substantial evidence standard requires that Commerce look at the whole record, including evidence that reasonably detracts from its conclusion, when making a determination."); *see also Consolidated Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)) ("To determine if substantial evidence exists, we review the record in its entirety, including all evidence that 'fairly detracts from the substantiality of the evidence.'").

    **B.**    **Commerce's Conclusion That "The KAV Program Is Not Countervailable" Is Unsupported by Facts "Otherwise Available" on the Record**

The statute is clear on what Commerce must do when a respondent fails to provide information necessary to make a determination. Specifically, 19 U.S.C. § 1677e(a)(1) states that "{i}f necessary information is not available on the record…{Commerce} shall, subject to section 1677m(d) of this title, use <u>facts otherwise available</u> in reaching the applicable determination under this subtitle" (emphasis supplied). *See generally Nippon Steel Corp. v. United States*, 337 F. 3d 1373, 1381 (Fed. Cir. 2003) (explaining that under 19 U.S.C. 1677e(a) "{t}he mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination"). While Commerce cites to this statutory provision, *see* Fourth Remand Redetermination at 10, it notably did not cite to a single otherwise available record fact supporting its conclusion that the KAV Program is not *de facto* specific.

This is unsurprising because the only otherwise available record facts support a conclusion that the KAV program <u>is</u> *de facto* specific. Indeed, as this Court correctly observed, in its preliminary determination <u>Commerce already found that the KAV program is *de facto* specific "because recipients of the subsidy are limited in number</u>." *See* Fourth Remand Order at

4

12 (quoting Commerce Memorandum, "Post Preliminary Analysis" (October 21, 2020) (P.R. 271) at 14) (emphasis supplied); *see also id*. at 11, n. 10 (observing that "the very terms of the KAV program lead to the conclusion that the recipients of the program are limited in some way, which is sufficient to create a reason to believe that the program is *de facto* specific and thus requiring further investigation").

In its Fourth Remand Redetermination, Commerce cited no evidence whatsoever that would warrant a reversal of its preliminary finding. As noted above, the only "fact" referenced by Commerce is the GOG's claimed inability to provide additional details. Fourth Remand Redetermination at 9-10. Even if true, this "fact" has no bearing on whether or not the KAV Program is *de facto* specific and therefore does not and cannot contradict other available record evidence—including *inter alia* the "very terms of the KAV program," *see* Fourth Remand Order at 11, n. 10—that indicate the recipients of the KAV program are limited in number.

Commerce's invocation of 19 U.S.C. § 1677e(a) does not cure its failure to analyze the record facts before it. While 19 U.S.C. § 1677e(a) provides Commerce with flexibility in dealing with an imperfect record, it does not permit Commerce to make conclusions devoid of any factual basis. Instead, even under 19 U.S.C. § 1677e(a), Commerce must rely on whatever facts are "otherwise available" on the record and use those facts to make a reasoned conclusion. As discussed above, the facts otherwise available on the record—including the KAV Program legislation—support a *de facto* specificity finding because they indicate that recipients of KAV program benefits are limited in number and not widely available to all enterprises. Absent more detailed information, the statute is clear that these are the record facts on which Commerce must rely. *See* 19 U.S.C. § 1677e(a).

To be sure, as Commerce correctly noted, information provided by the GOG on the total electricity consumption of special contract customers versus total electricity consumption in Germany is insufficient to reach a determination under any of the *de facto* specificity prongs as this information says nothing about the number of special contract customers, which the record confirms are those that consume large amounts of electricity, or the industries to which they belong. *See* Fourth Remand Redetermination at 9; *see also* Letter from the GOG, "Supplemental Questionnaire Response" (September 22, 2020) (P.R. 270) at 1-2 (explaining that special contract customers are those whose measured power consumption exceeds certain statutorily defined thresholds). Critically, the figures cited by Commerce also say nothing about the electricity consumed by companies eligible for the KAV program. As Commerce elsewhere correctly observed, KAV program benefits are not available to all special contract customers. Instead, reduced concession fees under the KAV program are only available to the subset of special contract customers "whose average price per kilowatt-hour {(kWh)} in the calendar year is lower than the average revenue per kWh from the supply of electricity to all special contract customers." *See* Fourth Remand Determination at 3. It is a mathematical impossibility for the prices paid by every special contract customer to be lower than the group average and thus, by the clear terms of the KAV Program legislation, only a discrete subset of special contract customers are eligible for reduction of concession fees.

Contrary to Commerce's apparent generalized belief about its construction of the record as somehow applying adverse inferences, *see* Fourth Remand Redetermination at 12-13, a determination of *de facto* specificity based on the available record facts is not an application of adverse inferences under 19 U.S.C. § 1677e(b). Instead, in this instance, a *de facto* specificity finding it is simply a factual determination based on the incomplete information available on the

6

factual record which, absent any contradictory information, constitutes substantial evidence for a *de facto* specificity finding under 19 U.S.C. § 1677e(a). Commerce's decision to ignore information "otherwise available" on the record and instead baselessly construe an incomplete record against an injured domestic industry is contrary to both reason and the law.

### C. Commerce's Conclusion that the German TPSA Prevented the GOG From Providing Aggregate Information on KAV Program Usage is Unsupported by Record Evidence

As discussed above, the GOG's failure to provide requested information requires Commerce to make a determination based on facts "otherwise available" on the record. The facts "otherwise available" support an affirmative *de facto* specificity finding. Application of the adverse inferences provision of 19 U.S.C. § 1677e(b) is thus unnecessary in this case. However, Commerce's refusal to apply adverse inferences is unsupported by substantial evidence and is not in accordance with law. The GOG failed to act to the best of its ability to provide aggregate information on program usage to the Commerce.

In its Fourth Remand Determination, declined to hold the GOG accountable for failing to provide the information requested in Commerce's supplemental questionnaire because, according to Commerce, "the GOG stated that it was unable to provide actual usage information on reduced concession fees under the program because it does not maintain or collect the information because of Germany's trade secret laws." Fourth Remand Redetermination at 10. However, Commerce's statements misconstrue the record.

The GOG claimed that the TPSA prevented it from gathering or disclosing information on the specific surcharge amounts paid by <u>individual</u> final customers. But it never claimed that TPSA would prevent disclosure of <u>aggregate</u> data on the number and types of customers eligible for concession fee reductions under the KAV program. *Compare* GOG SQR at 1-4 (GOG

7

claiming that that the individual company-specific information requested in questions 1 and 2 are trade secrets covered by TPSA) *with* GOG SQR at 4-6 (GOG failing to make any claim that the aggregate data requested in question 3 is a trade secret covered by TPSA).  This is because such aggregate data, which would alone be sufficient for an analysis of the first *de facto* specificity prong (19 U.S.C. § 1677(5A)(D)(iii)(I)), is not a trade secret under the TPSA. *See* GOG SQR at 2-3 (explaining that trade secrets protected under TPSA include "for example, calculation plans, orders, customer and supplier data, purchase prices, market analyses, or business strategies").

Thus, contrary to Commerce's factual findings, aggregate information concerning the number and types of entities provided reduced concession fees under the KAV Program is not missing from the record because such information is a trade secret that the GOG is unable to gather and provide.  *See* Fourth Remand Redetermination at 16.  Instead, such aggregate information is missing from the record because the GOG failed to act to the best of its ability to gather such aggregate information from the NOs, the private entities that Commerce determined the GOG entrusts and directs to administer the KAV program.

Commerce failed to grapple with these facts when it declined to apply adverse inferences.  Of course, the application of adverse inferences is a discretionary matter.  But Commerce again must support its conclusions with substantial evidence.  Insofar as Commerce declined to apply adverse inferences because it found that the GOG withheld information that it was not capable of being supplied, that conclusion is not based on the record.  Rather, the aggregate data that would address the *de facto* analysis are not subject to TPSA protections.  This warrants application of an adverse inference under 19 U.S.C. § 1677e(b).  *See Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1382 (Fed. Cir. 2003) ("The ordinary meaning of 'best' means 'one's maximum effort,' as in 'do your best.' *Webster's New Collegiate Dictionary* 104 (1981). 'Ability' refers to

8

'the quality or state of being able,' especially 'physical, mental, or legal power to perform.' Thus, the statutory mandate that a respondent act to 'the best of its ability' requires the respondent to do the maximum it is able to do.").

### D.    Conclusion

For the reasons outlined above, Commerce's determination that the KAV Program is not *de facto* specific is unsupported by any evidence on the record of this proceeding. The Court should therefore remand Commerce's Fourth Remand Redetermination back to the Department for further consideration and analysis.

Respectfully submitted,

/s/ Nicole Brunda
Thomas M. Beline
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave NW
Suite 300
Washington, D.C. 20037
(202) 567-2300
nbrunda@cassidylevy.com

*Counsel to Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons*

## Certificate of Compliance

The undersigned hereby certifies that the foregoing submission of "Defendant-Intervenors' Comments in Opposition to Commerce's Fourth Remand Redetermination," filed on October 17, 2024, contains 2,448 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation set forth in the Court's Standard Chambers Procedures.

By:  /s/ Nicole Brunda
      Nicole Brunda