## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ELLWOOD CITY FORGE CO., ELLWOOD ) <br> NATIONAL STEEL CO., ELLWOOD QUALITY ) <br> STEELS CO., AND A. FINKL & SONS, ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00080 |

## **ORDER**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in its entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:_____, 2024        _____
       New York, NY                              CLAIRE R. KELLY, JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ELLWOOD CITY FORGE CO., ELLWOOD ) <br> NATIONAL STEEL CO., ELLWOOD QUALITY ) <br> STEELS CO., AND A. FINKL & SONS, ) <br> ) <br> Defendant-Intervenors. ) | Court No. 21-00080 |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY <br> Director |
| OF COUNSEL: <br> AYAT MUJAIS <br> Senior Attorney <br> Office of the Chief Counsel <br>  for Trade Enforcement & Compliance <br> U.S. Department of Commerce | KELLY M. GEDDES <br> Trial Attorney <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> PO Box 480, Ben Franklin Station <br> Washington, DC 20044 |
| December 2, 2024 | Attorneys for Defendant |

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.    Standard of Review ................................................................................................... 5

    II.   The Court Should Sustain Commerce's Redetermination ....................................... 6

CONCLUSION ..................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Cases**

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........................................................................ 5

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) ..................................................................... 6

*I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992) ............................................................................... 6

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ....................... 5


**Statutes**

19 U.S.C. § 1516a ........................................................................................................................... 5

19 U.S.C. § 1677 ................................................................................................................... 3, 6, 10

19 U.S.C. § 1677e ........................................................................................................................ 8, 9

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, ) | |
| Plaintiff, ) | |
| v. ) | |
| UNITED STATES, ) | |
| Defendant, ) | Court No. 21-00080 |
| and ) | |
| ELLWOOD CITY FORGE CO., ELLWOOD ) NATIONAL STEEL CO., ELLWOOD QUALITY ) STEELS CO., AND A. FINKL & SONS, ) | |
| Defendant-Intervenors. ) | |

## **DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by Defendant-Intervenors Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons (collectively, Ellwood or petitioners). *See* Ellwood Cmts. (Oct. 10, 2024) (ECF No. 82). These comments and our response concern the Department of Commerce's fourth remand redetermination, Final Results of Remand Pursuant to Court Remand (Sep. 17, 2024) (ECF No. 79) (Fourth Remand Redetermination) (P.R.R. 10),[1] issued by Commerce pursuant to this Court's opinion and remand order, *BGH Edelstahl Seigen GmbH. v. United States*, 704 F. Supp. 3d 1372 (Ct. Int'l Trade 2024) (ECF No. 77). As explained below, the Court should sustain the fourth remand redetermination and enter

---

[1] Citations to the public record (P.R.R.) refer to the record of the antidumping duty administrative redetermination.

final judgment for the United States because Commerce has complied with the third remand order, and the fourth remand redetermination is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

On January 8, 2020, Commerce initiated a countervailing duty (CVD) investigation on forged steel fluid end blocks from Germany. *See Forged Steel Fluid End Blocks from the Federal Republic of Germany, India, Italy and the People's Republic of China*, 85 Fed. Reg. 2,385 (Dep't of Commerce Jan. 15, 2020) (initiation notice). In its final determination, Commerce found seven climate change programs to be countervailable, including the Concession Fee Ordinance (KAV Program) and the Electricity and Energy Tax Acts. *See Forged Steel Fluid End Blocks from the Federal Republic of Germany*, 85 Fed. Reg. 80,011 (Dep't of Commerce Dec. 11, 2020) (final CVD determin.), and accompanying Issues and Decision Memorandum (IDM). Plaintiff BGH Edelstahl Seigen GmbH (BGH) appealed Commerce's final determination to this Court on March 29, 2021. On October 12, 2022, this Court sustained the determination in part and remanded in part. *See BGH Edelstahl Seigen GmbH. v. United States*, 600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) (ECF No. 42). This Court directed Commerce on remand to (1) consider whether to account for the costs of complying with the Electricity and Energy Tax Acts in its calculation of the CVD rate for these subsidy programs; and (2) explain or reconsider its determination that the KAV Program is a specific subsidy. *See id.* at 1258, 1269.

On January 10, 2023, Commerce issued its first remand redetermination. *See* Final Results of Remand Pursuant to Court Remand (Jan. 10, 2023) (ECF No. 48). Commerce explained its determination not to account for compliance costs in its calculation of the CVD

rates for programs under the Electricity Tax Act and Energy Tax Act and further explained its determination that the KAV Program is specific. In particular, with respect to the KAV Program, Commerce explained that record evidence shows that the eligibility criteria and conditions under the KAV Program are not neutral pursuant to 19 U.S.C. § 1677(5A)(D)(ii) because they favor certain special contract customers over other enterprises. Accordingly, Commerce found on remand that the KAV Program did not meet the definition or standards of "objective criteria or conditions" under 19 U.S.C. § 1677(5A)(D)(ii) and was therefore *de jure* specific.

On May 9, 2023, this Court sustained Commerce's determination pertaining to the Electricity and Energy Tax Acts but remanded Commerce's determination that the KAV Program is *de jure* specific for reconsideration or further explanation. *See BGH Edelstahl Seigen GmbH. v. United States*, 639 F. Supp. 3d 1237, 1242, 1244 (Ct. Int'l Trade 2023) (ECF No. 58). This Court directed Commerce to explain how the KAV Program's eligibility criteria "are neither economic in nature nor horizontal in application" as is required for a subsidy to be specific pursuant to 19 U.S.C. § 1677(5A)(D)(ii). *See id*. at 1244.

On August 7, 2023, Commerce issued its second remand redetermination. Commerce further explained its determination that the KAV Program is *de jure* specific and addressed how the eligibility criteria are neither economic in nature nor horizontal in application. Specifically, Commerce explained that the eligibility criteria are not horizontal in application because the government of Germany has, by law, limited eligibility to certain groups which the authority itself defined, thereby limiting the program to some groups and excluding others, such as those who do not receive certain types of investment gains or use specified stationary equipment.

3

On November 14, 2023, the Court again remanded Commerce's determination that the KAV Program is *de jure* specific, holding that the existence of criteria that limits access is alone insufficient to render a subsidy *de jure* specific, and that Commerce failed to explain how the limitation to special contract customers rendered the program *de jure* specific because Commerce did not sufficiently explain how the eligibility criteria are not objective. 663 F. Supp. 3d at 1381-84. The Court held that Commerce on remand "can either explain and support its determination that the criteria are not neutral…or conduct a *de facto* analysis or reconsider its determination." *Id.* at 1385.

On February 12, 2024, Commerce issued its third remand redetermination. Commerce reconsidered its specificity determination, and under respectful protest found that the KAV Program was not *de jure* specific, that there was no basis to reconsider its decision in that the KAV program was "*de jure* specific rather than *de facto* specific," and thus the KAV Program did not constitute a countervailable subsidy. *See* Third Remand Redetermination at 6-9 (ECF No. 72) (P.R.R. 5). Commerce thus revised the subsidy rates for all three respondents, BGH, Schmiedewerke Groditz GmbH (SWG), and voestalpine Bohler Group, and all other producers/exporters not subject to individual examination. *Id.*

On May 22, 2024, this Court remanded Commerce's third remand redetermination, concluding that Commerce had "failed to conduct a *de facto* specificity analysis despite there being reasons to believe the KAV Program is specific as a matter of fact." 704 F. Supp. 3d at 1380. Accordingly, on July 11, 2024, Commerce reopened the record and issued a supplemental questionnaire requesting additional information from the government of Germany to enable Commerce to determine whether the KAV Program is *de facto* specific. Fourth Remand Determination at 6-7. The government of Germany timely responded on July 26, 2024. On

4

August 23, 2024, Commerce issued its draft redetermination. *Id.* at 2. On August 29, 2024, BGH and the petitioners submitted comments. *Id.*

On September 17, 2024, Commerce issued its fourth remand redetermination. After reviewing the additional information that was added to the record, Commerce continued to find that the KAV Program is not *de facto* specific. *Id.* Commerce based this determination on the government of Germany's statement in its questionnaire response that no data exists concerning the concession fees paid by specific companies, and the disclosure of such information is prohibited by law. *Id.* at 7. Commerce found that there was no evidentiary basis to determine that the KAV Program meets any of the *de facto* specificity criteria, and thus continued to find that the KAV Program did not constitute a countervailable subsidy. *Id.* at 9. BGH supports Commerce's remand redetermination. *See* BGH Cmts (ECF No. 81). Petitioners, however, argue that Commerce's finding that the KAV Program was not *de facto* specific is unsupported by substantial evidence. *See* Ellwood Cmts.

## ARGUMENT

**I.     Standard of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed.*

5

*Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.  *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

## II.     The Court Should Sustain Commerce's Redetermination

Commerce complied with the fourth remand order, supported its fourth remand redetermination with record evidence, and acted in accordance with law.  Therefore, this Court should sustain the fourth remand redetermination.

Commerce complied with the Court's instruction to "further investigate whether {the KAV Program} may be specific as a matter of fact."  704 F. Supp. 3d at 1380.  Commerce issued a supplemental questionnaire requesting additional evidence from the government of Germany concerning whether the KAV Program was *de facto* specific.  *See* Supplemental Questionnaire (Jul. 11, 2024) (P.R.R. 1).  The government of Germany fully and timely responded to the questionnaire on July 26, 2024.  *See* Germany's Supplemental Questionnaire Response (P.R.R. 4) (Remand Questionnaire Response).  Commerce then conducted a *de facto* analysis and found that the KAV Program did not meet any of the *de facto* criteria in 19 U.S.C. § 1677(5A)(D), and thus was not countervailable.

This decision was supported by substantial evidence in the record.  A subsidy is specific as a matter of fact if the recipients are limited in number, if an enterprise or industry is a predominant or disproportionate beneficiary of the subsidy, or if the subsidy is discretionary and is granted in a way that favors an enterprise or industry.  19 U.S.C. § 1677(5A)(D)(iii).

Commerce therefore sought to determine whether any of these factors exist, such that the KAV Program is countervailable.

In the underlying investigation, the record contained limited information concerning actual use of the KAV Program. The KAV Program provides certain companies with an exemption from the concession fees typically charged for access to electricity. *See* Germany's First Supplemental Questionnaire Response (Jun. 5, 2020) (C.R. 177) at Ex. KAV-02 at KAV-1 – Kav-12 (PDF page 343). Eligible companies are those "special contract customers"—those who exceed certain amounts of electricity usage—whose electricity prices are lower than the marginal price agreed between the municipality and the network operator. *See* Fourth Remand Redetermination at 4. The government of Germany reported that it does not collect, track, or maintain information on usage of the KAV Program. *See id.* at KAV-11 – Kav-12 (PDF pages 353-54). It further explained that "no governmental authority is involved in administering the process towards the final consumer" such that "the {government of Germany} does not have data on the concession fees paid by a specific company." *Id.* at KAV-2 (PDF Page 234). Rather, network operators determine whether individual customers are eligible for the exemption, and charge them accordingly. *Id.*

During the present remand, Commerce asked the government of Germany to explain in more detail whether it had attempted to obtain usage information from network operators, and if not, why it did not do so. *See* Remand Questionnaire Response at 1. The government of Germany explained that network operators cannot provide information about which companies paid concession fees because such information constitutes trade secrets. *Id.* at 1-2. Germany's Trade Secrets Protection Act prohibits disclosure of another party's trade secrets, as well the acquisition of trade secrets by unauthorized parties. *Id.* at 2-3. The government of Germany

7

therefore does not have the authority to acquire this information from network operators. *Id.* at 2-3. The government of Germany did, however, provide aggregate information from its Federal Statistical Office on concession fees paid by special contract customers, regular contract customers, and household customers during the period of investigation. *Id.* at 6, Ex. Remand-05 (PDF page 59). This report shows that special contract customers in Germany consumed 294,737 gWh of electricity in 2018, more than half of the total consumption of 445,188 gWh by all final consumers. *Id.*

After reviewing all information in the record, Commerce concluded that there was no evidence to conclude that the KAV Program is *de facto* specific. Fourth Remand Redetermination at 9. The aggregate data provided by the government of Germany do not provide information as to which enterprises and industries were considered special contract customers, which enterprises or industries were eligible for the KAV Program, or which enterprises or industries actually benefitted from the KAV Program. *Id.* Commerce therefore reasoned that necessary information was missing from the record and that applying facts available was therefore appropriate pursuant to 19 U.S.C. § 1677e(a)(1). *Id.* Commerce also considered whether to use an adverse inference when selecting from information available on the record to replace the missing information pursuant to 19 U.S.C. § 1677e(b). However, use of an adverse inference requires a finding that an "interested party" had failed to cooperate to the best of its ability in responding to Commerce's requests for information. *Id.* § 1677e(b)(1). Here, Commerce noted that the government of Germany "*does not* and *is not allowed to* maintain or collect" the missing information. Fourth Remand Redetermination at 10 (emphasis in original). Commerce concluded that "the gap in the record did not result from the actions of the {government of Germany}, and cannot be attributed to the actions of any interested party."

8

Fourth Remand Redetermination at 12.  Put differently, Commerce did not make a finding that the government of Germany failed to cooperate by not acting to best of its ability in responding to Commerce's requests for information.  *Id.*  Accordingly, Commerce concluded that there was no basis to find the KAV Program *de facto* specific using an adverse inference.  *Id.* at 13.  Without such an inference, and without any other evidence in the record indicating that the program was *de facto* specific, Commerce concluded that the program was not specific and therefore not countervailable.  Fourth Remand Redetermination at 13.

      Ellwood argues that Commerce based its determination entirely on the lack of record evidence demonstrating whether the KAV Program is specific, and thus Commerce's determination is unsupported by substantial evidence.  Ellwood Cmts at 3.  Ellwood contends that necessary information was missing from the record and Commerce should have relied on facts otherwise available, as well as an adverse inference, to conclude that the KAV Program was *de facto* specific.  *Id.* at 4-5.  But Commerce did not refuse to apply facts otherwise available as Ellwood suggests.  Rather, Commerce stated that it found "based on facts otherwise available in accordance with 19 U.S.C. § 1677e(a)(1) of the Act, that the KAV Program does not constitute a countervailable subsidy."  Fourth Remand Redetermination at 13.  Since the record contained no "facts otherwise available" suggesting that the KAV Program is *de facto* specific, Commerce found that it was not specific.

      Ellwood urges that Commerce should find *de facto* specificity based solely on the terms of the KAV Program, which sets eligibility criteria such that recipients are "limited in number."  Ellwood Cmts at 4-5.  However, if Commerce were to find the program *de facto* specific based solely on the terms of the program, without information about how the program was actually implemented, this would essentially be a finding of *de jure* specificity, which this Court has

9

already rejected.  And while the eligibility criteria of the program may have been a "reason{} to believe that a subsidy *may* be specific as a matter of fact" pursuant 19 U.S.C. § 1677(5A)(D)(iii) (emphasis added), triggering an obligation to conduct a *de facto* analysis, an ultimate finding of *de facto* specificity requires a finding that one of the factors in that subsection exists.  One of these, as Ellwood points out, is whether "{t}he actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number."  *Id.* § 1677(5A)(D)(iii)(I).  But the mere fact that there were *any* criteria limiting eligibility cannot be enough to find that recipients were "limited in number…on an enterprise or industry basis."  Again, to find otherwise would render this Court's reversal of Commerce's *de jure* specificity finding meaningless.  *See* 663 F. Supp. 3d at 1382 ("{T}he SAA reveals that a subsidy will not be deemed *de jure* specific simply because it is available to fewer than all enterprises or industries.")  In any event, Commerce's *de facto* specificity analysis is based on the actual number of recipients who received the subsidy, not the terms of the program.

The limited evidence in the record concerning actual use—the aggregate data on concession fees paid—suggests, if anything, that the KAV Program did not benefit specific enterprises or industries over others.  As Commerce noted in its remand redetermination, special contract customers accounted for over half of Germany's electricity consumption during the period of investigation.  Fourth Remand Redetermination at 9.  And as BGH observed in its comments in support of the remand redetermination, by subtracting household customer consumption from total consumption, special contract customers account for 93% of the electricity consumption of all commercial enterprises in Germany.  BGH Cmts at 1.  Thus, the vast majority of enterprises and industries appear to have qualified as special contract customers, and any of those entities who kept their prices lower than average would have benefitted from

the KAV Program.  *See* Fourth Remand Redetermination at 3.  As Ellwood points out, these actual recipients would be only a subset of the total number of special contract customers, but this fact does not suggest that actual use skewed toward any particular enterprise or industry.  Ultimately, while this limited information does not conclusively prove that no enterprise or industry was a predominant or disproportionate beneficiary of the KAV Program, it is reasonable to conclude from this evidence, absent any evidence that the program *was* specific, that the KAV Program was not *de facto* specific.

With respect to Elwood's argument that Commerce should have used an adverse inference, Ellwood relies on the idea that the government of Germany could have provided aggregate data "on the number and types of customers eligible for concession fee reductions under the KAV Program."  Ellwood Cmts. at 7.  However, Commerce did not ask for such information, so the government of Germany's failure to provide it does not demonstrate a lack of cooperation.  Rather, Commerce asked whether the government of Germany itself collects aggregate data, as well as whether network operators are "required to provide" any aggregate data.  Remand Questionnaire Response at 4-6.  In response, the government of Germany explained that it does collect aggregated data for monitoring the electricity industry, which the government of Germany provided.  *Id.* at 5-6.  The government of Germany was not asked to acquire a different set of aggregate data than what network operators do not typically provide, such as aggregate data differentiated by industry.  Ellwood seems to suggest that the government of Germany was required to force the relevant network operators to conduct a novel review of the consumption rates of all enterprises and industries to produce an aggregate report showing the total consumption differentiated by industry, which could then lawfully be provided to the government of Germany.  This is outside the scope of what Commerce asked the government of

11

Germany to provide, and it was reasonable that Commerce did not require the government of Germany to go to such lengths, particularly in light of the applicable trade secret laws.  Finally, even if Ellwood were correct that the government of Germany failed to cooperate, the statute merely provides that Commerce "may" apply an adverse inference, not that Commerce is required to do so.  Accordingly, there is no basis to find that Commerce's determination not to apply an adverse inference was unlawful.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Remand Redetermination* and enter final judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/ Kelly M. Geddes
KELLY M. GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044

OF COUNSEL:
AYAT MUJAIS
Senior Attorney
Office of the Chief Counsel
 for Trade Enforcement & Compliance
U.S. Department of Commerce

December 2, 2024

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 3,252 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

/s/ Kelly Geddes