UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Claire R. Kelly, Judge

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) Ct. No. 21-00080 |
| Defendant, | ) |
| and | ) |
| ELLWOOD CITY FORGE COMPANY, *et. al.*, | ) |
| Defendant-Intervenors. | ) |

**PLAINTIFF BGH EDELSTAHL SIEGEN GMBH
REPLY TO DEFENDANT-INTERVENORS' COMMENTS IN
<u>OPPOSITION TO FOURTH REMAND REDETERMINATION</u>**

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*

Dated: December 2, 2024

**TABLE OF CONTENTS**

I.  ARGUMENT ..................................................................................................................... 1

    A.  Commerce's Determination That the KAV Program Is Not Countervailable Is Supported by Substantial Evidence ............................................................................... 1

    B.  Commerce's Determination That the KAV Program Is Not Countervailable Is Supported by Facts "Otherwise Available" on the Administrative Record ................. 4

    C.  Commerce Properly Determined That the Legal Standard for the Application of Adverse Facts Available Had Not Been Met ............................................................... 5

II.  CONCLUSION ................................................................................................................. 7

## TABLE OF AUTHORITIES

**Cases**

BGH Edelstahl Siegen GMBH v. United States,
  600 F. Supp. 3d 1241 (CIT 2022) ............................................................................................. 2

Consol. Edison Co. of N.Y. v. NLRB,
  305 U.S. 197 (1938) ................................................................................................................. 4

Consolo v. Fed. Mar. Comm'n,
  383 U.S. 607 (1966) ................................................................................................................. 4

Maverick Tube Corp. v. United States,
  857 F.3d 1353 (Fed. Cir. 2017) ................................................................................................ 4

Viet I–Mei Frozen Foods Co. v. United States,
  839 F.3d 1099 (Fed. Cir. 2016) ................................................................................................ 4

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii) ......................................................................................................... 2

19 U.S.C. § 1677(5A)(D)(iii)(I) .................................................................................................. 3,5

19 U.S.C. § 1677(5A)(D)(iii)(II) ................................................................................................. 3,5

19 U.S.C. § 1677(5A)(D)(iii)(III) ................................................................................................ 3,5

19 U.S.C. § 1677(5A)(D)(iii)(IV) ............................................................................................... 3,5

19 U.S.C. § 1677e(a) ...................................................................................................................... 4

19 U.S.C. § 1677e(b) ...................................................................................................................... 5

Pursuant to the Court's opinion of May 22, 2024 (ECF 77),[1] plaintiff, BGH Edelstahl Siegen GmbH ("BGH"), hereby submits this reply to the comments filed by defendant-intervenors, Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company and A. Finkl & Sons, on October 17, 2024 (ECF 82) ("Petitioner Comments") in opposition to the fourth remand redetermination issued by the U.S. Department of Commerce ("Commerce") in this case on September 19, 2024 (ECF 79) ("Redetermination IV").

I.     ARGUMENT

    A. Commerce's Determination That the KAV Program Is Not Countervailable Is Supported by Substantial Evidence

Defendant-intervenors wrongly claim that Commerce's fourth remand redetermination, finding that the KAV Program is not countervailable, is unsupported by substantial evidence. See Petitioner Comments, 3. Defendant-intervenors' claim is based upon a failure to consider all of the evidence contained on the administrative record.

As detailed in BGH's October 17, 2024 comments on Commerce's redetermination (ECF 81) ("BGH Comments"), the Government of Germany provided a detailed listing of annual electricity consumption by customer group over a 32-year period. See BGH Comments, 1-2 (citing Government of Germany Remand Supplemental Questionnaire Response, Ex. Remand-5 (July 26, 2024) (Barcode: 4604630-01) ("GOG Remand SQR"); R4-P.R. 4).[2] Once this information is adjusted for household customers, who would not meet the minimum electricity consumption requirements to qualify as special contract customers, the information shows that

---

[1] By amended scheduling order dated November 7, 2024 (ECF 84), the Court extended the deadline for replies to December 2, 2024.
[2] Citations to the public and confidential record of the original investigation filed on May 10, 2021 are designated as "P.R." and "C.R.," respectively. Citations to the public and confidential record of the fourth final results of redetermination filed on September 25, 2024 are designated as "R4-P.R." and "R4-C.R.," respectively.

1

special contract customers accounted for 93% of the electricity consumption of all commercial enterprises in 2018 (*i.e.*, during the POI).  Id.  This information alone demonstrates the broad extent of diversification of economic activities covered by special contract customers.  The report covering 32 years also demonstrates the long period of time the categorization of special contract customers has been in existence.[3]

 The text of Section 2(4) of the KAV ordinance also specifies that KAV relief is only available to customers whose average electricity price per kilowatt hour in the calendar year is below the average revenue per kilowatt hour from the supply of electricity to all special-rate customers for the year before last ("penultimate calendar year") (*e.g.*, 2016 for calendar year 2018) as reported by the German Federal Office of Statistics (*Statistisches Bundesamt*).  See BGH I, 600 F. Supp. at 1268; *see also* GOG First Supplemental Questionnaire: Response to Certain Questions, Ex. KAV-03 (June 5, 2020); P.R. 236.  This average revenue amount is known as the "*Grenzpreis*" or marginal price.

 Therefore, the qualification for KAV relief in a given calendar year is based upon a simple mathematical comparison of the average electricity price paid by the company during the calendar year with the total average electricity price for all special-rate customers two years before.  The group of eligible companies would also change from year to year based upon the development of electricity prices.  In times of rising electricity prices, little or no companies would qualify because their current electricity price would be above the average price from two years ago and, in times of falling prices, the number of qualifying companies would expand because the current electricity price would be below the average price from two years ago.

---

[3] Pursuant to 19 U.S.C. § 1677(5A)(D)(iii), in evaluating the statutory factors for *de facto* specificity, Commerce is to take into account the length of time during which the subsidy program has been in operation.

Defendant-intervenors misunderstand the operation of the KAV ordinance when they claim that it "is a mathematical impossibility for the prices paid by every special contract customer to be lower than the group average." *See* Petitioner Comments, 6. Defendant-intervenors fail to appreciate that the price comparison is between the average price paid by a special contract customer in the current year with the marginal price from two years prior. Thus, the number and identity of companies qualifying for KAV relief change each year based upon the development of electricity prices.

Therefore, when all the record evidence is considered, it supports Commerce's determination that the KAV Program is not *de facto* specific. With special contract customers accounting for 93% of the electricity consumption of all commercial enterprises in Germany, it is reasonable to conclude that the number of eligible recipients is not limited in number. *See* 19 U.S.C. § 1677(5A)(D)(iii)(I). With such a large percentage of special contract customers among commercial enterprises in Germany, it is also reasonable to conclude that no enterprise or industry is a predominant user of the program and that no enterprise or industry receives a disproportionately large amount under the program. *See* id. at (5A)(D)(iii)(II) & (III). This is also supported by the manner in which eligibility is based upon a purely mathematical comparison of average electricity prices, which changes each year based upon the development of electricity prices, as explained above. This objective manner of determining eligibility also ensures that no government authority has discretion to favor an enterprise or industry over others. *See* id. at (5A)(D)(iii)(IV).

Accordingly, based upon the evidence on the administrative record, Commerce reasonably concluded that the elements of *de facto* specificity under section 19 U.S.C. § 1677(5A)(D)(iii) are not met in this situation. The factual information provided by the

3

Government of Germany is substantial evidence for this determination, and there was no need for Commerce to conduct a further analysis of facts available under 19 U.S.C. § 1677e(a). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The possibility of drawing two inconsistent conclusions from record evidence does not render Commerce's findings unsupported by substantial evidence. Viet I–Mei Frozen Foods Co. v. United States, 839 F.3d 1099, 1106 (Fed. Cir. 2016) (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

### B. Commerce's Determination That the KAV Program Is Not Countervailable Is Supported by Facts "Otherwise Available" on the Administrative Record

As explained above, the factual information provided by the Government of Germany is substantial evidence for Commerce's determination and there was no need to conduct a further analysis of facts available under 19 U.S.C. § 1677e(a). Nevertheless, an analysis of facts otherwise available under section 1677e(a) leads to the same evidence and the same results, supporting Commerce's determination that the KAV Program is not *de facto* specific.

As detailed above, special contract customers accounted for 93% of the electricity consumption of all commercial enterprises in Germany during the period of investigation, and the manner in which eligibility for KAV relief is determined based upon a purely mathematical comparison of average electricity prices in one year with those from two years before, results in the number and identity of companies qualifying for KAV relief changing each year based upon the development of electricity prices. With special contract customers accounting for 93% of the electricity consumption of all commercial enterprises in Germany, it is reasonable to conclude

that the number of eligible recipients is not limited in number. See 19 U.S.C. § 1677(5A)(D)(iii)(I). With such a large percentage of special contract customers among commercial enterprises in Germany, it is also reasonable to conclude that no enterprise or industry is a predominant user of the program and that no enterprise or industry receives a disproportionately large amount under the program. See id. at (5A)(D)(iii)(II) & (III). The objective manner of determining eligibility based upon a purely mathematical comparison of average electricity prices in one year with those from two years before also ensures that no government authority has discretion to favor an enterprise or industry over others. See id. at (5A)(D)(iii)(IV).

Therefore, the facts available on the administrative record support Commerce's determination that the KAV Program is not *de facto* specific.

### C. Commerce Properly Determined That the Legal Standard for the Application of Adverse Facts Available Had Not Been Met

Commerce correctly concluded that the Government of Germany did not fail to cooperate by not acting to the best of its ability to comply with a request for information and that an adverse inference under 19 U.S.C. § 1677e(b) was not warranted.

In its remand questionnaire response, the Government of Germany explained that it does not have data on the concession fees paid by specific companies because no governmental authority is involved in administering the KAV process towards the final consumer. GOG Remand SQR, 2. Rather, such information is kept only by each respective network operator ("NO"), of which there are over 850 in Germany, and the trade secret laws in Germany prevent the NOs from disclosing this information to the German Government. Id. at 2-6. Defendant-intervenors do not seem to dispute these facts.

5

Rather, defendant-intervenors claim that aggregated data could be disclosed. Defendant-intervenors however fail to cite any record evidence showing the existence of any aggregated data on the number and respective industry of companies qualifying for KAV relief. To the contrary, the record is clear that no such aggregated data exists because company-specific data is maintained only by the individual NOs, who are prohibited from disclosing it to other parties by the trade secret laws in Germany. Id. The only aggregated data maintained by the German Government (*i.e.*, the Federal Network Office and the Federal Cartel Agency) relate to the average of the concession fee paid by consumers in certain defined consumption level groups. Id. at 5-6. This information is published in annual monitoring reports, and the Government of Germany has submitted a copy of the relevant portions of the 2018 report. Id. at 5-6 & Ex. Remand-04. This aggregated data shows only the "Spread" of concessions fees paid by customers having a annual electricity consumption of 24 GWh/year and 50 GWh/year. Id. at Ex. Remand-04.

Accordingly, the evidence on the administrative record shows that the Government of Germany does not maintain any information of the specific companies and industries qualify for KAV relief, either on an individual or aggregate basis. Therefore, Commerce properly determined that the Government of Germany did not fail to cooperate by not acting to the best of its ability to comply with a request for information and that the application of adverse facts available was therefore not warranted.

**II.     CONCLUSION**

For the reasons stated above, the Court should sustain Commerce's final results of redetermination.

                                        Respectfully submitted,

                                        /s/ Marc E. Montalbine
                                        Marc E. Montalbine*
                                        Gregory S. Menegaz
                                        Alexandra H. Salzman
                                        Merisa A. Horgan
                                        **deKieffer & Horgan, PLLC**
                                        1156 Fifteenth Street, N.W.
                                        Suite 1101
                                        Washington, DC 20005
                                        Tel: (202) 783-6900
                                        Fax: (202) 783-6909
                                        email:  montalbine@dhlaw.de
Date: December 2, 2024                      *Counsel to BGH Edelstahl Siegen GmbH*

---

\* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

7

**Word Count Certificate of Compliance**

This reply has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in section 2(B)(1)(b) of the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1)(c) of the Chambers Procedures, I hereby certify that these comments contain **1,772** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

   /s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: montalbine@dhlaw.de
*Counsel to BGH Edelstahl Siegen GmbH*