Slip Op. 24-148

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BGH EDELSTAHL SIEGEN GMBH,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Claire R. Kelly, Judge** |
| **Defendant,** | **Court No. 21-00080** |
| **and** | |
| **ELLWOOD CITY FORGE COMPANY, ET AL.,** | |
| **Defendant-Intervenors.** | |

<u>**OPINION**</u>

[Sustaining Commerce's Fourth Remand Redetermination.]

Dated: December 26, 2024

<u>Marc E. Montalbine</u>, <u>Gregory S. Menegaz</u>, <u>Alexandra H. Salzman</u>, and <u>Merisa A. Horgan</u>, and <u>James K. Horgan</u>, deKieffer & Horgan, PLLC, of Washington, D.C., for plaintiff BGH Edelstahl Siegen GmbH.

<u>Kelly M. Geddes</u>, Trial Attorney, and <u>Sarah E. Kramer</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant United States. Also on the brief were <u>Patricia M. McCarthy</u>, Director, and <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General. Of Counsel were <u>Ayat Mujais</u>, Senior Attorney, and <u>Joseph Grossman-Trawick</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Thomas M. Beline, Nicole Brunda, Chase J. Dunn, and Myles S. Getlan, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for defendant-intervenors Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons.

     Kelly, Judge:    Before the Court is the U.S. Department of Commerce's ("Commerce") remand redetermination pursuant to the Court's fourth remand order, see BGH Edelstahl Siegen GmbH v. United States, 704 F.Supp.3d 1372 (Ct. Int'l Trade 2024) ("BGH IV"), on Commerce's final determination in its countervailing duty ("CVD") investigation of forged steel fluid end blocks ("fluid end blocks" or "FEB") from the Federal Republic of Germany ("FRG" or "Germany" or "GOG").  See generally Final Results of Redetermination Pursuant to Fourth Court Remand, Sept. 17, 2024, ECF No. 79-1 ("Fourth Remand Results"); see generally [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 7,535 (Dep't Commerce Jan. 29, 2021) ([CVD] orders and am. final determination) and accompanying issues and decision memo. ("Final Decision Memo."); [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 10,244 (Dep't Commerce Feb. 19, 2021) (correction to [CVD] orders).  For the following reasons, the Court sustains Commerce's redetermination.

## BACKGROUND

     The Court presumes familiarity with the facts of this case as set out in its previous opinions ordering remand to Commerce, see BGH Edelstahl Siegen GmbH v. United States, 600 F.Supp.3d 1241 (Ct. Int'l Trade 2022) ("BGH I"); BGH Edelstahl Siegen GmbH v. United States, 639 F.Supp.3d 1237 (Ct. Int'l Trade 2023) ("BGH II"); BGH Edelstahl Siegen GmbH v. United States, 663 F.Supp.3d 1378 (Ct. Int'l Trade

2023) ("BGH III"), and BGH IV, and now recounts only those facts relevant to the Court's review of the Fourth Remand Results. On December 19, 2019, the FEB Fair Trade Coalition, Ellwood Group, and Finkl Steel (collectively "Ellwood")[1] filed a petition with Commerce seeking the imposition of CVDs on imports of FEBs from the People's Republic of China, the FRG, India, and Italy, as well as antidumping duties on dumped imports of FEBs from the FRG, India, and Italy. See Antidumping and [CVD] Pets. at 1, PD 1, bar code 3921764-01 (Dec. 19, 2019). Commerce selected BGH Edelstahl Siegen GmbH ("BGH") as a mandatory respondent[2] during its CVD investigation of FEBs from the FRG between the period of January 1, 2018 to December 31, 2018. Resp't Selection Memo. at 1, PD 55, bar code 3938855-01 (Feb. 4, 2020). The investigation concluded that the FRG offered countervailable subsidies through multiple programs, including the Konzessionsabgabenverordnung Program ("KAV Program").[3] Final Decision Memo. at 6–8; see also Post-Prelim. Analysis [CVD] Investigation: [Fluid End Blocks] from [FRG] at 6–19, PD 271, bar code 4043279-01 (Oct. 21, 2020); Decision Mem. Prelim. Affirmative Determination [CVD]

---

[1] Petitioners are the Defendant-Intervenors in the matter, but now challenge Commerce's latest redetermination.

[2] BGH is the Plaintiff in the matter, but now supports Commerce's latest redetermination.

[3] BGH had challenged Commerce's determination that the following programs are countervailable: 1. Stromsteuergesetz ("Electricity Tax Act"), 2. Energiesteuergesetz ("the Energy Tax Act"), 3. Erneuerbare-Energien-Gesetz ("EEG Program"), 4. Kraft-Wärme-Kopplungsgesetz ("KWKG Program"), 5. The European Union's ("EU") Emissions Trading System ("ETS Program"), 6. The EU ETS Compensation of Indirect CO2 Costs Program ("CO2 Compensation Program"), and 7. the KAV Program. [BGH] Rule 56.2 Mem. Supp. Mot. J. Agency R. at 7, 21, 30, 39–40, Oct. 26, 2021, ECF No. 22.

Investigation of [Fluid End Blocks] from [FRG] at 19–27, PD 220, bar code 3975458-01 (May 18, 2020). Among its determinations, Commerce concluded that the KAV program was specific as a matter of law. Final Decision Memo. at 37–39. BGH filed its complaint and sought judgment on the agency record, challenging Commerce's final determination. See generally Compl., Mar. 29, 2021, ECF No. 7; see also [BGH] Mot. J. Agency R., Oct. 26, 2021, ECF No. 21. The Court sustained in part and remanded in part Commerce's final determination after briefing. BGH I, 600 F.Supp.3d at 1269–70. With respect to the KAV program, the Court held that Commerce's finding of de jure specificity was unsupported by the record because Commerce did not explain how the program limits usage to certain industries or enterprises and failed to consider its economic and horizontal properties and application. BGH I, 600 F.Supp.3d at 1269. The Court also remanded Commerce's CVD rate calculation for the Electricity Tax Act and the Energy Tax Act. BGH I, 600 F.Supp.3d at 1258.

Commerce filed its Remand Results in January 2023. See generally Final Results of Redetermination Pursuant to Court Remand, Jan. 10, 2023, ECF No. 48-1 ("First Remand Results"). After briefing was complete, the Court sustained in part and remanded in part. BGH II, 639 F.Supp.3d at 1239. The Court again concluded Commerce's determination that the KAV Program was specific as a matter of law was unsupported by the record. BGH II, 639 F.Supp.3d at 1243. The Court remanded for further explanation or reconsideration as to the economic and horizontal nature of the subsidy. BGH II, 639 F.Supp.3d at 1244.

Commerce filed its second redetermination results on August 7, 2023, again finding the KAV Program was a de jure specific subsidy. See generally Final Results of Redetermination Pursuant to Court Remand, Aug. 7, 2023, ECF No. 60-1 ("Second Remand Results"). The Court again remanded Commerce's redetermination, concluding Commerce's position that "where the 'implementing legislation expressly limit[s] access to the "group" that the legislation itself created' the subsidy is de jure specific" was contrary to law.[4] BGH III, 663 F.Supp.3d at 1384. The Court remanded to Commerce for further consideration or explanation. BGH III, 663 F.Supp.3d at 1384.

Commerce filed its Third Remand Results on February 12, 2024. See generally Final Results of Redetermination Pursuant to Court Remand, Feb. 12, 2024, ECF No. 71-1 ("Third Remand Results"). In the third redetermination, Commerce reconsidered its determination and, under respectful protest,[5] found that the KAV

---

[4] More specifically, the Court explained that a subsidy may "be limited to fewer than all enterprises or industries in an economy" without being de jure specific so long as the limiting criteria is objective. BGH III, 663 F. Supp. 3d at 1384. The Court explained that criteria may create objective categories of industries or enterprises which may benefit from the subsidy to the exclusion of others. Id. (citing Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4243 ("SAA")). "Objective" in this context means neutral, i.e., it "must not favor certain enterprises or industries over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise." Id. at 1382 (citing SAA at 4243). Therefore, "criteria based on size or the number of employees could exclude entire categories of enterprises and industries, but such criteria would not render the subsidy de jure specific because it is horizontal (operating throughout the economy), and is economic in nature." Id. at 1384 (citing the SAA at 4243).

[5] Commerce files under respectful protest in order to preserve its right to appeal. See Viraj Grp., Ltd. v. United States, 343 F.3d 1371, 1376 (Fed. Cir. 2003).

Program was not de jure specific. Third Remand Results at 2. Further, it found no basis to consider whether the KAV Program was de facto specific. Third Remand Results at 2.

In BGH IV the Court concluded the statute required Commerce to analyze whether the subsidy was de facto specific as there was reason to believe the program was specific. BGH IV, 704 F.Supp.3d at 1378 (citing 19 U.S.C. § 1677(5A)(D)(iii)). The legislation in question limited the number of recipients, and Commerce in its post preliminary analysis had concluded that the KAV Program was de facto specific, but, had abandoned its analysis after it concluded that the KAV Program was specific as a matter of law. Although BGH argued that the record lacked information concerning the de facto use of the program, the Court noted that Commerce had tools at its disposal to conduct its analysis where the record lacked information. BGH IV, 704 F.Supp.3d at 1380 (citing 19 U.S.C. § 1677e).

On July 11, 2024, Commerce issued a supplemental questionnaire requesting additional information from the GOG regarding whether the KAV program is de facto specific. Fourth Remand Results at 6. Specifically, Commerce asked that the GOG:

> Explain in detail what steps it took to obtain data from network operators (NOs) regarding concession fees paid by final consumers;
> Explain whether the relevant GOG authorities collect any statistical information or data, including aggregate data, regarding the implementation of the reduced concession fees under the Energy Industry Act and section 2(4) of the KAV, e.g., with respect to the number and types of entities claiming reduced concession fees;
> Clarify whether NOs are required to provide any statistical data or information, including aggregated data, to the relevant GOG authorities regarding the collection and/or implementation of the concession fees; and

> Provide any available alternative information and/or data concerning
> the program's use that could inform our de facto analysis, including from
> GOG or third-party studies.

Fourth Remand Results at 6-7.  The GOG responded to the questionnaire, explaining that it could not provide the data on concession fees, as it is not involved in "administering the process towards the final consumer" and that it lacks the legal authority to acquire such information due to trade secret laws.  Re: Forged Steel Fluid End Blocks from the Federal Republic of Germany: Response to Supplemental Questionnaire at 2-4, bar code 4604630-01 (Jul. 26, 2024) ("GOG Supp. QR").  The GOG provided an excerpt of a 2018 monitoring report showing aggregate concession fees paid by industrial customers as well as statistical data related to electricity sales and revenues of electricity supply companies.  GOG Supp. QR at 6, Ex. Remand-04, Ex. Remand-05.  On August 2, 2024, Defendant-Intervenors submitted factual information in an attempt to rebut, clarify, or correct the information contained in the GOG Supp. QR.  See generally Re: Forged Steel Fluid End Blocks from the Federal Republic of Germany: Petitioners' RFI and Comments on GOG SQR, bar code 4607918-01 (Aug. 2, 2024) ("Cmts. on GOG Supp. QR").

Commerce issued its Fourth Remand Results on September 17, 2024, concluding that the KAV program does not constitute a countervailable subsidy.  See generally Final Results of Redetermination Pursuant to Fourth Court Remand, Sept. 17, 2024, ECF No. 79-1 ("Fourth Remand Results").  Plaintiff filed its comments on the Fourth Remand Results on October 17, 2024, requesting the Court sustain the Fourth Remand Results.  See generally Plaintiff BGH Edelstahl Siegen GMBH

Comments on Fourth Remand Redetermination, Oct. 17, 2024, ECF No. 81 ("Pl. Cmts."). Defendant-Intervenors filed their comments on the Fourth Remand Results on October 17, 2024, arguing that the Court should remand Commerce's determination that the KAV program is not de facto specific. See generally Defendant-Intervenors' Comments in Opposition to Commerce's Fourth Remand Redetermination, Oct. 17, 2024, ECF No. 82 ("Def-Interv. Cmts.").

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 516A of the Tariff Act,[6] as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of a CVD order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F.Supp.2d 1255, 1259 (Ct. Int'l Trade 2014) (internal citations and quotations omitted).

## DISCUSSION

In its Fourth Remand Results, Commerce determined that the KAV Program does not constitute a countervailable subsidy. Fourth Remand Results at 19.

---

[6] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Plaintiff argues that the Court should sustain Commerce's determination because, based on record evidence, Commerce reasonably concluded that the KAV Program was not de facto specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii).  Pl. Cmts. at 4. Plaintiff also argues that Commerce correctly concluded that the GOG acted to the best of its ability to comply with Commerce's request for information and thus, Commerce properly declined to apply facts otherwise available with an adverse inference under 19 U.S.C. § 1677e(b).  Pl. Cmts. at 4.  Defendant-Intervenors argue that Commerce's determination is unsupported by substantial evidence because facts otherwise available support a finding of de facto specificity.  Def-Interv. Cmts. at 3-7.  For the reasons that follow Commerce's Fourth Remand Results are sustained.

A domestic subsidy is countervailable if it is specific as a matter of law ("de jure specific") or specific as a matter of fact ("de facto specific").  19 U.S.C. § 1677(5A)(D).  To determine whether a subsidy is specific as a matter of fact or specific as a matter of law, Congress has provided guidelines through the Tariff Act of 1930.  See 19 U.S.C. § 1677(5A)(D).  A de jure specific subsidy is one that "expressly limits access to the subsidy to an enterprise or industry."  19 U.S.C. § 1677(5A)(D)(i).

A subsidy is de facto specific if Commerce finds the existence of at least one of the following factors:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
> (II) An enterprise or industry is a predominant user of the subsidy.
> (III) An enterprise or industry receives a disproportionately large amount of the subsidy.
> (IV) The manner in which the authority providing the subsidy has exercised its discretion in the decision to grant the subsidy indicates that an industry is favored over others.

19 U.S.C. § 1677(5A)(D)(iii). Commerce examines these factors sequentially.   See 19

C.F.R. § 351.502; <u>see also</u> <u>Gov't of Quebec v. United States</u>, 105 F.4th 1359, 1374 (Fed.

Cir. 2024).   The Statement of Administration Action for the Uruguay Round

Agreements Act ("SAA"), which is the authoritative expression by the United States

concerning the interpretation of the statute, further explains:

> [t]he Administration intends that Commerce seek and consider
> information relevant to all of these factors. However, given the purpose
> of the specificity test as a screening mechanism, the weight accorded to
> particular factors will vary from case to case. For example, where the
> number of enterprises or industries using a subsidy is not large, the first
> factor alone would justify a finding of specificity. . . . . On the other hand,
> where the number of users of a subsidy is very large, the predominant
> use and disproportionality factors would have to be assessed.

Statement of Administration Action for the Uruguay Round Agreements Act, H.R.

Rep. No. 103-316 (1994), <u>as reprinted</u> in 1994 U.S.C.C.A.N. 4040, 4243.

If necessary information is not available on the record, Commerce shall "use

the facts otherwise available in reaching the applicable determination.   19 U.S.C.

§ 1677e(a)(1).  If Commerce finds that an interested party has failed to cooperate by

not acting to the best of its ability, Commerce "may use an inference that is adverse

to the interests of that party in selecting from among the facts otherwise available."

19 U.S.C. § 1677e(b)(1)(A).

Here, Commerce explained the KAV Program does not constitute a

countervailable subsidy because, using facts otherwise available, Commerce

determines the KAV Program is not specific as a matter fact.[7]   Fourth Remand
Results at 8-13.  Although Commerce did not collect the aggregate data requested by
petitioners, Fourth Remand Results at 6-8, it did obtain aggregate information from
the Federal Statistical Office which indicated that special contract customers
consumed more than half of the electricity consumed by all customers.   Fourth
Remand Results at 9 (citing GOG Supp. QR at 6, Ex. Remand-05).  Commerce could
not determine, based on record evidence, whether any subset of recipients is a
predominant user or receives a disproportionately large amount of the subsidy
because the GOG's report did not categorize special contract customers on an
enterprise or industry basis, and did not provide the number of enterprises or
industries considered special contract customers.   Fourth Remand Results at 9
(discussing   Section   1677(5A)(D)(iii)(II)—(III)).   Although   Defendant-Intervenors
claim Commerce "cited no record evidence" supporting its determination, Def-Interv.
Cmts. at 3, it is reasonably discernible that Commerce relied upon the information
regarding special contract customers as shown in the aggregate data regarding
concession fees paid, as facts otherwise available.  Fourth Remand Results at 9.  This
evidence led Commerce to conclude that, without more information, the recipients
were too numerous to render the KAV Program de facto specific.  Remand Results at
9.  Thus, Commerce pointed to the lack of facts otherwise available that would

---

[7] Commerce previously determined, under respectful protest, that the KAV Program
was not specific as a matter of law.  Third Remand Results at 6.

support a finding of specificity. Fourth Remand Results at 8-9.[8]  The Court cannot say that Commerce's determination is unreasonable.  See Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)) (a determination by Commerce is supported by substantial evidence "if a reasonable mind might accept the evidence as sufficient to support the finding.")  Even if two inconsistent conclusions may be drawn from the evidence, Commerce's findings may still be supported by substantial evidence.  Viet I–Mei Frozen Foods Co. v. United States, 839 F.3d 1099, 1106 (Fed. Cir. 2016) (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Commerce also reasonably concluded, although necessary information was missing from the record and it would use facts otherwise available, it lacked a basis to employ an adverse inference when selecting among facts otherwise available. Fourth Remand Results at 10 (explaining that the GOG could not provide certain information, including evidence that special contract customers were limited in number, because of its inability to collect that information).  Due to Germany's trade secret laws, the GOG does not maintain or collect actual usage information on reduced concession fees under the KAV Program, and thus could not provide such

---

[8] Defendant-Intervenors claim facts otherwise available demonstrate that the KAV Program is de facto specific.  Def-Interv. Cmts. at 4-5.  They point to the limiting language of the program.  Id.  However, Defendant-Intervenors' argument proves too much.  Def-Interv. Cmts. at 4-5.  If all that was needed was limiting language, any program with any limitation would be de facto specific.  This Court already rejected essentially the same argument when it rejected Commerce's position that the limitations contained with the enabling provisions of the KAV Program were specific as a matter of law.  BGH III, 663 F.Supp.3d at 1384.

information to Commerce.  Fourth Remand Results at 10.  Since the GOG is not involved in administering the KAV Program, it could not provide evidence regarding whether network operators exercised discretion or favored any enterprise or industry over others.[9]  Fourth Remand Results at 10.  Commerce therefore reasonably concludes that the application of adverse facts was not appropriate because the gap in the record was not attributable to the GOG.  Fourth Remand Results at 13.  Thus, Commerce's determination is reasonable based on this record.

## CONCLUSION

Commerce's determination is sustained.  Judgment will be entered accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:    December 26, 2024
          New York, New York

---

[9] Defendant-Intervenors assert:

> By contrast, with regard to other information, such as the aggregate number and types of companies eligible for reduced 3 concession fees, the GOG simply failed to provide the requested information without explanation. Id. at 4-6 (failing to cite TPSA, or any other legal prohibition, as explanation for its failure to provide aggregate data requested by Commerce in questions 3 and 4).

Def-Interv. Cmts. at 2-3.  However, the GOG submitted excerpts of a report showing the aggregate concession fees paid by industrial consumers during the period of investigation, as well as statistical data published by the GOG's Federal Statistical Office.  GOG Supp. QR at 6, Ex. Remand-04, Ex. Remand-05.